## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEWAYNE MATHEWS and<br>DEBRA TURNER, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | No. 4:20-cv-00200-JFH-JFJ |
| v. | ) | |
| | ) | |
| PHH MORTGAGE CORPORATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT PHH MORTGAGE CORPORATION'S
### AMENDED MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*/s/ Dale A. Evans Jr.*
P. Russell Perdew – *pro hac vice*
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-1712
rperdew@lockelord.com

Dale A. Evans Jr. – *pro hac vice*
**LOCKE LORD LLP**
777 South Flagler Drive
East Tower Suite 215
West Palm Beach, FL 33401
Telephone: 561-820-0248
dale.evans@lockelord.com

Lysbeth L. George, OK 30562
Law Office of Liz George, PLLC
P.O. Box 1375
1019 North Council Road, Suite 3
Blanchard, Oklahoma 73010
Telephone:  405-689-5502
liz@georgelawok.com
*Attorneys for Defendant PHH Mortgage
Corporation*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.   RELEVANT ALLEGATIONS AND BACKGROUND .......................................2

    A.   Plaintiffs originally asserted their claims in their Oklahoma foreclosure. ........................2

    B.   Plaintiffs refiled their claims in Florida state court, and the claims were transferred
here. ...................................................................................................................3

III.  LEGAL STANDARD ..........................................................................................3

IV.   ARGUMENT .......................................................................................................4

    A.   The Court should dismiss both claims because Plaintiffs do not allege sufficient facts to
show that PHH charged fees that violate HUD requirements. ...........................................4

        1.   HUD authorizes the servicer to collect fees for ongoing, monthly property
inspections after the borrower defaults. ...................................................................5

        2.   Plaintiffs misstate HUD's requirements. ................................................................6

        3.   Plaintiffs do not allege facts showing improper fees. .............................................8

    B.   The Court should also dismiss the FDUTPA claim because the statute does not apply to
Plaintiffs' claims. ..........................................................................................................10

        1.   The FDUTPA does not apply because this case is governed by Oklahoma law.....10

            a.   There are true conflicts in Oklahoma and Florida law. ................................12

            b.   Oklahoma has the most significant relationship to the claim. .....................13

        2.   The FDUTPA does not apply because the claims do not involve trade or
commerce. ..............................................................................................................16

V.    CONCLUSION ..................................................................................................17

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aazami v. Wells Fargo Bank, N.A.*,
    No. 3:17-CV-01564-BR, 2019 WL 281286 (D. Or. Jan. 22, 2019) ..........................................5

*Anderson v. U.S. Dept. of Hous. & Urban Dev.*,
    701 F.2d 112 (10th Cir. 1983) ...................................................................................................5

*Arndt v. Twenty-One Eighty-Five, LLC*,
    --- F. Supp. 3d ---, 2020 WL 1501981 (S.D. Fla. Mar. 26, 2020) ...........................................11

*Bates v. JPMorgan Chase Bank, N.A.*,
    768 F.3d 1126 (11th Cir. 2014) ...........................................................................................4, 5

*Beaver v. Inkmart, LLC*,
    No. 12-60028, 2012 WL 4005970 (S.D. Fla. Sept. 12, 2012) .................................................13

*Beckel v. Fagron Holding USA, LLC*,
    No. 8:16-cv-2059, 2017 WL 3730395 (M.D. Fla. June 30, 2017) .........................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................4

*Benne v. Int'l Bus. Machines Corp.*,
    87 F.3d 419 (10th Cir. 1996) ...................................................................................................11

*Burnett v. Mortgage Elec. Registration Sys., Inc.*,
    706 F.3d 1231 (10th Cir. 2013) .................................................................................................9

*Cohen v. Implant Innovations, Inc.*,
    259 F.R.D. 617 (S.D. Fla. 2008).................................................................................11, 14, 15

*CWELT-2008 Series 1045 LLC v. PHH Corp.*,
    No. 1:20-CV-20334, 2020 WL 2744191 (S.D. Fla. May 27, 2020)........................................17

*Dawoudi v. Nationstar Mortgage, LLC*,
    --- F. Supp. 3d ---, 2020 WL 1330381 (N.D. Ill. Mar. 23, 2020) ............................................8

*Genao v. CitiMortgage, Inc.*,
    No. 16-23111-CIV, 2017 WL 10775439 (S.D. Fla. Feb. 10, 2017) ..................................16, 17

*Hodgson v. Farmington City*,
    675 F. App'x 838 (10th Cir. 2017) ...........................................................................................2

*Hoy v. Sandals Resorts Intern., Ltd.*,
    No. 11-24580-CIV, 2013 WL 6385019 (S.D. Fla. Dec. 6, 2013)..........................................13

*Hucke v. Kubra Data Transfer Ltd., Corp.*,
    160 F. Supp. 3d 1320 (S.D. Fla. 2015) ....................................................................................5

*Laskar v. Peterson*,
    771 F.3d 1291 (11th Cir. 2014) ................................................................................................5

*Martin v. Creative Mgmt. Grp., Inc.*,
    No. 10-cv-23159, 2013 WL 12061809 (S.D. Fla. July 26, 2013) ...........................................11

*Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*,
    761 So. 2d 306 (Fla. 2000)......................................................................................................10

*Montgomery v. New Piper Aircraft, Inc.*,
    209 F.R.D. 221 (S.D. Fla. 2002)..............................................................................................16

*Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urban Dev.*,
    19 F. Supp. 3d 1 (D.D.C. 2013) ................................................................................................5

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*,
    678 F.3d 1211 (11th Cir. 2012) ................................................................................................9

*S.E.C. v. Gordon*,
    No. 09-CV-0061-CVE-FHM, 2009 WL 1652464 (N.D. Okla. June 11, 2009) .......................3

*Sack v. Cessna Aircraft Co.*,
    676 F. App'x 887 (11th Cir. (2017 .........................................................................................11

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)..........................................................................................................11, 12

*Voorhis v. BOK Fin. Corp.*,
    No. 13-CV-197-CVE-TLW, 2013 WL 5937395 (N.D. Okla. Nov. 4, 2013).........................12

*Williams v. CSC Credit Servs., Inc.*,
    No. 07-CV-0255-CVE-FHM, 2007 WL 1959219 (N.D. Okla. June 29, 2007) .....................12

## Statutes

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ....................................................................12

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ........................................................9

FLA. STAT. § 501.024(8) ................................................................................................................17

FLA. STAT. § 501.203(8) ...............................................................................................16

FLA. STAT. § 501.211 ....................................................................................................13

FLA. STAT. § 501.212 ....................................................................................................12

FLA. STAT. § 501.2105(1) ..............................................................................................13

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* .................. *passim*

OKLA. STAT. tit. 12, § 1101.1(B) ....................................................................................2

OKLA. STAT. tit. 15, § 754(2) .........................................................................................12

OKLA. STAT. tit. 15, § 761.1(A) .....................................................................................13

OKLA. STAT. tit. 15, § 761.1(B) .....................................................................................12

Oklahoma Consumer Protection Act, OKLA. STAT. tit. 15, § 751, *et seq.* .........................11, 12, 13

Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ................................................12

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ..........................................................................12

**Other Authorities**

24 C.F.R. § 203.377 ........................................................................................................7

Fed. R. Civ. P. 8 .............................................................................................................3

Fed. R. Civ. P. 12 ...........................................................................................................1

HUD Handbook 4330.1 REV-5, 1-2 ...............................................................................5

HUD Handbook 4330.1 REV-5, 4-1 ............................................................................6, 7

HUD Handbook 4330.1 REV-5, 4-11 ...........................................................................6, 7

HUD Handbook 4330.1 REV-5, 7-16 .............................................................................6

HUD Handbook 4330.1 REV-5, 7-7 ...............................................................................6

HUD Handbook 4330.1 REV-5, 9-9 ..........................................................................6, 7, 8

Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971) ................................13, 14

**DEFENDANT PHH MORTGAGE CORPORATION'S
AMENDED MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant PHH Mortgage Corporation moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs Dewayne Mathews and Debra Turner's class action complaint because, for the reasons stated below, the complaint fails to state a claim.

## I.      INTRODUCTION

Plaintiffs allege that, after they defaulted on their loan, PHH (their loan servicer)[1] conducted periodic inspections of their property to confirm Plaintiffs continued to live there, and that PHH charged them fees for those inspections. Plaintiffs allege PHH thereby breached the loan contract because the contract incorporates regulations of the U.S. Department of Housing and Urban Development ("HUD"), and the fees allegedly violate those regulations. Plaintiffs also allege that, for the same reason, the fees violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"). Plaintiffs allege the fees violate the regulations because Plaintiffs were occupying the property—and/or because PHH should have known they were occupying the property—at the time of the inspections.

PHH asks this Court to dismiss Plaintiffs' complaint in its entirety because Plaintiffs allege no facts showing that the property inspections violated the HUD regulations incorporated into the loan contract. As discussed below, Plaintiffs' complaint mischaracterizes the HUD regulations. In reality those regulations only prohibit monthly occupancy inspections if the lender was able to otherwise confirm occupancy through mail or telephone within the prior month. Plaintiffs here do

---

[1] Plaintiffs sue PHH as the successors in interest to Ocwen Loan Servicing, LLC, who previously serviced Plaintiffs' loan. Ocwen was the servicer when the fees at issue were charged, but for ease of reference, the term "PHH" shall refer to both PHH and its predecessor Ocwen unless otherwise stated.

1

not allege facts showing PHH violated this prohibition—*i.e.*, that PHH confirmed occupancy by phone or mail and nonetheless conducted an inspection that same month—so the Court should dismiss both claims. The Court also should dismiss Plaintiffs' FDUTPA claim because that Florida statute is inapplicable to Plaintiffs' allegations, which are governed by Oklahoma law, and because the property inspections at issue are not "trade or commerce" as required for FDUTPA to apply.

