# EXHIBIT 1

FILED IN THE DISTRICT COURT
ROGERS COUNTY OKLAHOMA

SEP 27 2018

CATHI EDWARDS, COURT CLERK

_____
DEPUTY

IN THE DISTRICT COURT OF ROGERS COUNTY
STATE OF OKLAHOMA

OCWEN LOAN SERVICING, LLC,

    Plaintiff,

v.    Case No. CJ-2018-399

DEBRA JO TURNER A/K/A DEBRA TURNER; DEWAYNE MATHEWS; AND JOHN DOE, OCCUPANT

    Defendant(s).

## PETITION

COMES NOW the Plaintiff, Ocwen Loan Servicing, LLC, and for its cause of action against the above-named defendants, alleges and states:

1. That on March 20, 2007, Debra Jo Turner and DeWayne Mathews, for valuable consideration, executed a certain promissory note payable to GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation in the principal sum of $128,484.00, and that the Plaintiff is in possession of and is the holder of and is entitled to enforce said note, a full, true and correct copy of which is attached hereto, marked Exhibit "1" and made a part hereof.

2. That on March 20, 2007, in order to secure the payment of said sum of money, as evidenced by the said note, and as part and parcel of said transaction, Debra Jo Turner and DeWayne Mathews, Wife and Husband, as owner(s) and mortgagor(s) of the hereinafter-described property, executed and delivered to Mortgage Electronic Registration Systems, Inc., as mortgagee, a certain purchase money mortgage in which the said mortgagor(s) conveyed and mortgaged to the said mortgagee all of the following-described real estate situated in Rogers County, State of Oklahoma, to-wit:

LOT THREE (3) IN BLOCK ONE (1) OF THE VILLAS AT COUNTRY CLUB CROSSING, AN ADDITION TO THE CITY OF CLAREMORE, BEING A PART OF THE NE/4 OF NE/4 OF NW/4 OF SECTION 20, TOWNSHIP 21 NORTH, RANGE 16 EAST OF THE INDIAN BASE AND MERIDIAN, ROGERS COUNTY, OKLAHOMA, ACCORDING TO THE RECORDED PLAT THEREOF.

PROPERTY ADDRESS: 1304 Revis Crossing, Claremore, OK 74017

together with all buildings, improvements, fixtures, appurtenances and hereditaments appertaining or belonging thereto.

3. That on March 26, 2007, the said purchase money mortgage was filed of record, with mortgage tax paid thereon, in the office of the county clerk of Rogers County, Oklahoma, in Book 1854 Page 492, a true and correct copy of which is attached hereto, marked Exhibit "2" and made a part hereof.

4. That on August 4, 2016, the said Purchase Money Mortgage was assigned to the Plaintiff by that certain assignment filed for record on August 10, 2016, in Book 2569 Page 339, records of said county and state, a copy of which is attached hereto, marked Exhibit "3" and made a part hereof.

5. That default has occurred in that the monthly payment due for May 1, 2018 and thereafter has not been made as provided in the note and purchase money mortgage; that the Plaintiff hereby declares the whole of said indebtedness due and payable, and elects to have the purchase money mortgage foreclosed and the mortgaged premises sold to satisfy said indebtedness; and that the option to waive or not waive appraisement of said premises will be exercised at the time of foreclosure judgment.

6. That there is due and owing on said note and purchase money mortgage the principal sum of $100,437.92, with interest thereon at the rate of 6.375% per annum from April 1, 2018, until paid, together with a reasonable attorney's fee, abstracting cost of $1,210.00, late charges,

all advances for taxes, insurance premiums, property preservation expenses, and costs of this action.

7. That the following defendant(s) may claim an interest in the subject property, the exact nature of which is unknown except as hereinafter stated, but that any such interest is junior and inferior to the first mortgage lien of the Plaintiff, to-wit:

John Doe, occupant, by reason of occupancy, or otherwise.

WHEREFORE, Plaintiff prays that it recover a judgment against the defendant(s), Debra Jo Turner and DeWayne Mathews, in the principal sum of $100,437.92, with interest thereon at the rate of 6.375% percent per annum from April 1, 2018, until paid, together with a reasonable attorney's fee, abstracting cost of $1,210.00, late charges, all advances for taxes, insurance premiums, property preservation expenses, and costs of this action; that it further recover a judgment of foreclosure against all defendants decreeing its purchase money mortgage to be a valid and subsisting first lien on the real estate herein described for the full amount of the judgment; that said purchase money mortgage be foreclosed, and that said property be sold at sheriff's sale to satisfy the indebtedness secured thereby; that all defendants, and each of them, and all those claiming by, through or under them since the commencement of this action, be forever barred, foreclosed, and enjoined from asserting or claiming any right, title, interest, or

estate in or to the said premises; and that it recover such other and further relief as may be just and equitable.

