# EXHIBIT 2

AM 7692772.1

IN THE DISTRICT COURT FOR ROGERS COUNTY
STATE OF OKLAHOMA

FILED IN THE DISTRICT COURT
ROGERS COUNTY OKLAHOMA

DEC 27 2018

CATHI EDWARDS, COURT CLERK

| | | |
|---|---|---|
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CJ-2018-399 |
| | ) | |
| DEBRA JO TURNER, A/K/A DEBRA TURNER; DEWAYNE MATHEWS; AND JOHN DOE, OCCUPANT, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' FIRST AMENDED ANSWER AND COUNTERCLAIM

Defendants' Debra Jo Turner and Dewayne Mathews submit the following as their Answer and Counterclaim:

### ANSWER

1. Admitted that Defendants executed the referenced promissory note. Defendants are without information to admit or deny the remaining allegations in paragraph 1 of the Petition.

2. Admitted that Defendants executed the referenced mortgage. Defendants are without information to admit or deny the remaining allegation in paragraph 2 of the Petition.

3. Admitted.

4. Defendants are without sufficient information to admit or deny the allegations in paragraph 4 of the Petition.

5. Defendants admit certain payments were not made. Defendants deny they were in default and deny the remaining allegations in paragraph 5 of the Petition.

6. Denied.

7. Defendants are without sufficient information to admit or deny the allegations in paragraph 7 of the Petition.

1

## AFFIRMATIVE DEFENSES

Defendants state the following affirmative defenses:

8.  Plaintiff failed to satisfy all conditions precedent to filing a viable foreclosure action.

9.  Defendants have fully satisfied the sued upon debt.

For all the reasons set forth in Defendants' Answer and Affirmative Defenses, Plaintiff should take nothing by way of its Petition.

## **COUNTERCLAIM**

1.  On March 20, 2007, Counterclaim Plaintiffs Debra Jo Turner and Dewayne Mathews (Counterclaim Plaintiffs) executed a Note and Mortgage for the purchase of a home located at 1304 Revis Crossing, Claremore, OK 74017. Since that day the property has served as Counterclaim Plaintiffs' only home.

2.  The loan was insured through the Federal Housing Administration's (FHA) mortgage insurance program. FHA is part of the United States Department of Housing and Urban Development (HUD).

3.  A mortgage insured by the FHA offers many advantages to the lender. The greatest advantage is that if a homeowner is unable to make their payments under the terms of the loan, the FHA insures the lender against financial loss resulting from the homeowner's default.

4.  As an FHA insured mortgage, the lender agrees to subject the loan to HUD regulations. The loan at issue in this case references the regulations throughout. The Note states:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, *except as limited by regulations of the Secretary* [HUD] *in the case of payment defaults,* require immediate payment in full of the principal balance remaining due and all accrued interest.
>
> In many circumstances *regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.* This Note does not authorize acceleration when not permitted by HUD regulations. As

2

used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(emphasis added). Likewise the Mortgage states:

> *Lender may collect fees and charges authorized by the Secretary.*
>
> Lender may, *except as limited by regulations issued by the Secretary* in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument.
>
> Regulations of HUD Secretary. *In many circumstances regulations issued by the Secretary will limit Lender's rights,* in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(emphasis added).

5. Loans insured by the FHA are subject to HUD regulations. These regulations are binding on both the mortgagor and mortgagee.

6. HUD regulations restrict a lender's right to charge a homeowner for property inspection fees. HUD regulation 24 C.F.R. § 203.377 states:

> The mortgagee, *upon learning that a property subject to a mortgage insured under this part is vacant or abandoned,* shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and *efforts to reach the mortgagor by telephone within that period have been unsuccessful,* the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant.

24 C.F.R. § 203.377 (emphasis added).

7. HUD has determined that this regulation prohibits the lender from charging a property inspection fee if the lender has reason to believe the home is occupied:

> If there is evidence that the mortgagee knew the mortgagor was still in occupancy, such as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD office, *such charges are inappropriate and must not be charged to the mortgagor* or included on a claim for insurance benefits.

3

HUD Handbook 4330.1 REV-5 9-9(A)(c)(2)(d).  (emphasis added).

