EXHIBIT 6

4330.1 REV-5

---

CHAPTER 1.   GENERAL

1-1     GOAL.  The Congress has adopted a national housing goal expressed as
        "a decent home and a suitable living environment for every American
        family".

        A. HUD's Role.  HUD is charged with implementing the programs
           enacted by Congress to achieve this goal.

        B. Housing's Role.  The Office of Housing's role is to further
           program objectives by exercising effective management practices
           while protecting the interests of HUD with prudent fiscal
           management.  For the most part, these programs are carried out
           through the private mortgage markets, with HUD-approved
           mortgagees originating and servicing individual mortgages.

1-2     HUD MONITORING.  This Handbook provides procedural standards and
        guidelines that must be followed when servicing an FHA/HUD-insured
        mortgage regardless of the entity holding and/or servicing the
        mortgage.

The mortgagee's servicing operations will be monitored and, where
necessary, corrective action will be required.  Refusal to take the
corrective action or continued noncompliance with HUD requirements
will result in the Department taking appropriate action (i.e.,
including, but not necessarily limited to, an administrative and/or
monetary sanction against that mortgagee (also, see Paragraphs 8-7F1
and 8-7G).

        NOTE:   Withdrawal of HUD approval may result in the mortgagee's
                debarment from doing business with any Federal government
                agency under government-wide debarment regulations (24 CFR
                24).

1-3     SERVICING OBJECTIVES.  All servicing policies are directed toward
        achieving the following basic objectives:

        A. implementing the national housing goal of "a decent home and a
           suitable living environment for every American family";

        B. protecting HUD's interest in the insured mortgage (i.e.,
           minimizing the probability of an insured

---

4330.1 REV-5

---

        mortgage terminating in default and foreclosure, and by
        minimizing HUD's loss where claims cannot be avoided);

      C. encouraging private investment in HUD-insured home mortgages at
         the lowest effective cost to mortgagors; and

      D. assuring an adequate standard of fair dealing among all
         participants in a HUD-insured mortgage transaction.

1-4MORTGAGEE RESPONSIBILITY (24 CFR 203.500).  HUD regulations identify
what the Secretary considers to be acceptable standards and "prudent
servicing" when mortgagees service HUD-insured mortgages.  HUD expects
approved mortgagees to develop and implement policies and practices
consistent with those standards and to prudently service loans.

      NOTE:Mortgagees are reminded that when making decisions as to
whether a change should be made to an existing mortgage,
they are expected to abide by the Fair Housing Act, the
Equal Credit Opportunity Act, Executive Order 11063, and HUD
regulations issued pursuant to these authorities, prohibit
discrimination in all phases of mortgage lending, including
discrimination in revisions to existing mortgages and in the
treatment of mortgages on which payments may or may not be
current.  Prohibited basis of discrimination include:  race,
color, religion, sex, handicap, familial status, national
origin, age and public assistance as a source of income.

      A.Servicing Of Account.  In accordance with 24 CFR 203.502,
effective after January 10, 1994, all mortgagees who wish to
service FHA-insured mortgages must be approved by the Secretary.
The mortgagee shall remain fully responsible to the Secretary for
proper servicing, and the actions of its servicer shall be
considered to be the actions of the mortgagee.  The servicer also
shall be fully responsible to the Secretary for its actions as a
servicer.  HUD expects the holding mortgagee or investor to
assure that adequate servicing facilities are available in the
are where the property is located.

*    B.  Loss Mitigation.  Mortgagees must consider the comparative
effects of their various actions, and must take those actions
which can reasonably be expected to generate the smallest
financial loss to the Department.  The Department recommends that
mortgagees designate

---

9/941-2

4330.1 REV-5

---

      loss mitigation specialists of develop staff
      specifically to carry out such efforts.
*

      C.Quality Control Plan (24 CFR 202.12(j)).  Each HUD-approved
mortgagee must establish and maintain a formalized, written
quality control plan for mortgage servicing on a system-wide

management experience.  A flexible servicing program that recognizes
differences in mortgagors' individual characteristics and
circumstances can do much to minimize the adverse effects of these
problems.

1-9  DELINQUENCY AND DEFAULT COUNSELING

    A.Mortgagees must notify homeowners no later than 45 days after the
delinquency occurs of the availability of homeownership
counseling.  (See Paragraph 7-7H.)

    B.Mortgagees may obtain copies of the list of HUD-approved housing
counseling agencies from HUD Field

---

1-79/94

    4330.1 REV-5

---

    Offices.  Request copies of the nationwide list from the Single
Family Servicing Division in HUD Headquarters.

    C.Mortgagees may provide the counseling agency list or a HUD
toll-free telephone number to mortgagors with any collection
letter as long as the list is provided no later than 45 days
after the occurrence of the delinquency.  In addition, mortgagees
must include, with HUD Assignment Program Letters 1 and 3, a list
of HUD Approved Housing Counseling Agencies or the HUD Nationwide
toll-free telephone number (1-800-569-4287) by which the
mortgagor may obtain a list of HUD Approved Housing Counseling
Agencies.

    NOTE:If there are no HUD-approved housing counseling agencies
nearby, the homeowner whose mortgage is delinquent, then
those agencies located in the adjoining city, county, or
state shall be recommended by the mortgagee.