## II.     RELEVANT ALLEGATIONS AND BACKGROUND

### A.     Plaintiffs originally asserted their claims in their Oklahoma foreclosure.

Plaintiffs reside in Rogers County, Oklahoma. ECF No. 1-2 at 6, ¶ 1. In 2007, Plaintiffs executed a note and mortgage for the purchase of a home located at 1304 Revis Crossing, Claremore, Oklahoma. ECF No. 1-2 at 10, ¶ 15. PHH serviced the loan. In September 2018, PHH filed a foreclosure complaint in Oklahoma state court because Plaintiffs defaulted on their loan by failing to make monthly payments. Ex. 1, Petition.[2]

Plaintiffs filed a class-action counterclaim in the foreclosure lawsuit making the same allegation as they make here, *i.e.*, that PHH charged property-inspection fees that violated the loan contract. Ex. 2, Counterclaim. After the court partially dismissed the counterclaim and struck most of the class allegations (Ex. 3, Order), PHH served an offer of judgment on Plaintiffs under the applicable Oklahoma statute. Ex. 4, Offer of Judgment; *see also* OKLA. STAT. tit. 12, § 1101.1(B). Immediately thereafter, Plaintiffs voluntarily dismissed their counterclaim without prejudice on

---

[2] PHH asks the Court to take judicial notice of filings in the foreclosure proceedings to establish the fact of those proceedings. *See Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (citation omitted).

June 20, 2019. Ex. 5, Dismissal Notice. Because PHH had previously dismissed the foreclosure after Plaintiffs paid their loan in full, this ended the case.

**B.** **Plaintiffs refiled their claims in Florida state court, and the claims were transferred here.**

Approximately three months after dismissing their Oklahoma counterclaim, Plaintiffs filed this case against PHH in September 2019 in Florida state court. ECF No. 1-2 at 6. In this case, Plaintiffs allege the same facts as in the Oklahoma counterclaim, *i.e.*, that PHH charged property-inspection fees that violated HUD regulations, and therefore the loan contract, because PHH "had no reason to suspect the home was vacant or that an inspection was necessary." ECF No. 1-2 at 11, ¶ 20.

PHH removed the case to the U.S. District Court for the Southern District of Florida, and the Florida federal court ultimately granted PHH's motion to transfer the case to this Court. ECF Nos. 1, 30. In so holding, the Florida court concluded that, "the locus of operative facts is Oklahoma" and "Oklahoma plainly has the strongest connection to this case." ECF No. 30, pp. 6, 9. Specifically, the Court noted that "Plaintiffs are residents of Oklahoma whose mortgage loan is allegedly secured by their residence at 1304 Revis Crossing, Claremore, Oklahoma. Their mortgage was obtained in Oklahoma, was recorded in Oklahoma, and is expressly governed by Oklahoma law." *Id.*, p. 2.

## III.    LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim sufficient to give the defendant fair notice of the claim and its factual basis." *S.E.C. v. Gordon*, No. 09-CV-0061-CVE-FHM, 2009 WL 1652464, at *2 (N.D. Okla. June 11, 2009). The Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## IV.    ARGUMENT

### A.    The Court should dismiss both claims because Plaintiffs do not allege sufficient facts to show that PHH charged fees that violate HUD requirements.

Plaintiffs allege the property-inspection fees violated HUD regulations, but Plaintiffs have no private right of action to enforce the applicable HUD regulations. *See Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1130-31 (11th Cir. 2014) (citing *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977) ("[T]he National Housing Act and the regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow.")) (remaining citations omitted). Likewise, there is no private cause of action for violation of HUD's Administration of Insured Home Mortgages Handbook (4330.1) (the "Handbook) to which Plaintiffs refer in their

4

complaint. *Anderson v. U.S. Dept. of Hous. & Urban Dev.*, 701 F.2d 112, 114 (10th Cir. 1983) ("The HUD Handbook contains 'instructions,' 'technical suggestions,' and 'items' for consideration. … It establishes no private cause of action.") (citations omitted).

Because no private right of action exists, a borrower typically has no ability to sue for an alleged violation of the HUD regulations. Plaintiffs get around that here by alleging those regulations are incorporated into their contract and pleading a breach of contract. ECF No. 1-2, p. 23, ¶ 2, p. 25, ¶ 8 (mortgage provisions incorporating HUD regulations); *See Bates*, 768 F.3d at 1131 (authorizing breach of contract claim where the contract expressly conditioned non-judicial foreclosure on compliance with HUD regulations). Similarly, Plaintiffs could not typically sue under FDUTPA to enforce HUD regulations. *See, e.g., Hucke v. Kubra Data Transfer Ltd., Corp.*, 160 F. Supp. 3d 1320, 1327-28 (S.D. Fla. 2015) (violation of Florida statute with no private right of action does not support FDUTPA claim). Thus, Plaintiffs are presumably using PHH's alleged breach of contract to support their FDUTPA claim.

But in any event, Plaintiffs' contract and FDUTPA claims are both based on the same alleged violation of HUD regulations. As discussed below, Plaintiffs have not alleged facts showing a violation of HUD regulations, so the Court should dismiss both claims.

### 1.  HUD authorizes the servicer to collect fees for ongoing, monthly property inspections after the borrower defaults.