                                            SHAPIRO & CEJDA, LLC

                                            By: /s/ Kirk Cejda
                                            Kirk L. Cejda  #12241
                                            Lesli Peterson #14177
                                            Ken Hemry #4073
                                            Lyna L. Mitchell #30177
                                            Kristan A. Bolding #22498
                                            770 NE 63rd St
                                            Oklahoma City, OK 73105-6431
                                            (405)848-1819
                                            Attorneys for Plaintiff

File no. 18-133801

Multistate

# NOTE

LOAN NO
FHA Case Number

March 20, 2007
[Date]

1304 Revis Crossing, Claremore, OK 74017
[Property Address]

1. **PARTIES**

    "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
    GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation
    and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**

    In return for a loan received from Lender, Borrower promises to pay the principal sum of
    One Hundred Twenty Eight Thousand Four Hundred Eighty Four and 00/100
    Dollars (U.S. $  128,484.00  ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six   and 375/1000
    percent (  6.375  %) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**

    Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**

    (A) **Time**

    Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on May 1, 2007. Any principal and interest remaining on the first day of April, 2037, will be due on that date, which is called the maturity date.

    (B) **Place**

    Payment shall be made at
    P.O. Box 780, Waterloo, IA 50702-0780, ATTN: Payment Processing
    or at such place as Lender may designate in writing by notice to Borrower.

    (C) **Amount**

    Each monthly payment of principal and interest will be in the amount of U.S. $  801.58  .
    This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

    (D) **Allonge to this Note for payment adjustments**

    If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

    ☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**

    Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**

    (A) **Late Charge for Overdue Payments**

    If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four   and 00/100   percent (  4.000   %) of the overdue amount of each payment.

    (B) **Default**

    If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Multistate Fixed Rate Note - 10/95

K (9603)   Page 1 of 2   Initials: 

# EXHIBIT "1"

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
Debra Jo Turner                 -Borrower

_____ (Seal)
DeWayne Mathews                 -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

[Sign Original Only]

PAY TO THE ORDER OF
Ocwen Loan Servicing, LLC
WITHOUT RECOURSE

D. HARKNESS
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC f/k/a
GMAC MORTGAGE CORPORATION

Pay to the order of:
Without Recourse
Ocwen Loan Servicing, LLC

Ernie A Stephens  Authorized Signer

GMACM - FNM.0085.FIX (9803)       Page 2 of 2

20.00
5.00
1847

✓ Century Title
404 N Lynn Riggs Blvd
Claremore, OK 74017

I-2007-005058 Book 1854 Pg: 492
03/26/2007  9:49 am  Pg 0492-0498
Fee:   $ 25.00      Doc:   $ 0.00
Peggy Armstrong - Rogers County Clerk
State of Oklahoma

RETURN TO:  GMAC Mortgage, LLC
            100 Witmer Road
            Horsham, PA 19044-0963
   ATTN:    Records Management

[Space Above This Line For Recording Data]

LOAN NO:
State of Oklahoma

FHA Case Number

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  March 20, 2007  . The Mortgagor is
Debra Jo Turner and DeWayne Mathews, wife and husband.



I hereby certify that I received $ 128.50
and issued receipt No. 31156 thereof
in payment of Mortgage Tax on the within
Mortgage dated this 21 day of March 20 07
CATHY PINKERTON BAKER, County Treas.
Rogers County, Oklahoma

whose address is   1304 Revis Crossing
                   Claremore, OK 74017

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS.

GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation
("Lender") is organized and existing under the laws of  Delaware  , and has an
address of 100 Witmer Road, P.O. Box 963, Horsham, PA 19044
. Borrower owes Lender the principal sum of
One Hundred Twenty Eight Thousand Four Hundred Eighty Four  and 00/100
                    Dollars (U.S. $ 128,484.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  April 1, 2037  . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in                        Rogers                                   County, Oklahoma:
Lot Three (3) in Block One (1) of THE VILLAS AT COUNTRY CLUB CROSSING, an Addition to the City of Claremore, being a part of the NE/4 of NE/4 of NW/4 of Section 20, Township 21 North, Range 16 East of the Indian Base and Meridian, Rogers County, Oklahoma, according to the recorded Plat thereof.

which has the address of   1304 Revis Crossing, Claremore                              [Street, City],
Oklahoma     74017                       ("Property Address");
            [Zip Code]

FHA OKLAHOMA MORTGAGE - 10/95
GMACM - FMS.0084.OK (0010)
Page 1 of                                    Initials:                  051

# EXHIBIT "2"

I-2007-005058  Book 1854 Pg: 493
03/26/2007  9:49 am  Pg 0492-0498
Fee:  $ 25.00     Doc:  $ 0.00
Peggy Armstrong - Rogers County Clerk
State of Oklahoma

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C.§ 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

   First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

   Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

   Third, to interest due under the Note;

   Fourth, to amortization of the principal of the Note; and

   Fifth, to late charges due under the Note.