8.   In this case, Ocwen Loan Servicing, LLC (Counterclaim Defendant) charged the Counterclaim Plaintiffs inspection fees that it was not entitled to collect.

9.   The Counterclaim Defendant charged the Counterclaim Plaintiffs at least $287.33 in unauthorized inspection fees.  The fees were unauthorized because Counterclaim Defendant had unmistakable evidence the home was occupied by the Counterclaim Plaintiffs.

10.   Counterclaim Defendant uses the property inspection fee to enhance their own servicing profits, not to protect its interest in the property.  Furthermore, Counterclaim Defendants abuse of property inspections is believed to be a systemic, widespread practice impacting thousands of homeowners.

## CLASS ALLEGATIONS

11.   Plaintiff brings this action as a class action.

12.   Plaintiff proposes four sub-classes:

<u>Class One</u>
All citizens of the State of California and the State of Texas who within four years prior to filing this Counterclaim had an FHA insured loan with or serviced by Ocwen Loan Servicing, LLC; who occupied the property; and who were charged inspection fees while still occupying the property.

<u>Class Two</u>
All citizens of the State of Oklahoma, the State of Florida, the State of Missouri, and the State of Virginia who within five years prior to filing this Counterclaim had an FHA insured loan with or serviced by Ocwen Loan Servicing, LLC; who occupied the property; and who were charged inspection fees while still occupying the property.

<u>Class Three</u>
All citizens of the State of Connecticut, the State of Georgia, the State of Massachusetts, and the State of New Jersey who within six years prior to filing this Counterclaim had an FHA insured loan with or serviced by Ocwen Loan Servicing, LLC; who occupied the property; and who were charged inspection fees while still occupying the property.

<u>Class Four</u>
All citizens of the State of Iowa, the State of Rhode Island, and the State of West Virginia who within ten years prior to filing this Counterclaim had an FHA insured loan with or serviced by Ocwen Loan Servicing, LLC; who occupied the property; and who were charged inspection fees while still occupying the property.

13. Excluded from the proposed Class are members of the judiciary, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities.

14. This action is brought and may properly be maintained as a class action pursuant Okla. Stat. tit. 12 § 2023. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the rule.

15. Counterclaim Plaintiffs maintain the right to create additional subclasses or classes, if necessary, and to revise this definition to maintain a cohesive class that does not require individual inquiry to determine liability.

16. The exact number of class members is unknown to Counterclaim Plaintiffs at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by the Counterclaim Defendant. Upon information and belief, the number of putative members of the class exceeds 1,000 persons and entities.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

17. There are common questions of law and fact common and of general interest to the Class. These common questions of law and fact predominate over any questions affecting only individual members of the class. Such common questions include, but are not limited to, the following:

    a. Whether Counterclaim Defendant breached the terms of the note and/or

5

mortgage by charging unauthorized fees;

b. Whether Counterclaim Defendant breached the terms of the note and/or mortgage by charging property preservation fees/property inspection fees to homeowners who were living in the property;

c. Whether Counterclaim Defendant's servicing activities violated HUD regulations;

d. The extent to which homeowners were harmed due to Counterclaim Defendant's unauthorized servicing practices:

e. Whether Counterclaim Defendant's servicing activities were reasonable to homeowners;

f. Whether Counterclaim Defendant's used unauthorized inspection fees to profit at the expense of home owners;

g. Whether Counterclaim Defendant's knew their servicing activities were unauthorized by HUD regulations;

h. Whether Plaintiff and class members are entitled to class relief as requested herein.

## TYPICALITY AND NUMEROSITY

18. The claims of Counterclaim Plaintiffs are typical of the claims of the Class. Counterclaim Defendant's common course of conduct caused Counterclaim Plaintiffs and all proposed class members the same harm. Counterclaim Defendant's conduct caused each class member economic harm. Upon information and belief, the total number of members of the proposed class exceeds 1,000 members and is so numerous that separate joinder of each member is impracticable.

## ADEQUATE REPRESENTATION

19. Counterclaim Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interest antagonistic to those of other class members. Counterclaim Plaintiffs have retained class counsel competent to prosecute class actions.