---

9/941-8

4330.1 REV-5

---

### CHAPTER 4.  FEES AND CHARGES AFTER ENDORSEMENT

4-1     ACCEPTABLE FEES AND CHARGES - GENERAL (24 CFR 203.552).  HUD
        regulations specify that the mortgagee may collect "reasonable and
        customary" fees and charges from the mortgagor after the mortgage is
        insured and as authorized by HUD.

   A. Fee Basis.  The basic rule governing all the amounts shown in
      this chapter that may be charged for a service is that all fees
      must be:

        1. "reasonable and customary" for that area of the country; and

        2. based on actual cost of the work performed (including actual
           out-of-pocket expenses); and

        3. within the maximum amount allowed by HUD.

        NOTE: Under no circumstances may a post-endorsement fee or
              charge be based upon a percentage of either the face
              amount or the unpaid principal balance of the mortgage.

   B. Fee Regulators.  Services for which a fee may be assessed and the
      amounts that may be collected from mortgagors are either
      established by HUD regulations, HUD Headquarters, HUD Regional
      Offices and/or HUD Field Offices having jurisdiction over the
      mortgage and in accordance with the Federal National Mortgage
      Association (FEMA) fee schedules.  (See Paragraph 4-8.)

        NOTE:   A mortgagee may be in violation of HUD regulations
                should it be collecting a fee (regardless of when the
                fee is actually collected) for:

                1. a service which in not specifically authorized in
                   Paragraph 4-1C; or

                     2.a service not authorized in advance by one of
the
fee regulators above.

                     3.charging a fee that does not comply with the
rule
stated in Paragraph 4-1A.

---

4-19/94

        4330.1 REV-5

---

4.a service for which a fee is prohibited (Paragraph 4-12).

C.Services For Which Charges May Be Assessed.  A "reasonable and customary" fee (determined in accordance with Paragraph 4-1A) may be assessed for the following services:

1.late charges as set forth in Paragraph 4-2; (Established by the security instrument).

2.processing and reprocessing checks in accordance with Paragraph 4-3 which have been returned as uncollectible; (Established by HUD Regional Offices).

3.processing a change of ownership by assumption in accordance with Paragraph 4-4; (Established by HUD Headquarters).

4.processing a change of ownership involving review of the assumptor's credit, with or without release of the original mortgagor from liability in accordance with Paragraph 4-4; (Established by HUD Headquarters).

5.substitution of hazard insurance policies at a time other than at the expiration of an existing policy in accordance with Paragraph 4-5; (Established by HUD Regional Offices).

6.modification (recast) of the mortgage involving formal, recorded documents in accordance with Paragraph 4-6; (Established by the local HUD Field Offices).

7.processing partial releases of the security in accordance with Paragraph 4-7; (Established by the local HUD Field Offices).

8.attorney and trustee fees associated with mortgagor reinstatement in accordance with Paragraph 4-8A; (Established by the Federal National Mortgage Association (FNMA) Schedule of Standard Attorney's and Trustee's Fees). The Department considers the FNMA fee schedule to be reasonable and customary.

_____

9/944-2

4330.1 REV-5

_____

NOTE:allowable attorney fees with respect to Claims for Insurance Benefits are established by Headquarters.

9.annual service charges in accordance with Paragraph 4-9; (Established by HUD Headquarters).

          10.trustee and recording fees associated with satisfaction referred to in Paragraph 4-10; (Established by the local HUD Field Offices).

          11.property inspections and preservation expenses as referred to in Paragraph 4-11; (Established by Regional HUD Offices).

          12.FAXing of payoff statement, upon request, (Established by HUD Headquarters.  See Paragraph 4-12C2.)

*    D.   Services For Which Charges May Be Assessed After Established Number Of Times Has Been Exhausted.  HUD has established the number of times a service can be provided at no charge to the mortgagor.  After the established number of times has been exhausted, each time a service is performed, the cost can be charges to the mortgagor.  The following services with established fees are considered reasonable and customary for all sections of the country.

          1.Providing a copy of the mortgage or deed of trust: if the copy is a duplicate of what had already been provided to the mortgagor, a maximum fee of $10 is allowable.

          2.Providing a copy of the mortgage note:  if the copy is a duplicate of what has already been provided to the mortgagor, a maximum fee of $10 is allowable.

          3.Providing a copy of the settlement statement, gift letters and other documents:  a maximum fee of $10 is allowable.

          4.Providing a new amortization schedule other than the schedule provided at closing:  a maximum fee of $15 is allowable.

          5.Incorporating a borrower's name change into the servicer's loan system:  since this service is

_____

4-39/94

    4330.1 REV-5

_____

          considered a routine servicing function, no fee is approved.

          6.Providing payoff statements:  no charge may be made for the first two such statements provided per calendar year; the mortgagee may charge $10 for providing each additional statement requested.

          7.Faxing any payoff statement (upon request of mortgagor): a maximum fee of $5 is allowable.

          8.Providing replacement coupon books:  a maximum fee of $5 is allowable.

9.Re-analyzing escrow accounts and providing new coupon books: since these are normal servicing functions no fee is allowable.

10.Providing a payment history to the mortgagor (other than the current year and one prior year):  a maximum fee of $5 is allowable.