HUD describes permitted fees in the Handbook. Ex. 6, Handbook, ¶ 1-2, p. 2[3] ("This Handbook provides procedural standards and guidelines that must be followed when servicing an

---

[3] Exhibit 6 hereto are portions of the Handbook, REV-5. PHH has added page numbers to the Handbook for ease of reference. PHH asks the Court to take judicial notice of the Handbook because the complaint and mortgage reference it, Plaintiffs' claims rely upon it, it is a public document, and other courts have done so. *Aazami v. Wells Fargo Bank, N.A.*, No. 3:17-CV-01564-BR, 2019 WL 281286, at *4 (D. Or. Jan. 22, 2019); *Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 20 (D.D.C. 2013); *see also Laskar*

FHA/HUD-insured mortgage ….”). Chapter 4 of the Handbook authorizes servicers to collect a reasonable and customary[4] fee for property inspections as long as the fee “is not inconsistent with” any HUD requirement, state law, or the loan documents. Ex. 6, p. 7, ¶ 4-1(C)(11); p. 10, ¶ 4-11(A). Chapter 7 notes that defaulted loans “impose added servicing responsibilities”—including property inspection and preservation—and refers to Chapter 9 for property-inspection requirements. Ex. 6, p. 14, ¶ 7-7; p. 17, ¶ 7-16.

The Handbook ***requires*** a servicer to take action “to protect the value of the security”, including conducting initial, occupancy, and vacant inspections for defaulted loans. Ex. 6, p. 20, 9-9(A)(1). Servicers conduct an initial inspection when payments are more than 45 days late and the servicer is unable to reach the borrower by phone. Ex. 6, p. 20, ¶ 9-9(A)(1)(a). A servicer performs follow-up occupancy inspections every 30 days after the initial inspection if the loan remains in default and the servicer is unable to verify occupancy by phone or correspondence. Ex. 6, p. 22, ¶ 9-9(A)(1)(b)(1). During the inspections, the inspector determines both occupancy and ***who*** occupies the property (*i.e.*, the borrower and not a third party). *Id.*, p. 22, ¶ 9-9(A)(1)(b)(3).

A servicer should attempt to contact the borrower by phone or in writing at least once prior to each occupancy inspection. Ex. 6, p. 22, ¶ 9-9(A)(1)(b)(4); p. 23, ¶ 9-9(A)(1)(b)(7). A servicer cannot charge for inspections if it “knew the mortgagor was still in occupancy, such as documented communication with the mortgagor ….”. Ex. 6, p. 24, ¶ 9-9(A)(2)(d).

### 2.     Plaintiffs misstate HUD’s requirements.

Plaintiffs make the following misstatements regarding what HUD prohibits and permits:

---

*v. Peterson*, 771 F.3d 1291, 1295 (11th Cir. 2014) (documents referenced in complaint and central to claim are part of the pleadings).

[4] Plaintiffs do not allege that the property-inspection fees were not reasonable and customary.

1. Plaintiffs claim that HUD prohibits property inspections "if the home is occupied." ECF No. 14, pp. 3, 7.

2. Plaintiffs assert that HUD only permits inspections where the servicer has "actual knowledge that the property is vacant or abandoned". *Id.*, p. 6.

3. Plaintiffs suggest that if a servicer confirms occupancy once during an ongoing default, the servicer should never inspect the property again. *Id.*, p. 7 ("even if the initial visual inspection was arguably proper, the *thirteen* inspections that followed could not have been.") (emphasis original).

None of this is correct. In reality, the Handbook authorizes any reasonable and customary inspection fees that are not inconsistent with HUD requirements, state law, or the loan documents. Ex. 6, p. 7, ¶ 4-1(C)(11)); p. 11, ¶ 4-11(A). In other words, HUD permits inspection fees so long as there is no express prohibition on such fees.

The Handbook does not prohibit the servicer from charging inspection fees when the borrower occupies the property, and does not limit inspection fees to situations where the servicer knows the property is vacant. Instead, the Handbook only prohibits inspection fees where "the mortgagee knew the mortgagor was still in occupancy, such as documented communication with the mortgagor ….". Ex. 6, p. 24, ¶ 9-9(A)(2)(d).[5] While HUD authorizes a separate, "vacant", inspection where a property "is vacant or abandoned" (24 C.F.R. § 203.377; Ex. 6, p. 23 ¶ 9-9(A)(1)(c)), that is not the only inspection HUD authorizes. The Handbook also authorizes two other kinds of inspections—initial and occupancy (Ex. 6, p. 20, ¶ 9-9(A)(1))—both of which are done for the purpose of determining if the property is occupied. Ex. 6, p. 20, ¶ 9-9(A)(1)(a) (initial inspection is to "determine if the property has become vacant or abandoned"); *Id.*, p. 22, ¶ 9-9(A)(1)(b) (occupancy inspection "assist[s] in establishing if a property … has become vacant or

---

[5] References in the loan documents and Handbook to the "lender" or "mortgagee" include PHH, which was the loan servicer acting on behalf of the lender and mortgagee.

abandoned."). Thus, HUD explicitly authorizes inspections to determine occupancy, which contradicts Plaintiffs' claim that HUD only permits inspections when the property is vacant.