GMACM - FMS.0084.OK  (0010)              Page 2 of 7                                    Initials:

I-2007-005058  Book 1854 Pg: 494
03/26/2007   9:49 am  Pg 0492-0498
Fee:   $ 25.00     Doc:    $ 0.00
Peggy Armstrong - Rogers County Clerk
State of Oklahoma

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

LOAN NO ▮▮▮▮▮▮▮▮▮▮

GMACM-FMS.0084.OK (0010)                    Page 3 of 7                         Initials: ▮▮ ▮▮

I-2007-005058  Book 1854 Pg: 495
03/23/2007  9:49 am  Pg 0492-0498
Fee     $ 25.00     Doc:    $ 0.00
Peggy Armstrong - Rogers County Clerk
State of Oklahoma

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
      (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.
   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
   (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

```
I-2007-005058  Book 1854 Pg: 496
03/26/2007   9:49 am  Pg 0492-0498
Fee:   $ 25.00    Doc:   $ 0.00
Peggy Armstrong - Rogers County Clerk
          State of Oklahoma
```

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

LOAN NO: 

GMACM - FMS.0084.OK (0010)                Page 5 of 7                         Initials

I-2007-005058 Book 1854 Pg: 497
01/26/2007   9:49 am   Pg 0492-0498
Fee:   $ 25.00   Doc:   $ 0.00
Peggy Armstrong - Rogers County Clerk
State of Oklahoma

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances", are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agreed as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and other remedies permitted by applicable law. Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this paragraph 18. including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice in the manner required by applicable law to Borrower and any other persons prescribed by applicable law. Lender shall also publish the notice of sale, and the Property shall be sold, as prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the manner prescribed by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs unless applicable law provides otherwise.

20. **Waiver of Appraisement.** Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

21. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 500.00 . In addition, Lender may also charge for third party costs and expenses relating to Lender's processing of the assumption request.

```
                        I-2007-005058  Book 1854 Pg: 498
                        03/26/2007   9:49 am   Pg 0492-0498
                        Fee:   $ 25.00    Doc:   $ 0.00
                        Peggy Armstrong - Rogers County Clerk
                                State of Oklahoma
```

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider          ☐ Adjustable Rate Rider        ☐ Growing Equity Rider
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider     ☐ Other(s) [specify]

### NOTICE TO BORROWER

<u>A power of sale has been granted in this Security Instrument. A power of sale may allow the Lender to take the Property and sell it without going to court in a foreclosure action upon default by Borrower under this Security Instrument.</u>

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Debra Jo Turner                -Borrower

_____ (Seal)
DeWayne Mathews                -Borrower

_____ (Seal)         _____ (Seal)
                               -Borrower                                        -Borrower

STATE OF OKLAHOMA,                         Rogers County ss:

The foregoing instrument was acknowledged before me this   March 20, 2007
                                                                    (date)
by   Debra Jo Turner and DeWayne Mathews, wife and husband.

[Notary Seal: SABRINA M. NELSON, Rogers County, Notary public in and for State of Oklahoma, Commission #06007203 Expires 7/26/2010]

(person acknowledging)   3/20/07

My Commission Expires:

                                    Notary Public   Sabrina M Nelson

LOAN NO: [redacted]

GMACM - FMS.0084.OK (0010)                        Page 7 of 7

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401



I-2016-011991  Book 2569 Pg: 0339
08/10/2016 12:29 PM  Pg 0339-0339
Fee: $13.00    Doc: $0.00
Robin Anderson- Rogers County Clerk
State of Oklahoma

## CORPORATE ASSIGNMENT OF MORTGAGE

Rogers, Oklahoma

SIS #: 1-888-679-6377

Date of Assignment: August 3rd, 2016
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS at PO BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST, STE C, DANVILLE, IL 61834
Assignee: OCWEN LOAN SERVICING, LLC at , 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409

Executed By: DEBRA JO TURNER AND DEWAYNE MATHEWS, WIFE AND HUSBAND  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS
Date of Mortgage: 03/20/2007 Recorded: 03/26/2007 in Book/Reel/Liber: 1854 Page/Folio: 492 as Instrument No.: I-2007-005058  In the County of Rogers, State of Oklahoma.

Property Address: 1304 REVIS CROSSING, CLAREMORE, OK 74017

Legal:  Lot three(3) in Block One (1) of The VILLAS AT COUNTRY CLUB CROSSING, an ADDITION to the City of Claremore, being a part of the NE/4 of NE/4 of NW/4 of section 20, Township 21 North, Range 16 east of the Indian Base and Meridian, Rogers County, Oklahoma. according to the recorded Plat thereof.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $128,484.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS
On __AUG 0 4 2016__

By: 
 ___Linda Atkinson___, Vice President

STATE OF __Pennsylvania__
COUNTY OF __Montgomery__

On __AUG 0 4 2016__, before me, ____Eric Sturgis____, a Notary Public in and for __Montgomery__ in the State of __Pennsylvania__, personally appeared ____Linda Atkinson____, Vice President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Eric Sturgis
Upper Dublin Twp, Montgomery County
My Commission Expires 01/11/2020

___Eric Sturgis___
Notary Expires: 1/11/2020

(This area for notarial seal)

**EXHIBIT "3"**