## SUPERIORITY

20. The Class may be properly maintained under Okla. Stat. tit. 12 § 2023. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interests of judicial economy favor adjudicating the claims for the class rather than on an individual basis. The class action mechanism provides the benefit of unitary adjudication, economies of scale, and comprehensive supervision by a single court.

21. Questions of law and fact predominate over any questions affecting only individual members.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

22. Counterclaim Plaintiffs incorporate the preceding factual allegations contained in this Counterclaim, as if fully set forth herein.

23. Counterclaim Defendant is limited in when it is allowed to charge property inspection fees by the terms of the Note, Mortgage, and the HUD regulations incorporated therein. Counterclaim Defendants are not allowed to charge property inspection fees when a home is occupied.

24. Despite these limitations, Counterclaim Defendant charged unauthorized property inspection fees.

25. Counterclaim Defendant's conduct in charging unauthorized inspection fees is a breach of the contractual obligations owed to the Counterclaim Plaintiffs.

26. As a result of Counterclaim Defendant's conduct, Counterclaim Plaintiffs and the Class have been damaged.

27. Counterclaim Plaintiffs and the Class seek actual and compensatory damages and disgorgement of money wrongfully received by Counterclaim Defendant.

## SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT

28. Counterclaim Plaintiffs incorporate the preceding factual allegations contained in this Counterclaim, as if fully set forth herein.

29. Counterclaim Defendant's practice of charging for unauthorized property inspection fees, resulted in it obtaining funds from Counterclaim Plaintiff and the Class, which it is not entitled to keep.

30. As a direct result thereof, Counterclaim Defendant has been unjustly enriched and at the expense of Counterclaim Plaintiff and the Class.

31. Counterclaim Plaintiff seeks recovery of all property and money improperly procured.

## THIRD CAUSE OF ACTION
### NEGLIGENCE

32. Counterclaim Plaintiffs incorporate the preceding factual allegations contained in this Counterclaim, as if fully set forth herein.

33. Counterclaim Defendant owed a duty to Counterclaim Plaintiff and the Class to assess only those authorized fees and charges.

8

34. Counterclaim Defendant breached this duty by assessing Counterclaim Plaintiff and the Class unauthorized property inspection fees.

35. As a result of Counterclaim Defendant's conduct, Counterclaim Plaintiff and the Class have been damaged.

### FOURTH CAUSE OF ACTION
### BAD FAITH

36. Counterclaim Plaintiffs incorporate the preceding factual allegations contained in this Counterclaim, as if fully set forth herein.

37. Counterclaim Defendant's decision to charge Counterclaim Plaintiffs and the Class property inspection fees was against the clear language of the loan contract.

38. Counterclaim Defendant's decision to charge Counterclaim Plaintiffs and the Class property inspection fees was in such gross disregard to its obligations under the loan contract that it amounts to a tortious breach of contract.

39. Counterclaim Defendant's tortious breach of contract amounts to bad faith.

WHEREFORE, Counterclaim Plaintiffs on behalf of themselves and all others similarly situated request judgment against the Counterclaim Defendant for all monetary damages suffered by them and the Class; complete disgorgement of all monies wrongfully obtained by Counterclaim Defendant due to its practice of assessing unauthorized property inspection fees; and an order prohibiting the Counterclaim Defendant from continuing the wrongful practice.

Respectfully submitted,

THE BARRON LAW FIRM, PLLC


*Brad Barron*
_____
Bradford D. Barron, OBA #17571
Zachary T. Barron, OBA #18919
P.O. Box 369
Claremore, Ok 74108
(918) 341-8402 Phone
(918) 515-4691 Fax
Bbarron@barronlawfirmok.com
Zbarron@barronlawfirmok.com

10

## CERTIFICATE OF MAILING

I certify that on December 27, 2018, a true and correct copy of this document was mailed to the following:

Kirk J Cejda
Lesli Peterson
Ken Hemry
Lyna Mitchell
Kristan Bolding
770 NE 63rd St.
Oklahoma City, OK 73105-6431

And

Lysbeth George
Joel Harmon
Crowe & Dunlevy
324 N. Robinson Ave.
Suite 100
Oklahoma City, OK 73102

*Brad Barron*
Bradford D. Barron