11.Verifying the mortgage to prospective creditor: this covers requests from other lenders to verify the status of an existing loan (typically in connection with a refinance application).  A $20 fee is allowed as long as the mortgagor has given the new lender a written authorization for the release of the information to the new lender and for the fee.

12.Providing duplicate year-end statements:  a maximum fee of $5 is allowable.

13.Processing and/or reprocessing of checks returned as uncollectible:  if a State has a set fee, a mortgagee may charge up to the maximum amount; otherwise, the maximum allowable fee is established by HUD Regional Offices.   *

4-2LATE CHARGES (24 CFR 203.25).  Assessment of a late charge is intended only to reimburse the mortgagee for the added expense of collection activities and to serve as motivation to the mortgagor to make timely payments (also, see Paragraph 7-7F).

A.Date Late Charge May Be Assessed.  HUD regulations 24 CFR 203.25 and the security instrument provide the mortgagee with the option of collecting a late charge if a payment is received by the mortgagor more than 15

_____

9/944-4

4330.1 REV-5

_____

days after the due date, the first day of the month, (i.e., the payment is received by the mortgagee after the 16th of the mouth in which it is due).

EXAMPLE:  Installment Due Date          =     March 1

Mortgage Is Delinquent          =     March 2

15th Day After Installment
Due Date;                       =     March 16

Earliest Date Late Charge
May Be Assessed                 =     March 17

NOTE:A late charge may not be assessed against a Payment

normal time for renewing the hazard insurance policy, the mortgagee
may charge a reasonable and customary fee (set by the Regional Office
having jurisdiction over the mortgage) for handling the replacement
policy.

          NOTE:This does not apply to an assumption where the new mortgagor
prefers to use a company and/or agent other than the one
used by the former mortgagor, even if it does not fall
within the normal time for renewing the policy on that
particular mortgaged property.

4-6MODIFICATION (RECAST) OF MORTGAGES.  Where a mortgagee grants relief
to a defaulting mortgagor by modifying (or recasting) the mortgage, a
fee, considered by the local HUD Field Office to be "reasonable and
customary" for that area

_____

9/944-10

4330.1 REV-5

_____

of the country, may be assessed for processing and recording the
modification.

4-7PARTIAL RELEASE OF SECURITY.  Costs involved in processing partial
releases of the security (whether as a result of condemnation or of
voluntary action by the mortgagor) are the mortgagor's responsibility
and may be passed on to the mortgagor.  However, any costs passed on
to the mortgagor must be in an amount that is considered by the local
HUD Field Office to be "reasonable and customary" for that service in
that area of the country.

4-8   ATTORNEY'S AND TRUSTEE'S FEES - MORTGAGOR REINSTATEMENT
*     (24 CFR 203.552 (a)(9)).  When a mortgage is referred to
      foreclosure and is later reinstated, and where bankruptcy
      related services occur, mortgagees can collect fees from
      the mortgagor in accordance with the Federal National
      Mortgage Association (FNMA) Schedule of Standard Attorney's
      and Trustee's Fees in effect on the date the legal action
      is instituted.  The Department considers the FNMA fee
      schedules to be reasonable and customary.
*

      A.Legal fees may be collected from the mortgagor only when the
mortgagee has made its "decision to foreclose" and has instructed
the attorney to initiate legal action.

          NOTE:It is HUD's position that, if the attorney is required
to ask the mortgagee's permission to proceed further at
any stage of the foreclosure once the case is referred
to the attorney, the "decision to foreclose" has not
been made by the mortgagee.

Where the "decision to foreclose" has not been made, no
legal fee may be passed on to the mortgagor for any

work that was performed prior to the mortgagee making its "decision to foreclose".

B. The amount passed on to the mortgagor must be the "actual amount incurred" by the mortgagee and must be in accordance with the FNMA fee schedules.  In order to pass on this cost, neither the attorney nor the trustee performing the service can be a salaried member of the mortgagee's and/or servicer's staff.

C. Mortgagees shall not charge mortgagors an administrative and/or reinstatement fee in connection with the reinstatement of their mortgage.

---

4-119/94

4330.1 REV-5

---

NOTE: Attorney and trustee fees associated with filing a claim for insurance benefits when a mortgage is not reinstated are discussed in Paragraph 9-5C.

4-9 ANNUAL SERVICE CHARGES (24 CFR 203.23(c)).  For mortgages insured as the result of an application submitted before July 17, 1961, with an original principal amount of no more than $9,000, the mortgagee may collect a monthly service charge of no more than one-half of one percent per annum of the average unpaid principal balance if provided for in the security instrument.

4-10 TRUSTEE'S AND RECORDING FEES FOR SATISFACTIONS (24 CFR 203.552).

A. Trustee's Fee (24 CFR 203.552(a)(11)).  If the security instrument specifically provides for the payment of a trustee's fee for the execution of a satisfaction, release or trustee's deed when the debt is paid in full, the mortgagee may charge a fee for that service.  However, the fee must be an amount that is considered by the local HUD Field Office to be "reasonable and customary" for that service in that area of the country.

B. Recording Fee (24 CFR 203.552(a)(12)(iv)).  In those states where a mortgagee is not required by law to record the satisfaction, the mortgagee may charge a fee.  However, the fee must be one that is considered by the local HUD Field Office to be "reasonable and customary" for that service in that area of the country.  (See Paragraph 4-12C for satisfactions required by State law.)