Nor does the Handbook prohibit ongoing monthly inspections if an inspection shows borrowers occupy the property. Rather, the Handbook explicitly authorizes ongoing occupancy inspections, which the servicer performs on a monthly basis to ensure the borrower continues to occupy the property. Ex. 6, p. 22, ¶ 9-9(A)(1)(b)(1) (occupancy inspection done within 30 days of the last inspection); *Id.*, ¶ 9-9(A)(1)(b)(3) (during occupancy inspection, "the servicing mortgagee should require the inspector to establish if the mortgaged property remains occupied"); *Id.*, p. 24, ¶ 9-9(A)(2)(b) (inspections every 30 days); *Dawoudi v. Nationstar Mortgage, LLC*, --- F. Supp. 3d ---, 2020 WL 1330381, at *4 (N.D. Ill. Mar. 23, 2020) ("[T]he plain language of the regulation *requires* lenders to inspect properties 'on a monthly basis' when a loan is in default . . . .") (emphasis in original) (citing 24 C.F.R. § 203.377).

While Plaintiffs' complaint does not cite these multiple provisions of the Handbook, these provisions nonetheless control this dispute and never require a servicer to stop inspections once one of the inspections shows the borrower occupies the property.

### 3.     Plaintiffs do not allege facts showing improper fees.

Plaintiffs try to state a claim by alleging that PHH communicated with Plaintiffs at some unspecified points after the loan was made in March 2007 and then conducted periodic inspections after Plaintiffs defaulted, presumably implying that the unspecified communications made the inspections improper. ECF No. 1-2, ¶¶ 17, 18 (describing communications that occurred "from the very beginning of the mortgage" and over nine-year period before default began). Plaintiffs also vaguely allege that PHH was "in constant contact" with Plaintiffs during the inspections. ECF No. 1-2, ¶ 20. But such general allegations do not show a violation of HUD requirements. In both their

original counterclaim and now in this second complaint, Plaintiffs provide no details of this alleged "constant contact", such as when or how the contact occurred relative to any specific inspection. Plaintiffs also do not describe any instance where PHH confirmed Plaintiffs occupied the property by phone or written communication and nevertheless conducted an occupancy inspection that same month, which is what HUD prohibits. Instead, Plaintiffs merely suggest that the inspections were improper because Plaintiffs occupied the property and PHH "had no reason to suspect the home was vacant." *Id.*, ¶ 20. But as a matter of law, the Handbook does not require that PHH must have reason to suspect vacancy before inspecting.

Courts in analogous circumstances have found other similarly vague allegations insufficient to state a claim. In *Burnett v. Mortgage Elec. Registration Sys., Inc.*, the court affirmed dismissal of a claim alleging false debt-collection communications which the complaint alleged were made in unspecified "emails, faxes, correspondence, telephone calls and/or meetings and the like." The court found it appropriate to require the plaintiff to provide details about the alleged "demands for payment" because the plaintiff was the recipient of the allegedly false representations. 706 F.3d 1231, 1240 (10th Cir. 2013) (comparing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216-18 (11th Cir. 2012) (borrower stated a claim by identifying the specific letter from defendant that violated FDCPA)). In other words, where the plaintiff allegedly participated in the communications, the failure to provide any detail about the communications is fatal to the complaint. *Id.* (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (holding complaint alleging retaliatory firing deficient for lack of facts when plaintiff failed to include facts she should have known, such as to whom she complained, when, and how; and who criticized her work, where, and when)).

Plaintiffs suggest that PHH sending correspondence to Plaintiffs at the property shows PHH knew Plaintiffs occupied the property. ECF No. 14, p. 8. But the mortgage *required* PHH to send letters to the property address. ECF No. 1-2, p. 26, ¶ 13. Plaintiffs do not allege that they ever responded to PHH's correspondence while inspections were ongoing to confirm their occupancy and that PHH nonetheless conducted an occupancy inspection that month.

In sum, Plaintiffs have not alleged facts showing that PHH violated HUD requirements in charging fees for property inspections. HUD permits ongoing inspections where contact cannot be made by phone or in writing, and Plaintiffs allege no facts showing that PHH conducted inspections during months when it had verified Plaintiffs' occupancy through those other means. As a result, the Court should dismiss both the breach of contract and FDUTPA claims.

**B.**     **The Court should also dismiss the FDUTPA claim because the statute does not apply to Plaintiffs' claims.**

**1.**     **The FDUTPA does not apply because this case is governed by Oklahoma law.**

As discussed above, the FDUTPA claim is derivative of Plaintiffs' contract claim. Both claims allege that PHH violated HUD regulations through property inspections, but because Plaintiffs have no private right of action to enforce HUD regulations, the alleged violations are actionable only because the loan contract incorporates the regulations. But that same loan contract also contains a choice-of-law provision stating that the contract "shall be governed by Federal Law and the law of the jurisdiction in which the Property is located." ECF No. 1-2 at 26, ¶ 14.