4-11 PROPERTY INSPECTIONS/PRESERVATION (24 CFR 203.377).  Mortgagees are charged with the responsibility of taking reasonable action to protect and preserve vacant and abandoned properties until foreclosure can be completed and title conveyed to HUD in accordance with HUD regulations.  In the event of reinstatement, the mortgagee may pass on the costs of such action.

A. If A Mortgage Is Reinstated.  Costs of property inspections and/or preservation may be recovered from the mortgagor provided all of the following conditions are met:

      1. the mortgage is reinstated;

_____

9/944-12

4330.1 REV-5

_____

      2. the fee is not inconsistent with HUD's requirements;

      3. the fee is not inconsistent with state law;

      4. the fee is not inconsistent with the security instruments; and

      5. the costs are considered by the Regional Office to be reasonable and customary" for such services.

B. If A Claim Is Filed With HUD.  The mortgagee shall be reimbursed in accordance with HUD claims policies for costs of property inspections and/or preservation.  See Chapter 9, Paragraph 9-9A2.

4-12 PROHIBITED FEES AND CHARGES (24 CFR 203.552(a)(12)).  There are some services a mortgagee may not charge the mortgagor.  These services are listed below:

Fees and Charges Specifically Prohibited by HUD Regulations (24 CFR 203.552(a)(12)).  Fees and charges listed below are prohibited:

A. Charges For Servicing Activities.  Mortgagees may not charge mortgagors for the cost of telephone calls, telegrams, personal visits with the mortgagor, or other activities that are normally considered a part of a prudent mortgagee's servicing activity.

B. Fees For Tax Services.  The mortgagee's use of an independent contractor such as a tax service to furnish tax data and information necessary to pay property taxes and in some circumstances to make the payments on behalf of the mortgagee.

C. "Satisfaction", "Reconveyance", Or "Termination" Fees.  Except as provided for in Paragraph 4-10, no fee may be collected for:

      1. preparing and providing evidence of satisfaction, reconveyance or termination of the mortgage;

      2. providing information essential to the satisfaction, such as preparing a payoff statement; Although mortgagees may not charge for the payoff statement, if FAXing of the statement "is requested," a fee of $5 is permitted.  (See Paragraph 4-1C12)

---

4-139/94

    4330.1 REV-5

---

           3.recording the satisfaction of the mortgage in states where recordation is the responsibility of the mortgagee.

     D.Attorney's Fees.  No charge may be made for any legal service provided by an attorney who is a salaried member of the mortgagee's and/or servicer's staff.

     E.Trustee's Fees.  No charge may be made for any service performed by a trustee who is a salaried member of the mortgagee's and/or servicer's staff.

     F.Fees Based On Fee Amount Or Unpaid Balance (24 CFR 203.552(b)). No fee or charge shall be based on a percentage of either the face amount of the mortgage or the unpaid principal balance due on the mortgage.

4-13OTHER FEES AND CHARGES (24 CFR 203.552(12)).  The local HUD Office or Headquarters may be asked to rule on any fee or charge or unusual service not specifically mentioned in this Handbook.  The determination will be based on what is reasonable and customary in the area.

---

9/944-14

retained for a minimum of 3 years after the filing of a claim as
the mortgagee could be required to produce documentation to
support its claim.

7-6STAFFING (24 CFR 202.12(b)).  A successful collection department is
one that incorporates both understanding and flexibility into its
operations.  There is no substitute tor human judgment in servicing,
and the function must not be relegated to automated systems or encased
in a rigid system.  24 CFR 202.12(b) requires the mortgagee to "employ
trained personnel competent to perform their assigned
responsibilities, including . . . servicing and collection activities,
and adequate staff and facilities to . . . .  service mortgages . . .
."

        A.Qualifications.  Collection personnel shall be qualified to
evaluate delinquent accounts in relation to the circumstances of
the mortgagor so that they can make sound decisions regarding the
possibility of avoiding foreclosure.

        B.Knowledge.  The collection staff shall be familiar with HUD
regulations and with the temporary relief measures available to
mortgagors.

        C.Accessibility (24 CFR 203.604).  The staff shall be accessible to
delinquent mortgagors for personal interviews when distance does
not preclude such interviews, or for extended telephone
interviews at no expense to the mortgagor when long distances are
involved.  A

---

9/947-4

4330.1 REV-5

---

        personal interview (or a reasonable attempt to arrange one) is
required before 3 full monthly payments are due but unpaid,
except in the following situations:

                1.there is no office of either the mortgagee or the servicer
(including production offices) within 200 miles of the
property;

                2.the mortgagor does not live in the property;

                3.the mortgagor has clearly indicated that he/she will not
cooperate; or

                4.a realistic repayment plan has been agreed to by mail or
telephone and payments under the plan are current.

        D.Counseling.  The collection staff shall know the identity and
location of HUD-approved counseling agencies and other community
agencies that can serve the mortgagor, treat the causes of
default, and help the mortgagor bring his/her mortgage current.

7-7COLLECTION TECHNIQUES (24 CFR 203.600).  Mortgagees shall take prompt
action to collect amounts due from mortgagors to minimize the number
of accounts in a delinquent or default status.  Contact is the most
effective collection tool.  It is essential that it be attempted as
early as possible in the delinquency.  Acceptable contacting
techniques are discussed below.