Because the property is in Oklahoma, the contract (and all claims based on an alleged breach of the contract) are governed by Oklahoma law. Florida—which remains the relevant source of choice-of-law rules—generally enforces a contract's choice-of-law provisions. *See Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000) (noting

that a contract's choice-of-law provision is presumptively valid).[6] Thus, Oklahoma law applies, so Florida substantive law, including the FDUTPA cannot. *See Arndt v. Twenty-One Eighty-Five, LLC*, --- F. Supp. 3d ---, 2020 WL 1501981, at *5 (S.D. Fla. Mar. 26, 2020) ("numerous courts in this District have 'repeatedly determined that a contract's choice of law provision requires dismissal of claims under another state's law which relate to the contract.'" (quoting *Burger King Corp. v. Lee*, No. 06-20645-Civ, 2006 WL 8433548, at *3 (S.D. Fla. Aug. 11, 2006) (collecting cases); *see also Beckel v. Fagron Holding USA, LLC*, No. 8:16-cv-2059, 2017 WL 3730395, at *9 (M.D. Fla. June 30, 2017) ("An enforceable choice of law clause providing that Delaware's substantive law applies bars claims brought under Florida's (or any other state's) statutory law." (citations omitted)); *Martin v. Creative Mgmt. Grp., Inc.*, No. 10-cv-23159, 2013 WL 12061809, at *9 (S.D. Fla. July 26, 2013) ("Where the parties agreed to a choice-of-law provision in their contract, claims brought under the statutes of other states are generally inapplicable." (citations omitted)).

Further, Oklahoma law would apply even without the choice-of-law provision. Federal courts sitting in diversity undertake a two-part analysis to determine which state's law applies in the absence of a choice-of-law provision. First, the Court must determine whether a true conflict exists between the FDUTPA and its Oklahoma counterpart, the Oklahoma Consumer Protection Act, OKLA. STAT. tit. 15, § 751, *et seq*. ("OCPA"). *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 633 (S.D. Fla. 2008) (citations omitted). Like the FDUTPA, the OCPA was enacted

---

[6] While federal courts in diversity cases such as this one typically apply choice-of-law principles of the state in which it sits, *Sack v. Cessna Aircraft Co.*, 676 F. App'x 887, 889 (11th Cir. 2017) (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016)), the U.S. Supreme Court has noted that practice changes when a case is transferred under § 1404(a), in which case the choice-of-law rules of the transferor state continue to be applied. *Van Dusen v. Barrack*, 376 U.S. 612, 635-36 (1964); *Benne v. Int'l Bus. Machines Corp.*, 87 F.3d 419, 423 (10th Cir. 1996).

to protect consumers from unfair and deceptive trade practices. *Williams v. CSC Credit Servs., Inc.*, No. 07-CV-0255-CVE-FHM, 2007 WL 1959219, at *1 (N.D. Okla. June 29, 2007). If the statutes conflict, the Court must apply Florida choice-of-law rules to determine the applicable law governing Plaintiff's consumer-protection claim. *Van Dusen*, 376 U.S. at 635-36.

### a.   There are true conflicts in Oklahoma and Florida law.

Two conflicts exist between the OCPA and the FDUTPA. First, the OCPA broadly exempts actions or transactions regulated by any regulatory body or officer acting under statutory authority of the State of Oklahoma or the United States. OKLA. STAT. tit. 15, § 754(2); *see also Voorhis v. BOK Fin. Corp.*, No. 13-CV-197-CVE-TLW, 2013 WL 5937395, at *10 (N.D. Okla. Nov. 4, 2013) (granting summary judgment to defendant on OCPA claims arising from refinancing transaction because the federal Real Estate Settlement Procedures Act and the Truth in Lending Act governed the refinancing transaction); *Williams*, 2007 WL 1959219, at *3 (dismissing OCPA claim arising from adverse credit decision because such claim was within the scope of the Fair Credit Reporting Act and the Federal Trade Commission has the authority to enforce the FCRA). Because Plaintiffs' claims are based on PHH's alleged violation of HUD regulations, the OCPA exempts those claims and prohibits a cause of action. But the FDUTPA's corresponding exemption is not as broad; it exempts only persons or activities regulated under laws administered by certain delineated agencies, none of which apply here. § 501.212, FLA. STAT. So a proper Florida-based claim under the FDUTPA potentially could proceed on an alleged violation of HUD regulations (to the extent incorporated in the loan contract), while a claim under the OCPA could not.

Moreover, the damages available under the OCPA and FDUTPA are different. The OCPA provides for recovery of a civil penalty of up to $2,000 if the act or practice that violates the OCPA is also found to be unconscionable. OKLA. STAT. tit. 15, § 761.1(B). FDUTPA does not provide a

statutory penalty in private actions. *See generally*, § 501.211, FLA. STAT. In addition, the OCPA

provides for mandatory recovery of attorneys' fees and costs (OKLA. STAT. tit. 15, § 761.1(A)),

whereas FDUTPA provides that the prevailing party "may" receive such fees and costs.

§ 501.2105(1), FLA. STAT. Such different remedies create a true conflict. *See Hoy v. Sandals*

*Resorts Intern., Ltd.*, No. 11-24580-CIV, 2013 WL 6385019, at *4-5 (S.D. Fla. Dec. 6, 2013) (true

conflict existed where Florida's wrongful death act did not provide for claim for pain and suffering

of the decedent from the time of injury to the time of death, whereas Missouri law allowed for

such damages).