          A.Letters And Automatic Notices.  Computer-prepared cards and
preprinted form letters are sometimes effective, particularly
with occasional delinquents.  If form letters are used, controls
should be established to avoid sending the same letter repeatedly
to the same mortgagor.  Personal letters, however, are the
preferred approach than form letters.  Send individual letters
after the 20th day of delinquency.

          B.Telephone Calls.  Telephone calls are highly effective and the
simplest form of direct communication with the mortgagor.
Successful telephone interviews will generally preclude the need
for a personal interview.  All pertinent information developed
during the interview must be fully documented in the collection
records.  Mortgagees must commence telephone contacts by the 17th
days of the delinquency and complete them by the end of

---

7-59/94

   4330.1 REV-5

---

          the month.  Earlier contact--between the 7th and 10th days of the
delinquency--may be warranted for habitual delinquents.

          When conducting telephone interviews it is important to be both
firm and courteous.  Schedule contacts with delinquent
mortgagors, when possible, for a time most appropriate for
productive discussion.  Interviewers should:

               1.emphasize the importance of making payments as they come
due;

               2.determine the causes of the delinquency;

               3.get the mortgagor's commitment to bring the mortgage current
as soon as possible.  Establish a specific reinstatement
date or a date on which an acceptable payment will be made;

               4.when appropriate, remind the mortgagor of the provisions of
the mortgage and the methods of legal recourse available to
the servicer;

                    NOTE:Empty threats are not appropriate.  The
interviewer should not point out the possibility
of foreclosure unless there is a real probability
that the mortgagee will start foreclosure if

14

payment is not made promptly.

                 5.either put repayment plans in writing or make sure they are fully documented; and

                 NOTE:Unpaid mortgage interest will not be allowed in any insurance settlement unless the agreement complies with all requirements of 24 CFR 203.614.

                 6.follow up promptly if the mortgagor agrees to a payment schedule and the payments are not made.

                 NOTE:If a payment is promised on the tenth, for example, there should be another call to that mortgagor on the eleventh if the payment has not been received.  The servicer is responsible for following up promptly on missed payments.

---

9/947-6

4330.1 REV-5

---

     C.Face-to-Face/Personal Interviews (24 CFR 203.604).  There must be either a face-to-face interview or a "reasonable effort" (also see Paragraph 7-7C2) to arrange one before three full monthly payments are due and unpaid.  (No later than the 62nd day of delinquency.)  See Chapter 9 for Property Inspection requirements.

     Additional face-to-face interviews with the mortgagor may be necessary, and a servicer should use its judgment in making this determination.

                 NOTE:With regard to shared equity mortgages, only the mortgagor living in the property must be interviewed face-to-face.  However, the non-occupant mortgagor must be advised of the meeting and encouraged to attend as the delinquency will also affect him/her.

                 1.Purpose of Interview.  This requirement is intended to emphasize the importance of face-to-face visits in reducing the incidence of foreclosure.  A meeting with the mortgagor by a mortgagee employee can often determine the cause of the default, obtain financial information; establish a repayment schedule and prevent foreclosure by influencing the payment habits of mortgagors.  HUD does not require that mortgagees maintain an office in a location in order to originate and/or service mortgages.  However, it is a good servicing practice to maintain an office (whether a servicing or production office) in areas reasonably accessible to the properties that are the security for the company's mortgage loans.

Foreclosure must begin (or a deed-in-lieu of foreclosure must be accepted) within the following time frames:

*              a.   within nine months from the date of default
                          (24 CFR 203.355); or
*

                    b.the mortgagee is prevented by law from beginning foreclosure earlier within 60 days after it becomes legally able to do so (24 CFR 203.355(c)).

                    NOTE:See Chapter 9 for Time Limits and additional foreclosure requirements.

                    2.Minimum Time To Begin Foreclosure (24 CFR 203.606).  With the exception of the three items listed below, foreclosure may not begin unless at least three full monthly installments under the mortgage are due but unpaid.  (See Chapter 8-7 for procedures with respect to the Assignment Program.)  If the mortgagor is making no payments whatsoever, foreclosure may begin on the day after the due date of the third unpaid installment.  If the mortgagor is making partial payments, all such payments must be applied, and foreclosure may begin only on the day after three full monthly installments are due but unpaid.  The three exceptions to this rule are as follows:

                    a.when the mortgagee determines that the property has been abandoned or has been vacant for more than 60 days;

                    b.when, after having been advised of the options available for relief, the mortgagor has clearly stated in writing that he/she has no intention of making the delinquent payments; and

                    c.when the mortgaged property is not the mortgagor's principal residence and the mortgagor owns two or more properties occupied by tenants who are paying rent, but the rental income from the property under review is not being applied to the mortgage on that property.

_____

7-239/94

   4330.1 REV-5

_____

7-13OFFERS OF REINSTATEMENT.  Foreclosure may not be started if the mortgagor has tendered, in a lump sum, sufficient funds to reinstate the account, with the exception of accrued late charges, even if the mortgagee chooses to refuse to accept the mortgagor's offer.