Thus, there are true conflicts between the OCPA and FDUTPA, so the Court must apply

Florida's choice-of-law rules to determine what state law applies.

> **b.     Oklahoma has the most significant relationship to the claim.**

Florida uses the "most significant relationship" test to determine which state's laws apply

to non-contractual claims. *Id.* (citing *Green Leaf Nursery*, 341 F.3d at 1301; *Garcia v. Pub. Health*

*Trust of Dade Cnty.*, 841 F.2d 1062, 1064-65 (11th Cir. 1988)). This test is set forth in Section 145

of the Restatement (Second) of Conflicts of Laws. *Beaver v. Inkmart, LLC*, No. 12-60028, 2012

WL 4005970, at *4 (S.D. Fla. Sept. 12, 2012) (citations omitted). This section provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are
> determined by the local law of the state which, with respect to that issue,
> has the most significant relationship to the occurrence and the parties
> under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to
> determine the law applicable to an issue include:
>
>    (a) the place where the injury occurred;
>
>    (b) the place where the conduct causing the injury occurred;
>
>    (c) the domicil, residence, nationality, place of incorporation and place
>        of business of the parties; and

> > (d) the place where the relationship, if any, between the parties is
> > centered.
>
> These contacts are to be evaluated according to their relative importance
> with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971). Courts have applied this

test to FDUTPA claims. *See, e.g., Cohen*, 259 F.R.D. at 634.

Application of the relevant factors to Plaintiffs' FDUTPA claim demonstrate that

Oklahoma law, not Florida law, governs Plaintiffs' claims. First, the injury occurred in

Oklahoma—where Plaintiffs reside and where any claimed damages would have accrued—

weighing in favor of applying Oklahoma law. *Cohen*, 259 F.R.D. at 635 ("[t]he state where the

injury occurred would, under most circumstances, be the decisive consideration in determining the

applicable choice of law.") (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla.

1981)). By contrast, Plaintiffs have no connection to Florida.

The alleged injury-causing conduct also occurred in Oklahoma. The alleged inspections

occurred at Plaintiffs' Oklahoma property. ECF No. 1-2 at 10, ¶ 15 and 11, ¶ 18. Plaintiffs contend

PHH should have known they occupied the Oklahoma property because of alleged correspondence

with them at the property. *Id.* at 10, ¶ 17. Moreover, Plaintiffs allege that PHH hired Oklahoma

lawyers to foreclose and those lawyers mailed correspondence to the Oklahoma property. *Id.* at

11, ¶ 17. And to the extent Plaintiffs paid the allegedly improper inspection fees, they paid those

fees from Oklahoma, where they reside.

In an effort to demonstrate some nexus to Florida, Plaintiffs allege that PHH's conduct was

facilitated, directed, and emanated from the West Palm Beach headquarters of PHH's predecessor

Ocwen. ECF No. 1-2 at 15, ¶ 43. But even if that were true, any such decisions were meaningless

without the actions that occurred in relation to the Oklahoma property, such as Plaintiffs' vacancy

or occupancy, the alleged mailings, the inspections, the mortgage foreclosure lawsuit on the property instituted in Oklahoma, and Plaintiffs' payment of any fees from Oklahoma. Accordingly, Plaintiffs' allegations demonstrate the injury occurred in Oklahoma.

The parties' domiciles also weigh in favor of application of Oklahoma law. No party is incorporated or domiciled in Florida. Plaintiffs reside in Oklahoma. ECF No. 1-2 at 6, ¶ 1. PHH is a New Jersey corporation with its principal place of business in New Jersey. *Id.* at 7, ¶ 3, *see also* ECF No. 1-3 at 2-3, ¶ 3. Although PHH's predecessor Ocwen was a Delaware corporation with its principal place of business in Palm Beach County, Florida, it merged into PHH and no longer existed as an independent entity before this lawsuit was filed. ECF No. 1-2 at 6-7, ¶¶ 2-3.

The parties' relationship also weighs in favor of application of Oklahoma law. Plaintiffs reside in Oklahoma. ECF No. 1-2 at 6, ¶ 1. They obtained their mortgage in Oklahoma. *Id.* at 10, ¶ 15. The alleged communications that Plaintiffs claim show the property was occupied took place in Oklahoma. *Id.* at 10-11, ¶ 17. PHH brought suit to foreclose the loan in Oklahoma. *Id.* at 11, ¶ 17. The alleged inspections took place in Oklahoma. *Id.* at 11, ¶ 18-20. And the parties' contract is governed by Oklahoma law. *Id.* at 26, ¶ 14. Thus, Plaintiffs' single Florida-related allegation— *i.e.*, that Ocwen's conduct was facilitated, directed, and emanated from its headquarters in Florida—cannot outweigh all other aspects of the parties' 12-year relationship. Indeed, the Florida court granted PHH's motion to transfer this case to this Court because it found "the locus of operative facts is Oklahoma" and "Oklahoma plainly has the strongest connection to this case." ECF No. 30, pp. 6, 9.