7-14WHEN REINSTATEMENT MUST BE PERMITTED AFTER FORECLOSURE BEGINS (24 CFR 203.608).  The mortgagee shall permit reinstatement of a mortgage at

any time (even after foreclosure begins) if the mortgagor tenders in a
lump sum the following:

       A.all amounts required to bring the account current, including
foreclosure costs and reasonable attorney's fees and expenses
properly associated with the foreclosure action; and

       B.the full amount to cover any sums advanced by the mortgagee on
behalf of the mortgagor for any purpose (such as the payment of
taxes).

7-15WHEN REINSTATEMENT DOES NOT HAVE TO BE PERMITTED ONCE FORECLOSURE HAS
BEGUN (24 CFR 203.608).  The mortgagee may refuse reinstatement if:

       A.the mortgagee has accepted reinstatement after having begun
foreclosure within two years immediately before the beginning of
the current action;

       B.the reinstatement will preclude foreclosure in the event of a
subsequent default; or

       C.the reinstatement will adversely affect the priority of the
mortgage lien.

7-16  INSPECTION AND PRESERVATION OF PROPERTIES (24 CFR 203.377).
      Properties securing mortgages that are delinquent or in
      default impose added servicing responsibilities.  Failure
      to meet those responsibilities can result in significant
      reductions in amounts included in the settlement of claims
      for mortgage insurance benefits.  For detailed requirements
      and actions outstanding with respect to claims see Chapter
      9 and outstanding Claims Instructions.
*
7-17  DELINQUENCY AND FORECLOSURE RATIOS.  In analyzing your
      collection department's effectiveness, it is suggested
      that Management continuously review the Delinquency,

---

9/947-24

4330.1 REV-5

---

Foreclosure, deed-in-lieu and Cure Rates of the servicing portfolio.
The data should be reviewed relative to geography, demographics,
comparisons relative to other lending institutions, etc. to determine
policies and procedures that comply with HUD's servicing requirements.

*

---

4330.1 REV-5

_____

             CHAPTER 9.  FORECLOSURE AND ACQUISITION OF THE PROPERTY

*    9-1  A.   GENERAL.  This Handbook Revision does not include details of
              the claims policy.  Mortgagees must refer to HUD Handbook
              4330.4 "FHA Single Family Insurance Claims," and any
              Mortgagee Letters issued after the current edition of
              Handbook 4330.4.  Where the provisions of this Handbook
              differ from new regulations, the regulations and the
              Mortgagee Letter explaining the regulations control.    *

         B.   Defaulting Mortgagor Unable To Resume Payments.  When a
              defaulting mortgagor either cannot or will not resume
              and complete the mortgage payments, the mortgagee must
              take steps to acquire the property or see that it is
              acquired by some third party.  Before starting foreclosure,
              the mortgagee must review its servicing record to
              be certain that servicing has been prudent and
    *         adequate.  However, when foreclosure is appropriate,
              mortgagees must process foreclosure in a timely manner.   *

    9-2  ACTIONS PRIOR TO ACQUISITION.  The mortgagee must sufficiently
         document its actions to satisfy a reviewer that the requirements
         of this Handbook have been met.

         A.   Management Review (24 CFR 203.606).  The mortgagee must
              review its records before starting foreclosure (See
              Paragraph 7-11) to ensure that:

              1. HUD's servicing requirements, both regulatory and those
                 set forth in this Handbook have been met; and

              2. every reasonable effort has been expended to avoid the
                 foreclosure through the use of other servicing options
                 (a loss mitigation review should be accomplished);

              3. written evidence must be contained in the file that the
                 mortgage holder agreed to the foreclosure.

         B.   Quality Control (24 CFR 202.12(j)).  A requirement for the
              continuing approval of a mortgagee is the presence and
              utilization of an adequate quality control plan covering
              both origination and servicing procedures.  Ensure that the
              quality control plan includes the process of applying for
              FHA insurance benefits.  Additional guidance regarding
              quality control plans may be found in Chapter 1, Paragraph
              1-4C.

_____

    4330.1 REV-5

the foreclosure sale.

      I.Deed-in-Lieu Of Foreclosure.

      A deed-in-lieu of foreclosure shall not be considered by a mortgagee in cases where a decision has been made by HUD to pursue a deficiency judgment.

      J.Claim Instructions.  Mortgagees must refer to the existing instructions for completing and submitting the HUD-27011 claim form.

9-8  DEFICIENCY JUDGMENTS.  (24 CFR 203.369; 24 CFR 203.402(o).)

      A.Department-wide Program.  Deficiency judgments are being pursued Department-wide except where state law makes them impossible or highly impracticable.

      B.Purpose For Pursuing Deficiency Judgments.

        1.Deterrence of future abuse of HUD programs.

        2.Collection of revenue to offset losses to HUD.

      C.Initiating The Deficiency Judgment Process.

        1.Local HUD Offices use internal data pertaining to defaults and foreclosures to identify mortgagors against whom deficiency judgments should be sought; these offices will request or require the mortgagee to take appropriate action.

        2.A mortgagee can initiate the process by notifying the Loan Management Branch Chief in the local HUD Office that it has information indicating that a mortgagor meets the criteria for pursuit of a deficiency judgment.