Consequently, regardless of whether the Court applies the contractual choice-of-law provision or the multi-factor "most significant relationship" test, Oklahoma law applies, and the Court should therefore dismiss the FDUTPA claim. *See Cohen*, 259 F.R.D. at 628 (denying class

certification and dismissing Plaintiffs' FDUTPA claim after finding that Missouri had the most significant relationship to the claim); *see also Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225-26 (S.D. Fla. 2002) (finding Plaintiff lacked standing to bring claim under FDUTPA because Texas has the most significant relationship to the claim, which should have been brought under the analogous Texas deceptive trade practice act).

**2.     The FDUTPA does not apply because the claims do not involve trade or commerce.**

Finally, even under Florida law, the Court should dismiss the FDUTPA claim because the conduct at issue does not involve "trade or commerce" as required to state a FDUTPA claim. *Genao v. CitiMortgage, Inc.*, No. 16-23111-CIV, 2017 WL 10775439, at *4 (S.D. Fla. Feb. 10, 2017), report and recommendation adopted, No. 16-23111-CIV, 2017 WL 10775411 (S.D. Fla. Mar. 1, 2017) (citing § 501.204(1), FLA. STAT.). Servicing and loan collection activity is not "trade or commerce" as a matter of law. *Id.* (citing *Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *4-5 (S.D. Fla. May 6, 2013) (dismissing plaintiffs' FDUTPA claim "[b]ecause the defendants' servicing of the mortgage did not fall within the purview of trade or commerce"); *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys., U.S.A., Inc.*, No. 04-60861, 2005 WL 975773, at *9 (S.D. Fla. Mar. 4, 2005) (dismissing FDUTPA claim because Plaintiff "fail[ed] to allege that the lending relationship … constituted 'trade or commerce' or the 'conduct of any trade or commerce' under FLA. STAT. § 501.203(8)"); *State of Fla., Office of Att'y Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353, 357 (Fla. 4th DCA 2011) (holding that allegations of fabricating false documents or presenting false or misleading documents for use in foreclosure cases were not "trade or commerce" in the FDUTPA context)).

In *Genao*, the plaintiffs alleged that the defendant imposed "approximately 50 inspection fees of between $13.50 and $15.00" and the imposition of these "false fees," among other things,

16

created liability under FDUTPA. *Genao*, 2017 WL 10775439, at *1. The court, citing the foregoing case law, found that Plaintiff failed to state a FDUTPA claim and dismissed it with prejudice. Similarly, in *CWELT-2008 Series 1045 LLC v. PHH Corp.*, No. 1:20-CV-20334, 2020 WL 2744191, at *1 (S.D. Fla. May 27, 2020), the Court dismissed a FDUTPA claim based on defendant (a loan servicer) sending a payoff letter to a third-party purchaser of foreclosed property that included allegedly improper charges for flood and hazard insurance, holding "Plaintiff fails to demonstrate that Defendant's alleged actions fall within the purview of trade or commerce."

The holdings in *Genao* and *CWELT* follow from the FDUTPA's definition of trade or commerce, *i.e.*, "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, [any] good or service …". § 501.024(8), FLA. STAT. PHH did not advertise, solicit, offer, or otherwise try to convince Plaintiffs to purchase property inspections, and Plaintiffs were not consumers of property inspections in any normal sense of the word. Rather, PHH arranged for property inspections as part of its obligation to the loan's owner and to the FHA (which insured the loan) to protect the property after a default. Federal regulation and the Handbook explicitly authorize such inspections. Securing the property after a default, and passing along the fees for doing so, is part of ordinary loan servicing and is not trade or commerce. Thus, Plaintiffs here have failed to allege the conduct of any trade or commerce under the FDUTPA. Accordingly, the Court should dismiss Plaintiffs' FDUTPA claim for this additional reason.

## V.    CONCLUSION

For these reasons, PHH asks the Court to dismiss Plaintiffs' complaint in its entirety.

Dated:  June 15, 2020                          Respectfully submitted,

                                               */s/ Dale A. Evans Jr.*
                                               P. Russell Perdew – *pro hac vice*
                                               **LOCKE LORD LLP**
                                               111 South Wacker Drive
                                               Chicago, Illinois 60606
                                               Telephone: (312) 443-1712
                                               rperdew@lockelord.com

                                               Dale A. Evans Jr. – *pro hac vice*
                                               **LOCKE LORD LLP**
                                               777 South Flagler Drive
                                               East Tower Suite 215
                                               West Palm Beach, FL 33401
                                               Telephone: 561-820-0248
                                               dale.evans@lockelord.com

                                               Lysbeth L. George, OK 30562
                                               Law Office of Liz George, PLLC
                                               P.O. Box 1375
                                               1019 North Council Road, Suite 3
                                               Blanchard, Oklahoma 73010
                                               Telephone:  405-689-5502
                                               liz@georgelawok.com

                                               *Attorneys for Defendant PHH Mortgage*
                                               *Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: Bradford D. Barron, John A. Yanchunis, and Patrick A. Barthle II, Counsel for plaintiffs Dewayne Mathews and Debra Turner.

/s/ *Dale A. Evans Jr.*
Dale A. Evans Jr.

82995199