      D.Use Of "Claims Without Conveyance Of Title" Procedure. Mortgagees must use the CWCOT procedure when pursuing deficiency judgments against defaulting mortgagors (See Paragraph 9-7).

      E.Assignment Of Judgments Required.  Deficiency judgments successfully pursued by mortgagees must be assigned to HUD if the mortgagee files a claim for mortgage insurance

---

9/949-20

4330.1 REV-5

---

      benefits.  Assigned judgments must be transmitted to the local HUD Office with jurisdiction over the foreclosed mortgage within 30 days of being obtained.  The mortgagee must not engage in judgment collection activities, unless the mortgagee will not file a claim for FHA insurance benefits in that case.

F.Collection And Post-collection Activities.  HUD will utilize various methods to collect once the judgments have been assigned. Even before a judgment is formally obtained, a mortgagor or his legal representative can approach the local HUD Office to discuss a settlement of the potential deficiency judgment.  In addition, mortgagees are advised to encourage mortgagors being pursued for deficiency judgments to contact the local HUD Office if they are prepared to discuss an early resolution of this matter.  A mortgagor can benefit from settlement of a potential deficiency judgment by compromising the amount paid to HUD, and also by keeping the actual judgment from becoming a part of the mortgagor's credit record.  If amounts are compromised or declared uncollectible (in whole or in part), HUD will file Information Returns (Form 1099-G) with the IRS.

G.Reporting Of Default And Foreclosure Status On The Single Family Default Monitoring System (SFDMS).  Effective operation of the deficiency judgment initiative depends upon on the accuracy of the SFDMS data submitted to HUD.  This data must reflect the current status of each case.  Mortgagees must report reinstatements by using status code "K" for this information to result in deletion of a particular mortgagor from the SFDMS monthly report (See Appendix 20, page 2 of 3).  The mere failure to include a case in the report to HUD will not remove that case from the SFDMS database.

9-9INSPECTION, PRESERVATION AND PROTECTION REQUIREMENTS (24 CFR 203.377). The mortgagee is responsible for taking reasonable actions to protect the value of the security until title can be conveyed to HUD.  These actions include:

A.Inspections.

1.Definitions.  For our purposes, inspections shall be identified as initial, occupancy and vacant.  The initial and vacant inspections are required by

---

9-219/94

4330.1 REV-5

---

HUD regulations.  The occupancy inspection is necessary to determine when foreclosure action must be initiated and when protection and preservation action must be taken if the mortgagee cannot determine the occupancy status by telephone, letter or other means.  All inspections must be performed in accordance with HUD's requirements and will be reimbursable when performed as provided in the following paragraphs.

a.Initial.  When the mortgage is in default and a payment

is not received within 45 days of the due date and
efforts to reach the mortgagor or occupant at least by
telephone have been unsuccessful, the mortgagee must
perform a visual inspection of the mortgaged property
to determine if it has become vacant or abandoned.

(1)During the course of any continuing delinquency,
reimbursement will be made for only one "initial
inspection".  If the mortgagor reinstates and
later becomes delinquent, an "initial inspection"
may again become necessary and therefore may be
also reimbursable as such.

(2)The need to perform a visual inspection is
immediate and must not be delayed.  The prompt
identification of mortgaged properties that are
vacant or abandoned is of mutual benefit to both
mortgagees and HUD.

(3)This requirement is met when the inspection is
performed, not when "ordered".

(4)Prudent servicing dictates that the mortgagee take
into consideration the servicing history and prior
payment habits of the mortgagor when determining
when this inspection should be performed.

(5)Mortgagees may continue to attempt to contact the
mortgagor by telephone until the 45th day (while
waiting to see if the mortgagor remits his
payment) before performing a visual inspection.

_____

9/94                                                      9-22

4330.1 REV-5

_____

(6)HUD will consider a visual inspection
performed no
later than the 60th day of delinquency to meet
this requirement.

(7)However, where there is a greater risk of vacancy
or abandonment, such as for first or second
payment defaults, this inspection should not be
delayed and optimally should be performed within
45 days from the payment due date.

(8)Mortgagees must accomplish the ordering and

scheduling of inspections in a manner which
ensures the inspection will be accomplished
according to HUD requirements.

        (9)If the mortgagee failed to make an inspection
of
the property as required, and the property is
later found to be vacant and vandalized, the
Department will take the position that the damage
resulted from the mortgagee's failure to preserve
and protect and the claim will be subject to
surcharge unless the mortgagee can produce
evidence that the damage occurred prior to the
date the property became vacant.

       b.Occupancy.  An occupancy inspection is an additional
servicing tool available to a mortgagee to assist in
establishing if a property subject to a mortgage in
default has become vacant or abandoned.

      (1) If the mortgage remains in default after
  *      the initial inspection and the mortgagee
        is unable to determine the occupancy
        status by telephone a correspondence on
        inspection and adequate follow-up must be
        made within 30 days of the last inspection
          or follow-up.
*

      (2)When the conditions necessitating the
occupancy
inspection continue; within the previous 30 days
there have been no payments, no contact with the
defaulting mortgagor and increased probability of

___

9-239/94

   4330.1 REV-5

___

      potential abandonment, the mortgagee should
consider having a visual inspection performed
within thirty days from the date of the last
visual inspection.

      (3)In performing the occupancy inspection, the
servicing mortgagee should require the inspector
to establish if the mortgaged property remains
occupied and should also require the inspector to
attempt to confirm the identity of any occupants.

      (4)Prior to having an occupancy inspection
performed,
the mortgagee must perform at least one valid

22

follow-up to determine whether the property
remains occupied.  This follow-up must be
documented whether it was by letter, telephone, or
means other than an on-site inspection.

(5)During bankruptcy actions, an inspection
should
not be necessary if the mortgagor is making his
payments in accordance with the bankruptcy plan.
Usually bankruptcy plans separate pre-petition and
post petition payments, requiring the mortgagor to
submit his regular payment directly to the
mortgagee and pass part of his payment (for
payment to his current arrearage) through the
bankruptcy court.  As long as his regular payment
continues to be remitted, an inspection should not
be required of a mortgagor in bankruptcy.  When
payments are not being made as scheduled, either
the bankruptcy trustee or the filing attorney
should be contacted for information concerning the
status of the mortgagor.

(6)Mortgagees may communicate with the HUD
Office
and/or counseling agency to determine the
mortgagor's status while a case is being processed
for assignment.  For this reason, there should be
few cases where an occupancy inspection is
warranted and reimbursable while the assignment is
being reviewed.

---

9/94 9-24

4330.1 REV-5

---

(7)Inspections are not the only mechanism by
which a
mortgagee may establish occupancy of a delinquent
mortgagor.  During the duration of any continuing
delinquency, mortgagees must continue to prudently
service the mortgage including regular attempts to
contact the delinquent mortgagor by telephone and
by written correspondence.  No delinquency should
be allowed to continue indefinitely without some
type of contact with the mortgagor.

c.Vacant.  Where the mortgage is in default and the
mortgagee has established that the mortgaged property
is vacant, mortgagees shall inspect the mortgaged
property every 25 to 35 days.  This is a clarification
of the Department's regulatory requirement to inspect
vacant properties "at least monthly".

2.Inspection Reimbursement.  Included in the Regional Preservation and Protection Guidelines shall be a schedule for inspection reimbursement for each Field Office. Mortgagees must follow these schedules.

a.Generally, reimbursement will be limited to one inspection for each 30-day cycle.  This inspection should not be earlier than 25 days from the last inspection or later than 35 days after the last inspection.  A distinction must be made between those items which are required and those which are merely recommended.  Only where a local HUD Office has identified a need to inspect more frequently, and has made this a requirement, will a mortgagee be reimbursed for these additional inspections.

b.HUD will reimburse mortgagees for occupancy inspections which were performed in accordance with the requirements of this Handbook and are adequately documented including the valid follow-up attempt to confirm occupancy.  Please note that required inspections should be performed every thirty days rather than "monthly".  We make that distinction as some mortgagees mistakenly believed that an inspection performed on June 1 and an inspection

---

9-259/94

4330.1 REV-5

---

performed on July 31 met HUD's intent for "monthly" inspections.

c.If the delinquency is cured, the cost of the inspections may be collected from the mortgagor if; the inspection was required, performed and properly documented.  The loan must have been reinstated or paid in full.  No inspection costs may be recovered from a mortgagor if the delinquency is continuing.  The cost of each inspection must be reasonable and within the cost limitation established by the appropriate local HUD Office.  Under no circumstances may the mortgagee charge the mortgagor's escrow account for inspection costs.

d.If there is evidence that the mortgagee knew the mortgagor was still in occupancy, such as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD Office, such charges are inappropriate and must not be charged to the mortgagor or included on a claim for insurance benefits.

            3.Inspection Requirements.  For all inspections, mortgagees
shall be required to document the general condition of the
property as well as any actions which would be required to
adequately protect and preserve the property.

            Most of the inspection forms currently used by the industry
(i.e., FNMA's inspection form) meet or exceed our
requirements.  At this time, HUD will not require mortgagees
to purchase or use a specific form.  However, at a minimum,
the following items must be documented on each inspection
report.

            Judgment should be used in each individual case to determine
which specific information to record for these inspections.
Of course, where the property is occupied, some of the items
listed would be identified as not applicable (n/a).

            Date of the inspection.
Identity of the inspector.
Is the property occupied?
Is the house locked?
Is the grass mowed and/or shrubs trimmed?

---

9/949-26

4330.1 REV-5

---

            Is there any apparent damage?
Is any exterior glass broken?
Are there any apparent roof leaks?
Does the house contain personal property and/or debris?
Are any doors or windows boarded?
Is the house winterized?
Are there any repairs necessary to adequately preserve and
protect the property?

            Proper documentation must be maintained by the mortgagee on
the performance of inspections and follow-up activities.
HUD defines proper documentation, for the purposes of
reimbursement, as copies of all completed inspection forms
and accompanying follow-up documentation for occupancy
inspections, which shall be available for verification and
shall be maintained in each claim review file for which
reimbursement is being sought.

        B.Preservation And Protection Actions.  Once the mortgagee has
determined that the property is vacant or has been abandoned, the
mortgagee must take all reasonable action short of illegal
trespass, to secure the property and protect it from damage from
the elements and from vandalism.  If the mortgage was insured on
or after January 1, 1977, HUD may refuse to accept title or the
mortgagee's claim will be surcharged for costs associated with

25