_____

CHAPTER 2: CONVEYED HOME PROPERTIES

_____


2-1  GENERAL.

   A.   The procedures set forth in this chapter are applicable to claims
        involving:

        1. The conveyance of a property to HUD.

        2. Conveyance of properties formerly subject to coinsured
           mortgages which have become fully insured (when 60 payments
           are made).  (See Chapter 5 for instructions for Coinsurance
           claims.)

        3. Cases where the Claims Without Conveyance of Title
           procedures were followed but the mortgagee was the
           successful bidder at the foreclosure sale for an amount not
           in excess of the Commissioner's Adjusted Fair market value
           and has elected to convey the property to HUD.  (See Chapter
           6 for CWCOT instructions).

   B.   In order to receive mortgage insurance benefits, the mortgagee
        must convey the property to HUD unless:

        1. The mortgagee assigned the mortgage to HUD pursuant to the
           assignment program (24 CFR 203.650) or the assignment option
           (24 CFR 221.255).

        2.The loan is actively co-insured (less than 60 payments were
made) (24 CFR 204.251(k)).

        3.The property was sold by the mortgagor with HUD authority
under the Pre-foreclosure Sales Program.

        4.HUD has requested or required the mortgagee to use Claims
Without Conveyance of Title procedures (24 CFR 203.368).

        5.The mortgagee assigned the mortgage to HUD pursuant to
Section 248 of the National Housing Act (Indian land),
Section 247 of the National Housing Act (Hawaiian homelands)
or Section 203g of the National Housing Act (Allegheny
Reservation of the Seneca Nation of Indians).

_____

_____

* C. The authority for the payment of mortgage insurance claims and the conditions of eligibility for mortgage insurance benefits on conveyance of home mortgage properties are contained in Section 204 of the National Housing Act (12 USC 1710) *

2-2 TIME REQUIREMENTS.

The mortgagee must comply with the following time requirements when submitting a claim involving conveyance of a property (24 CFR 203.355). Failure to comply will result in curtailment of debenture interest to the date action should have been taken or to the date to which it was extended by HUD (24 CFR 203.402(k)).

* A. Institution of Foreclosure.

1. Default. (24 CFR 203.355(a)) Institute foreclosure (or obtain and record a deed-in-lieu of foreclosure) to acquire the mortgaged property within nine months from the date of default. (One year if the date of default was prior to December 1, 1992) *

Note: Although subsequent payments may be sufficient to advance the date of default when applied to overdue monthly payments, if the time requirement to initiate foreclosure or record a deed-in-lieu has been missed such payments will not change the mortgagee's failure to comply with the time requirement unless the payments are sufficient to cure the default.

* 2. Vacancy. (24 CFR 203.355(b)) (a) If the mortgage is in default and the property has been determined to be vacant or abandoned (for vacancies on or after August 1, 1993) foreclosure must be instituted (or a deed-in-lieu of foreclosure must be obtained and recorded) by the earlier of:

(1) nine months after the date of default; or
(2) 120 days after the date the property became vacant, was discovered vacant, or should have been discovered vacant.

(b) Generally a mortgagee will discover that a property is vacant when it is inspected pursuant to 24 CFR 203.377 (see paragraph 2-11 B). If the mortgagee failed to inspect the property within the specified time period, or failed to discover the vacancy, the vacancy date will be considered to be the last date on which the mortgagee should have performed the inspection under the regulation.

---

---

(c) If the property became vacant prior to an inspection and the mortgagee has knowledge of such vacancy, then the date the property became vacant will be considered the vacancy date. A mortgagee may acquire knowledge of vacancy by complaints of an unkempt and apparent vacant condition of the premises, condemnation or other notices requesting that the mortgagee secure the property, notice of utility disconnection or billings from the local jurisdiction for debris removal, snow removal or lawn cuttings resulting from local code violations.

(d) If the mortgage on a vacant property is not in monetary default there is no requirement that the mortgagee initiate foreclosure. However, if the mortgage later goes into monetary default, the 120 day time requirement begins on the date of default, not the date of vacancy.

(e) If the property has more than one unit (e.g., 2, 3 or 4 units) the time period begins when all units have become, or should have been discovered to be, vacant or abandoned.

(f) Foreclosure on vacant or abandoned property should not be delayed because of the notice requirements of 24 CFR 203.650 and 203.651 (the Assignment Program) or due to pre-foreclosure sales under 24 CFR 203.606.   *

*      3.    Foreclosure Initiation Date. HUD considers        *
foreclosure instituted when the mortgagee takes the first public action required by law such as filing a complaint or petition, recording a notice of default, or publication of a notice of sale. Merely posting notice on the property is not sufficient. The action must be established as a public record through a filing, recording, or a publication in a newspaper of general circulation as required by law. See Appendix 6 for a state by state listing of the first public actions considered by HUD to be required to commence (initiate) foreclosure.

*      4.    Foreclosure Prohibition. If the mortgagee is unable  *
to initiate foreclosure or obtain and record a deed-in-lieu within the required time because:

(a) state or local law prevents or delays action;

(b) bankruptcy has been instituted; or,

(c) HUD notified the mortgagee to delay initiation pending a determination of assignment acceptability;

_____

         then up to 60 calendar days after the release of these
         actions to initiate foreclosure is allowed.  A request
         for an extension of time to institute foreclosure is
         not required under these conditions, provided
         foreclosure is instituted within 60 days from the date
         of release of such actions or does not exceed nine
*              months from the date of default.  An additional
         extension may be allowed if the mortgagee must send the
         letters under the assignment program or send notices
         required by State law after the mortgage is released
         from bankruptcy stay (See paragraph 2-17A).  The date
         of release must be entered in Item 21 Form HUD 27011
         and the expiration date of the extension must be
         entered in Item 19.
*

    *              NOTE:    This time requirement is also applicable if
                                foreclosure has been initiated and
                                interrupted by a bankruptcy, and state law
                     requires a new foreclosure to be initiated. *

*        5.   Assignment Letter.  Prior to the institution of
         foreclosure, mortgagees are required to send certain  *
              notification letters to the mortgagor (see Handbook
4330.1 for specific requirements) which provide the
mortgagor with an opportunity to cure the default or
request HUD to accept an assignment of the mortgage if
the mortgagee has not made such a recommendation.
Mortgagees are expected to meet these notification
requirements within the nine month time frame.  HUD #2
or #3 letter should be issued at least 20 days prior to
the expiration of the nine months limit or the limit
will not be extended.

    *        6.   Combined Extensions.  Additional extensions for both
assignment letters and State law notices will not be
permitted unless State law prohibits taking the two
actions simultaneously.  See paragraph 2-17 A.

            7.Special Forbearance.  The mortgagee must commence
foreclosure within 90 days following the date the
mortgagor fails to meet the requirements of a special
forbearance under 24 CFR  203.614.  See paragraph 1-6.

            8.Pre-foreclosure Sales.  If the pre-foreclosure sale is
unsuccessful, mortgagees have 60 days from the date a
mortgagor's bona fide participation in the
pre-foreclosure sale procedure ends either to accept a
deed-in-lieu or initiate foreclosure.  See paragraph
                     1-6.
*

_____

_____

   B.Notice of Foreclosure.  (24 CFR 203.356)  Provide written notice
to HUD that foreclosure has been instituted.  The notice must be
furnished within 30 calendar days of the institution of
foreclosure.  This requirement is satisfied only by submission of
a complete and correct HUD Form 92068A, the monthly Single Family
Default Monitoring System (SFDMS) report.

C.   Prosecuting Foreclosure.  (24 CFR 203.356)  Regulation  203.356
requires the mortgagee to "exercise reasonable diligence in
*         prosecuting the foreclosure proceedings to completion and in
acquiring title to and possession of the property".  Differences
in state procedures and redemption periods will affect the        *
   length of time required to complete foreclosure, therefore, the
required time will depend on the location of the mortgaged
property.

     1.HUD will consider the mortgagee to have exercised
"reasonable diligence" when the time frames shown in
Appendix 7 are met in routine completed uncontested
foreclosures.  These time frames may be revised from time to
time by mortgagee letter as local circumstances may require.

     2.The time frames are measured from the initiation to the
completion of foreclosure.  Initiation of foreclosure is the
first public action required by law, such as filing a
complaint or petition, recording a notice of default, or
publication of a notice of sale.  Completion of foreclosure
is the date on which the Sheriff's, Trustee's, etc. deed or
certificate of title is recorded.  The deed is generally
executed after the expiration of the redemption period and
before eviction of the occupant.  Therefore, the time frame
includes redemption but not eviction.

*              NOTE:    Where state law allows, mortgagees are encouraged
                        to take available actions to reduce the redemption
                        period on vacant or abandoned property.  If the
                        expense to reduce the redemption period will
                        exceed $250, local HUD office approval should be
                        requested.
*

     3.Debenture interest will not be curtailed if the time frame
is exceeded for reasons beyond the control of the mortgagee
or the mortgagee's agent.  Examples of such circumstances
are:  bankruptcy petition filed after foreclosure
initiation; contested foreclosures; overcrowded court
calendars; delays in obtaining service of process, etc.  A
valid cause for exceeding the time frame may arise where the
title is conveyed directly to HUD (see paragraph 2-8).  HUD
recognizes that prior approval to exceed this time frame

would be burdensome or unfeasible for both mortgagee and
field office and therefore it will not be required.

_____

_____

*              NOTE:     If bankruptcy interrupts the completion of
                         foreclosure and a new foreclosure is not required
                         after the lifting of the bankruptcy stay, and some
                         action is required by the court to continue or
                         recommence the foreclosure, the mortgagee is
                         expected to take such action to recommence the
                         foreclosure within 60 days of the bankruptcy stay
                         being lifted.  Reasons (beyond the mortgagees
                         control) for exceeding the 60 days must be
                         adequately documented.
*

     4.When the time frame is missed for reasons within the
mortgagee's control, mortgagees must enter a date in Item 31
on the claim form to curtail interest.

     5.If the mortgagee is of the opinion that there is
justification for exceeding the time frame, a brief note of
the cause of delay should be entered in the Mortgagee's
Comment section of Part A and supporting documentation must
be placed in the claim file.

     The cause of delay and the documentation will be examined
for justification at the time of the post claims review.  If
not justified, the mortgagee will be required to refund to
HUD any overpaid debenture interest.

     6.Supporting documentation such as attorney's correspondence
or copies of court records must be retained in the claim
review file.  It would be impossible to attempt to identify
all types of documentation which HUD would consider
acceptable.  However, there are several examples where the
claim review file must contain specific documentation other
than the attorney's correspondence.  Several obvious
examples are as follows: where the mortgagee identifies the
pursuit of a deficiency judgment at HUD's request as the
cause of the delay, the claim review file must contain a
copy of HUD's request; and for bankruptcy delays maintain
copies of the bankruptcy court's notifications.

   D.Conveyance to HUD.  (24 CFR 203.359)  After acquiring good and
marketable title to and possession of the property the mortgagee
shall transfer the property to the Commissioner.

*        1.   For mortgages insured under a firm commitment issued prior
to November 19, 1992, or under Direct Endorsement processing
where the credit worksheet was signed by the mortgagee's

approved underwriter prior to November 19, 1992:

_____

       (a)within 30 days after acquiring possession of the property by foreclosure or other means; or

       (b)within such further time as may be necessary to complete the title examination and perfect the title.

   2.For mortgages insured under a firm commitment issued on or after November 19, 1992, or under Direct Endorsement processing where the credit worksheet was signed by the mortgagee's approved underwriter on or after November 19, 1992, within 30 days of the later of:

       (a)filing for record the foreclosure deed;

       (b)recording date of a deed-in-lieu of foreclosure;

       (c)acquiring possession of the property;

       (d)expiration of the redemption period; or

  (e)  such further time as HUD may approve in writing.      *

   3.This time may be extended with written HUD Field Office approval, if it becomes necessary to correct a title defect or some other legitimate event delays conveyance.

4.  The mortgagee must certify that the property contains no
    personal property at the time of conveyance (unless the
    secretary has agreed to accept occupied conveyance)
    so the mortgagee must act promptly to assure that all
    personal property has been removed within 30 days after
*         acquiring title and possession.  For mortgages insured under
    a firm commitment issued on or after November 19, 1992, or
    under Direct Endorsement processing where the credit
    worksheet was signed by the mortgagee's approved underwriter
    on or after November 19, 1992, the mortgagee will not be
    reimbursed for the cost of protecting, operating, preserving
    or inspecting the property or removing debris from the
    property incurred after the deadline for conveyance of the
    property.  (24 CFR 203.402(g)(2))                              *

   5.In some areas the foreclosure deed may convey title directly to the Secretary instead of the mortgagee.  This practice is encouraged by HUD because it avoids payment of additional transfer taxes by the insurance fund.  (See paragraph 2-8 for claim procedures in direct conveyance

*          cases.)  In such direct conveyance cases the property must
be transferred to HUD within 30 days after the reasonable
diligence time frame for completion of foreclosure and
acquisition of title and possession specified in
     paragraph 2-2 C above.*

6.   HUD will accept the date the deed (to the Secretary) is
     mailed to the recording authority (not to the attorney)
     as the date the deed is filed for record.  If the
     mortgagee elects to use the mailing date that date will be
*          considered as the filing date for all claim purposes.  In
     the event a deed-in-lieu of foreclosure is directly conveyed
     to HUD, the mortgagee may use the mailing date for both
     items 10 and 11 on the claim.
*

E.   Submit Claim to HUD Headquarters.  (24 CFR 203.360)  Submit the
original Part A of Form HUD-27011 to the Department of Housing
and Urban Development on the date the deed to the Secretary is
filed for record (or the date the deed is mailed to the
recording authority).  The original of the Mortgage Insurance
Certificate (MIC) must accompany Part A of form HUD-27011 to be
considered a complete Part A submission.  Part A and the MIC
must be mailed on the date the deed to the Secretary is filed
for record (or the date the deed is mailed to the recording
*          authority) and must be received in Headquarters within 10 days
of the date the deed is filed.  Failure to meet these submission
requirements will result in an interest curtailment.            *

   F.Submit Claim to Field Office.  (24 CFR 203.360)  Submit a copy of
Part A of Form HUD-27011 to the local HUD office on the date the
deed to the Secretary is filed for record.  The copy must be
accompanied by all required attachments.

   *    Note:  This guidance is intended to ensure that both HUD
Headquarters and the HUD field office are notified of the
conveyance at the same time.  Field office receipt of the HUD
Form 27011 verifies that the property is received into HUD's
inventory.  Failure to timely submit the Part A may result in an
interest curtailment or other administration sanctions.

*

   G.Submit Title Evidence.  (24 CFR 203.365)  As soon as possible,
but no later than 45 calendar days after the deed is filed for
record, send to the local HUD office a copy of the mortgage and
the original title evidence reflecting ownership vested in the
Secretary.  This must be received by the local HUD office within
55 calendar days after the deed is filed for record.

H.Submit Fiscal Data to HUD Headquarters. (24 CFR 203.365) Submit the original Part B of Form HUD-27011 to HUD Headquarters accompanied by the original title approval letter. This part of the form must be mailed within 45 days of the date the deed is filed for record, or received in HUD Headquarters

---

---

within 15 calendar days after the date of the title approval letter, whichever is later.

   I.Submit Fiscal Data to Field Office. (24 CFR 203.365) Submit a copy of Part B of Form HUD-27011 and the original of Parts C, D and E to the local HUD office on the date the original Part B is submitted to HUD Headquarters.

2-3  EXTENSION OF TIME REQUIREMENTS.

If the mortgagee cannot comply with the above time requirements for a particular action because of circumstances beyond its control, it should submit a request for an extension of time on Form HUD-50012 to the local HUD office. (See paragraph 1-6).

2-4  CLAIM PAYMENT.

   A.Initial Payment. Upon receipt of an acceptable Part A and required attachments, HUD will promptly pay the unpaid principal balance plus debenture interest. Before debenture interest is calculated, the unpaid principal balance will be reduced by the greater of any damage or insurance recovery reported in Item 27. The automated system will determine the amount of debenture interest earned on the balance from the date of default to the date of the initial settlement or to the date of interest curtailment.

   B.Final Payment. Upon receipt of an acceptable Part B and required attachments, HUD will promptly pay the mortgagee's expenses and allowances, plus debenture interest. The mortgagee computes the interest for each item in Parts C and D, from the date of disbursement (or default if later) to the date the claim is prepared or curtailed. HUD will compute any additional interest earned after that date.

   C.Payment Advice Letter. Within a few days of receipt of payment, the mortgagee will receive a letter giving detailed information on the payment of the claim. The letter is generated by the system. A copy of the letter must be retained in the audit file.

2-5  DEBENTURE INTEREST COMPUTATION.

   A.By HUD. HUD will compute the debenture interest on the unpaid principal balance from the date of default to the date of

settlement of Part A and on expenditures from the date of the
submission of Part B to the date of settlement of Part B,
provided all time requirements have been met.  If the mortgagee
fails

---

---

to meet a time requirement, HUD will compute debenture interest
only to the date the action should have been taken or to the date
to which the time was extended by HUD.

   B.By the Mortgagee.  The mortgagee will compute the debenture
interest due on each disbursement itemized in Parts C and D from
the date of disbursement (or default if later) to the date Part B
is prepared or to the curtailment date, whichever is earlier.

   C.Curtailment of Interest.  (24 CFR 203.402 (k))  HUD regulations
require the mortgagee to take certain actions within specified
time periods.  If these time requirements are not met, debenture
interest allowance will be curtailed.  The only exception is when
an extension of time has been approved by HUD in writing.  This
means that if a required action is not taken within the time
allowed, interest will be computed only to the date that action
should have been taken or to which it was extended.

   If the mortgagee fails to perform several actions within the
specified time periods, interest will be curtailed to the
applicable date of the earliest failure.

   For example, if the mortgagee fails to institute foreclosure
within nine months of default and fails to submit the title
evidence within 45 days after the deed to the Secretary is filed
for record and neither time frame was extended by HUD, debenture
interest on the unpaid principal balance and on all expenditures
is computed only to the date on which foreclosure should have
been initiated.

*      In most circumstances, HUD's automated system can measure the
time between two dates entered on the form, determine if time
requirements have been met and calculate the date to which
debenture interest should be paid.  However, there are four
circumstances where it is necessary for the mortgagee to
calculate the curtailment date because HUD's system is unable to
do so when mortgagees fail to take an action within the specified
time period or an approved extension.  In one of the following
four circumstances, the mortgagee must determine the date on
which an action should have been taken (curtailment date)
and enter this date in Item 31 of Part A.
*

*       1.  Failure to initiate foreclosure within nine month of default

and subsequent payments advance the default date. (24 CFR 203.355(a)) When a loan is in default, and more than nine months have elapsed before foreclosure is initiated with no intervening circumstances such as a bankruptcy or an approved HUD extension of time, the time requirement to initiate foreclosure is considered to have been missed, regardless of whether subsequent payments advance the default date.

---

---

    2. Failure to initiate foreclosure on a timely basis where the property is vacant or abandoned. (24 CFR 203.355(b)) When a loan is in default and the property is vacant or becomes vacant and more than 120 days have elapsed from default or vacancy (whichever is later) before foreclosure is initiated with no intervening circumstances such as a bankruptcy or an approved HUD extension of time, the time
    requirement to initiate foreclosure has been missed.          *

*       3.    Failure to Give Notice of Foreclosure. (24 CFR 203.356)
            Within 30 calendar days of institution of foreclosure,
    written notice must be provided to HUD. This requirement  *
    is satisfied only by submission of a complete and correct HUD Form 92068A, the monthly Single Family Default Monitoring System (SFDMS) report. HUD will not accept any other method of reporting as meeting this requirement. Mortgagees are considered to be in compliance with this requirement when the institution of foreclosure (status B) in a given month is reported on that month's end SFDMS report 92068-A (the next required SFDMS report), or that of the next following month.

    4. Failure to Exercise Reasonable Diligence. (24 CFR 203.356) When the reasonable diligence time frame is exceeded without a valid reason. (See Appendix 7 for state by state listing of time frames.)

*       The date in Item 31 should never be equal to or later than the date in Item 9.                                                        *

   The date on which an action should have been taken (curtailment date) should be entered in Items 204 Part C and 304 Part D and 404 Part E. Item 104 Part B will show the actual date Part B was prepared and not the curtailment date.

   D. Expenditures Prior to the Date of Default. It is possible that expenditures or advances will be made by mortgagees prior to the date of default. The regulations do not permit the payment of debenture interest on expenses prior to the date of default (24 CFR 203.410(a)). If an expenditure or advancement is made prior to the date of default, debenture interest is computed from

default date.  When completing Parts, C, D and E of Form
HUD-27011, the mortgagee should enter the date of default in the
"Date Paid" column if the expense was paid prior to default.  In
addition, place the actual date paid in parenthesis following the
description.

        E.Interest Computations.  Enter in Item 204 and Item 304 the date
to which interest is calculated.  Only when no time requirement
or approved extension has been missed will this be the same date
as entered in Item 104, Part B.  If

_____

_____

        one or more time requirements have been missed enter the earliest
date on which a required action should have been taken (the
curtailment date).  See Appendix 10.  When a curtailment date is
entered in Item 204 Part C and 304 Part D, enter an asterisk in
Item 104 after the date on which Part B is prepared and submitted
to HUD and indicate on the form the reason for the curtailment.

    The amount of interest to be claimed for an expenditure is to be
calculated as follows:

        1.Multiply the daily interest rate factor by the amount paid.

        2.Multiply this result by the number of days from the date
paid (or default date, if later) for each line Item to the
earlier of:  (i) date in Item 104 (submission date for Part
B), or (ii) the date of the earliest time requirement
missed.  (Item 204 and 304)

    Daily Interest Rate Factor tables are provided in Appendix 8 to
assist in converting the debenture interest rates to factors.  In
addition, Julian date calendars are provided in Appendix 9 to
assist in determining the number of days from the date the
expenditure was paid (or default date, if later) to the date the
claim was prepared, Item 104 (or the curtailment date if
earlier).

    The following three examples are provided to illustrate how
debenture interest must be calculated on reimbursable expenses.
In the first example, all time requirements were met; in the
second example, the requirement to institute foreclosure within
nine months of default was missed; and in the third example, the
property was not conveyed to HUD within 30 days of possession and
marketable title.  In all of the examples a debenture interest
rate of 8.5 percent is used with a daily interest rate factor of
.0002328767.  Alternatively, the annual interest rate may be
divided by 365.  (For a leap year, divide by 366.)

Example 1:  All Time Requirements Met.

In this example, all time requirements have been met.  The
default date was January 1, 1993.  Interest on expenditures is
calculated from the date of each expenditure (or default date if
later) to the date the Part B claim form was prepared.  See the
Julian Date Calendar (Appendix 9) to calculate the number of
days.  The following expenditures were Itemized on Parts C and D
and included in the amounts claimed on Part B of Form HUD-27011
(Items 110 and 111) submitted June 15, 1994.

_____

_____

          December 10, 1992      $100 paid for Hazard Insurance
                                           Premium (Escrow has been
fully
                                   depleted)

      May 22, 1994             $25 paid for lawn moving

      June 9, 1994             $156 paid for debris removal

| Amount Paid | Daily Interest Rate Factor | | Days Covered | | Amount of Interest to be claimed on Part C |
| --- | --- | --- | --- | --- | --- |
| $100 | x .0002328767 x | 531 | (1/01/93 – 6/15/94) | = | 12.37 |
| 25 | x .0002328767 x | 24 | (5/22/94 – 6/15/94) | = | .14 |
| 156 | x .0002328767 x | 6 | (6/09/94 – 6/15/94) | = | .22 |

In this example, the mortgagee is entitled to interest on the expenses
from the date they were paid (or default date if later) up to the date
the claim is settled.  The mortgagee calculates the interest up to the
date the claim form was prepared and submitted, and HUD calculates the
interest up the settlement date.

     Example 2:  Mortgagee Failed to Institute Foreclosure Within Nine
Months from the Date of Default.

     In Example 2, the mortgagee failed to initiate foreclosure within
nine months of the date of default and no extension was requested
or granted.  As a result, interest does not accrue on any part of
the claim beyond the date foreclosure should have been
instituted.

     Interest must be calculated from the date of the expenditure to
the date by which foreclosure should have been instituted.  The
date of default was January 1, 1993, however foreclosure was not
instituted until March 15, 1994.  In order for the mortgagee to
have met the time requirement, foreclosure should have instituted
by October 1, 1993.  Interest on reimbursable expenses may only

be claimed and paid to October 1, 1993.

The following expenditures were Itemized on Part C and included in Part B (Item 110), Form HUD-27011, submitted June 15, 1994. Since these expenditures were incurred after October 1, 1993, interest is not payable on these amounts.

    May 22, 1994              $ 25 paid for lawn mowing

    June 9, 1994             $156 paid for debris removal

---

---

| Amount Paid | Daily Interest Rate Factor | Days Covered | | Interest |
|------|------|------|------|------|
| $ 25 | x .0002328767 x 0 | (5/22/94 - 1/1/93) | = | 0.00 |
| 156 | x .0002328767 x 0 | (6/09/94 - 1/1/93) | = | 0.00 |

In this case the mortgagee must asterisk the date in Item 104 (June 15, 1994*) and place a notation on the form as follows:

    *Failure to institute foreclosure within nine months of the date of default (January 1, 1993).  Interest calculated to October 1, 1993.

Example 3:  Mortgagee Failed to Convey the Property to HUD Within 30 Days of Possession and Marketable Title.

In Example 3, the mortgagee met the time requirements to institute and to complete foreclosure, but did not convey the property to HUD within 30 days of possession and marketable title.

In this example, the mortgagee had possession of and marketable title to the property on July 2, 1993.  The time limit to convey ended August 1, 1993.  However, the property was not conveyed, and Part A of the claim was not filed until August 15, 1993.  Therefore, interest is calculated from the date of the expenditure (date paid) to the date the time allowed for conveyance expired (August 1).  The following expenditures were Itemized on Part C and included in the amount claimed in Item 110 of Part B, Form HUD-27011 submitted September 15, 1993.

    July 22, 1993              $ 25 paid for lawn mowing

    August 9, 1993            $156 paid for debris removal

| Amount Paid | Daily Interest Rate Factor | Days Covered | | Interest |
|------|------|------|------|------|

```
  $ 25      x .0002328767 x 10    (7/22/93 - 8/1/93)   =     .06
    156     x .0002328767 x 0     (8/09/93 - 8/1/93)   =     .00
```

   In this case the mortgagee should asterisk the date in Item 104
(September 15, 1993*) and place a notation on the form as
follows:

      *Failure to convey within 30 days of the date in Item 9
(July 2, 1993).  Interest calculated to August 1, 1993 (Item
9 plus 30 days).

---

CONVEYANCES                                          4330.4

---

 In addition to these examples, a table is attached (App.  10 -
Conveyances:  Earliest Time Requirement Missed), which may be used to
help determine the appropriate beginning and ending dates for the
calculation of debenture interest.  Mortgagees should review their
copy of Part A and the Advice of Payment letter (if available) in
determining whether a time frame was missed.

2-6  TITLE REQUIREMENTS.

   A.Date of Acquisition of Title.  The date of acquisition of title
is the date the deed or other document conveying title to the
mortgagee is filed for record.  The deed may be the Sheriff's,
Trustee's, etc. deed or certificate of title, or a deed-in-lieu
of foreclosure.  This date is entered in Item 9, Part A, unless
the mortgagee does not yet have possession of the property.  If
title does not pass through the mortgagee, as in a direct
conveyance, the date to be entered in Item 9 is the date the deed
to the Secretary is filed for record (same date as Item 10).

B.    Acceptable Title.  Title conveyed to the Secretary must
be good and marketable, and clear of all encumbrances
except easements and restrictions of record which have
been approved by HUD.  The title evidence must show that
according to the public records there are no outstanding
prior liens, including any past due and unpaid ground
rents, general taxes or special assessments.

 HUD's decision will be final as to the acceptability
of title and title evidence.  Notwithstanding a defect in
title, HUD may, at its option, accept defective title if
the mortgagee agrees to a reduction in benefits.

 Deeds shall be recorded in the name of the
"Secretary of Housing and Urban Development, his
successors and assigns" with the address of the local
field office and "Attention:  Single Family Property
Disposition Branch".  The purpose of this instruction is

to assure that taxing authorities will send tax bills to
the local office for payment rather than HUD
Headquarters.

   C.Types of Title Evidence.  Submit one of the following types of
title evidence of recorded title to the Secretary:

 1.Fee or owner's title policy.  A fee or owner's policy of
title insurance, a guaranty or guarantee of title, or a
certificate of title, issued by a title company, duly
authorized by law and qualified by experience to issue such
instruments.  If an owner's policy of title insurance is

_____

_____

      forwarded, it shall show title in the name of the Secretary
and insure to the benefit of his/her successors in office.

 2.Mortgagee policy of title insurance.  A mortgagee's policy
of title insurance supplemented by an Abstract and an
Attorney's Certificate of Title covering the period
subsequent to the date of the mortgage.  The terms of the
policy shall be such that the liability of the title company
will continue in favor of the Secretary after title is
conveyed to him/her (24 CFR 203.385(b)).

      3.Abstract and legal opinion.  An abstract of title prepared
by an abstract company or individual engaged in the business
of preparing abstracts of title and accompanied by the legal
opinion as to the quality of such title signed by an
attorney-at-law experienced in examination of titles.  The
Attorney's Certificate of Title, Form HUD-2319 (see Appendix
11) should be used for this purpose.

      4.A Torrens or similar title certificate.

      5.Title Standard of U.S. or State government.  Evidence of
title conforming to the standards of a supervising branch of
the government of the United States or of any state or
territory thereof.

   D.Title Approval.  The original title evidence must be sent to the
local HUD office no later than 45 days after the date the deed
was filed for record, together with a copy of Part A of Form
HUD-27011, a copy of the mortgage instrument containing a
complete legal description of the property and a copy of the
recorded deed.

 The field office will review the title evidence for approval or
*          denial.  If the title evidence has been approved, HUD will
forward to the mortgagee a title approval letter which must     *

be submitted to HUD Headquarters with Part B of Form
HUD-27011 within 45 days after the date the deed was filed
for record or received at HUD Headquarters with Part B of
Form HUD-27011 within 15 days after the date of the approval
letter, whichever is later.

If the title or title evidence is faulty or incomplete, it will
be returned to the mortgagee for correction or completion.  The
title evidence will not be considered as having been submitted
until it is returned with the required corrections.  Fees or
costs incurred as a result of a defect in the mortgage
transaction or a defect in title are not reimbursable unless
the mortgage was sold by the Secretary or executed in
connection with the sale of the property by the Secretary
(24 CFR 203.366(b)).

---

CONVEYANCES                                             4330.4

---

    If the corrections are not made within a reasonable time, the
local office may reconvey the property to the mortgagee by
quit-claim deed.  If this occurs HUD will cancel the claim for
insurance benefits and will require prompt reimbursement to HUD
for the amount of the insurance settlement and any expenses
incurred by HUD during the period of its ownership.  These
expenses will include but are not limited to HUD's expenditures
for taxes, maintenance of the property and administrative
expenses related to the preservation of the property.  When the
objection to the title has been corrected, the mortgagee may then
resubmit the claim (See paragraph 1-14).

*       For mortgages insured under a firm commitment issued on or after
November 19, 1992, or under Direct Endorsement processing where
the credit worksheet was signed by the mortgagee's approved
underwriter on or after November 19, 1992 if the title to a
property conveyed to the Secretary is not good and marketable,
the mortgagee will be required to correct the defect within 60
days after receiving notice from the Secretary or within such
further time as the Secretary may approve in writing (24 CFR
203.366(b)).  In this case, the mortgagee may retain the
insurance benefits already paid, but it will not be reimbursed
for any costs involved in correcting the title (CFR 203.402(f)).

        1.If a title defect is not corrected within 60 days after
receiving notice (or within an approved extension of time),
the mortgagee will be required to reimburse the Secretary
for holding costs and interest on the paid insurance
benefits at a rate set in conformity with the Treasury
Fiscal Requirements Manual from the date of the notice to
the date the defect is corrected or to the date the
Secretary reconveys the property.

2. If the defect is not corrected within a reasonable time, the Secretary will reconvey the property and the mortgagee will be required to reimburse the Secretary as provided in 24 CFR 203.363 and 24 CFR 203.364.  The Department will determine on a case by case basis as to what will constitute "reasonable time" for purposes of correcting title defects.

3. The contract of mortgage insurance (Subpart B of 24 CFR Part 203) stipulates that the mortgagee, not HUD, must bear the cost of correcting title defects and property expenses pending correction, because HUD did not participate in obtaining or maintaining the mortgage lien nor in acquiring title to the property.  (HUD accepts responsibility only where the Secretary had sold the mortgage or the property with the senior adverse interest that causes the title defect (24 CFR 203.390).)

*

---

---

E. Amount of Title Insurance.  When a title policy is submitted as evidence of good and marketable title, the amount of title insurance coverage must be equal to the unpaid principal balance of the mortgage.

Exception:

If the mortgagee uses the Claims Without Conveyance of Title procedure and has a copy of "Form HUD-91022, Mortgage Notice of Foreclosure Sale" available, the amount of title insurance coverage should be the amount of the Commissioner's Fair Market Value entered in line 5 of Part B, Form HUD-91022.  (Note:  Do not use the Adjusted Fair Market Value in line 7.) (See Appendix 12.)

2-7  DEEDS-IN-LIEU OF FORECLOSURE.

A. General.  (24 CFR 203.357)  When the mortgage is in default, the mortgagee should consider accepting a voluntary conveyance to avoid foreclosure and are encouraged by HUD to do so in all appropriate cases.  HUD approval is required prior to accepting a deed in lieu when the mortgagor owns more than one property subject to FHA insurance or if the mortgagor is a corporation. Deeds must not be accepted from mortgagors when HUD has requested the mortgagee to pursue a deficiency judgment or where it is clear to the mortgagee that acceptance of a deed is simply a matter of convenience from a mortgagor clearly able to make the mortgage payments.

B.  Form of Conveyance.  The conveyance may be either (i) directly

from the mortgagor to HUD, or (ii) from the mortgagor to the
mortgagee and then from the mortgagee to HUD.  Under either
method HUD must receive good and marketable title.
*
C.   Compensation.  (24 CPR 203.402(p))  The mortgagee may pay the
mortgagor up to $500 consideration for execution of the deed
unless the property is conveyed occupied or the mortgage was
co-insured under 24 CFR Part 204.  The amount paid to the
mortgagor may be included as an acquisition cost in Item 305.
*

2-8  DIRECT CONVEYANCE.  (24 CFR 203.358)

   A.When To Use Direct Conveyance.  Where State law permits
mortgagees should have the property deeded directly to HUD,
without taking title in its own name first, in order to save time
and avoid double payment of transfer taxes in states where:

---

CONVEYANCES                                         4330.4

---

      1.the property is vacant; or

      2.the eviction process takes place simultaneously as a part of
the foreclosure action; or

      3.the eviction action can be processed before the deed is
recorded and there is no delay; or

      4.HUD has agreed to accept the property occupied pursuant to
the occupied conveyance regulation (24 CFR 203.679).

   B.When Not To Use Direct Conveyance.  Direct conveyance should not
be used when it will result in HUD having recorded title to
properties that are occupied without its prior approval.  This
violates HUD regulations and causes serious problems.  It becomes
uncertain as to who (the lender or HUD) should be paying taxes,
liens, assessments, utilities, etc.; local HUD offices are unable
to fully market properties although the property has been
officially deeded to HUD; lenders are routinely incurring
expenses after the date the deed is filed for record; and HUD is
unable to properly monitor mortgagee compliance with respect to
conveyance of damaged properties.  Mortgagees may not file their
claim until such properties are vacant.

   C.Claim Form Adjustments.

1.   If the property is vacant at the time the direct conveyance
     deed is executed, one month may be added to the foreclosure
     (reasonable diligence) time frame.
*
2.   If the property is occupied and an eviction action is

necessary to obtain possession, if the eviction action was
initiated in a timely manner, the time frame will be
extended until possession is obtained and an additional
month may be added to the foreclosure (reasonable diligence)
time frame.  The cause for the delay must be explained in
the Mortgagee's Comment section of Part A.
*

2-9  OCCUPANCY AND POSSESSION OF PROPERTY.

   A.Occupancy.  The property may not be occupied at the time of
conveyance unless HUD agrees to accept it occupied as provided in
24 CFR 203.670 through 203.681.  Under these regulations the
mortgagee is required to notify the mortgagor of the potential
acquisition by HUD.  The mortgagee must provide such notice (with
a copy to HUD) at least 60 days but not more than 90

---

---

days before the date on which it reasonably expects to acquire
title to the property.  See HUD Handbook 4330.1.

   The mortgagee shall be allowed to convey the property occupied if
HUD agreed to accept the property occupied or if HUD notified the
mortgagee that it was considering a request for continued
occupancy and no subsequent notification from HUD has been
received within 90 days after the mortgagee's notice referred to
in subparagraph A above (24 CFR 203.670(c)).

   B.Possession.  HUD considers the property to be in the possession
of the mortgagee (for insurance claim purposes) when the property
was first discovered to be vacant by the mortgagee or its agent,
or would have been discovered if the mortgagee was making
regularly scheduled inspections.  The date of possession is not
dependent on securing the property, changing the locks, etc.

   C.Keys.  Keys for the property must be forwarded to the local HUD
office as soon as they are obtained, preferably at the time a
copy of Part A is submitted.  Include the FHA case number and
property address with each set of keys.  Do not send keys to HUD
Headquarters, and do not delay submission of the copy of Part A
to the HUD local office.

2-10 CONDITION OF PROPERTY AT CONVEYANCE.

   A.Repairs by Mortgagee.  (24 CFR 203.379 and 203.380)

      1.Before conveying the property to HUD, the mortgagee must
repair at its own cost:

      a.   any damage caused by fire, flood, earthquake, tornado,

hurricane, (or boiler explosion (24 CFR 234.270(a)) in
the case of condominium); and,
*

   b.    any damage caused by the mortgagee's failure to take
         reasonable action to inspect, protect and preserve a
         vacant or abandoned property if the mortgage was
         insured on or after January 1, 1977.  "Reasonable
         action includes the commencement of foreclosure of a
         defaulted mortgage on vacant or abandoned property
         within the time required by paragraph 2-2A.
*
*
2.    After repairs have been completed and the mortgagee is
      satisfied that they are adequate, the mortgagee may (at its
      option) ask for assurance that the repairs are acceptable to
      HUD so that a later claim for mortgage

_____

_____

   insurance benefits will not be surcharged because of the
damage.  The following procedure applies to such requests:

         a.Contact the Loan Management Branch of the local HUD
Field Office having jurisdiction over the property when
the repairs have been completed to the mortgagee's
satisfaction.  That office will arrange for assignment
of a member of the Fee Inspection Panel and the
mortgagee will be notified of the assignment.

         b.The mortgagee assumes full responsibility for payment
of the inspection fee, which may not be passed on to
the mortgagor or included in a later claim for
insurance benefits.

         c.Send the inspection's completed report on Form
HUD-92051, (Appendix 27) to the HUD Field Office having
jurisdiction over the property, where it is
counter-signed before the original is returned to the
mortgagee.  The inspection report of the fee inspector
should attest that he is a duly qualified member of the
Field Office Panel.

         d.Retain a copy of the signed report in the mortgagee's
files.

   NOTE:  If the report documents that the repairs are
satisfactory, it represents HUD's assurance that the claim
      will not be surcharged for the damage.

*

3.The mortgagee is not required to repair damage resulting from causes other than those itemized above unless the repairs are requested in writing by HUD, or the repairs are necessary to protect and preserve the property until its conveyance to HUD and the local HUD office has approved any expenditures over and above the jurisdictional limit for preservation and protection.

4.If repairs for which the mortgagee is not responsible are made at HUD's request, or if the repairs are necessary to protect and preserve the property until conveyance to HUD, the cost should be entered on Part C (Disbursements for Protection and Preservation) in accordance with HUD regional protection and preservation costs limits.

5.HUD will not reimburse the mortgagee for repairs to or maintenance of property occupied by the mortgagor.

---

---

B.Unrepaired Conveyance.  (24 CFR 203.379(a))

1.If the prior approval of HUD is obtained, property damaged by the causes itemized in paragraph A-1 may be conveyed in an unrepaired condition and there will be deducted from the insurance benefits, HUD's estimate of the cost to repair the damage or any insurance recovery received by the mortgagee, whichever is greater.  The deduction will be limited to the amount of insurance recovery if the property has been damaged by fire and the mortgagee certifies that the conditions of 24 CFR 203.379 (a)(2) relating to cancellation or reduction of insurance coverage are met.  The mortgagee should request from the local HUD office their estimate of the cost of repairing the damage, and permission to convey the property without repairs.  HUD's estimate must be entered in Item 27, Part A.  Item 24 must be marked "yes".

2.If the property is conveyed damaged by causes other than those itemized in paragraph A-1, Item 24 must be marked "No" and the mortgagee must:

a.identify such damage in the Mortgagee's Comment Section of Form HUD-27011, Part A;

b.provide to the local HUD office copies of all documentation necessary to verify that the mortgagee met its requirement to take reasonable action to inspect, protect and preserve the property.  All documents must identify the specific property by FHA case number.  All documentation must also be maintained in the audit file; and

c.in the event a property is conveyed damaged, but is not identified as such on the claim form, HUD will not make any further reimbursement until the local HUD office has made an evaluation of the mortgagee's responsibility.

*    C.    Unrepaired Conveyance Without Notice.

HUD is deferring implementation of the notification requirement identified in the new paragraph 24 CFR 203.379(b) and (c).

The new requirement would only affect those mortgages insured under a Firm Commitment issued on or after November 19, 1992, or under Direct Endorsement processing where the credit worksheet was signed by the mortgagee's approved underwriter on or after November 19, 1992.

---

CONVEYANCES                                          4330.4

---

HUD will issue implementing procedures for the new requirement of 24 CFR 203.379(b) and (c) in the future. Until that time, mortgagees shall continue to follow the requirements of Chapter 2-10B with regard to Unrepaired
     Conveyance.                                        *

*    D.    Certificate of Property Condition.  (24 CFR 203.380)

1.The mortgagee shall either:

(a)Certify that as of the date of the filing of the deed for record, or assignment of the mortgage to HUD, the property was:

(1)  Undamaged by fire, flood, earthquake, hurricane, or tornado; and

(2)  As to mortgages insured or for which commitments to insure were issued on or after January 2, 1977, undamaged due to failure of the mortgagee to take action as required by 24 CFR 203.377, and

(3)  As to mortgages insured under firm commitments issued on or after November 19, 1992, or under Direct Endorsement processing where the credit worksheet was signed by the mortgagee's approved underwriter on or after November 19, 1992, undamaged while the property was in the possession of the mortgagee; or

(b)Attach to its claim a copy of HUD's authorization to convey

the property in a damaged condition.

     2.In the absence of evidence to the contrary the mortgagee's certificate or description of the damage shall be accepted by HUD as establishing the condition of the property as of the date of the filing of the deed or assignment of the mortgage.             *

       NOTE:The certification is accomplished through the accurate completion of Form HUD-27011.

2-11 PROTECTION AND PRESERVATION OF PROPERTIES.

A vacant property must be protected and preserved while it is in the possession of the mortgagee so that it will not be damaged at the time of conveyance.  A prudent mortgagee will protect and preserve a vacant property to avoid potential damage to the property and surcharges to its claim.  HUD will reimburse the mortgagee for required

---

---

preservation and protection costs within regionally or locally established limits when these expenditures are adequately documented. Protection and preservation work should not delay conveyance.  The mortgagee should also determine whether the property is vacant and whether protective action is necessary.  HUD will reimburse the mortgagee for appropriate periodic inspections for this purpose.

A.    Mortgagee Responsibility.  For mortgages insured on or after January 1, 1977, mortgagees will be held responsible for any
*       damage to a vacant mortgaged property resulting from the mortgagee's failure to take reasonable protection and preservation action.  "Reasonable action" includes the commencement of foreclosure within 120 days after the mortgagee discovers or should have discovered that the property was vacant or abandoned (see paragraph 2-2A).

    For mortgages insured under a firm commitment issued on or after November 19, 1992, or under Direct Endorsement processing where the credit worksheet was signed by the mortgagee's approved underwriter on or after November 19, 1992 the mortgagee will not be reimbursed for the costs of protecting, operating, preserving the property or removing debris from the property after the time the property should have been conveyed to HUD (24 CFR 203.402(g)) (see paragraph 2-2 D).

*

    Failure to inspect, protect and preserve the property will be considered mortgagee neglect.  If the property is damaged because of mortgagee neglect, the mortgagee must repair the damage at its own cost or obtain permission from HUD to convey the property

damaged.

    If permission is given to convey a property in a damaged
condition, the greater of any insurance recovery or HUD's
estimate of the cost of repairs shall be deducted from the
mortgage insurance benefits.  Where the claim is to be adjusted
for damages, Item 24 of Part A, Form HUD-27011, should be marked
"Yes" and Items 25, 26 and 27 must be completed (24 CFR
203.379(a)(1)).

    Mortgagees must provide the local HUD offices any documentation,
including copies of all inspection reports, which they feel will
verify that appropriate action was taken to preserve and protect
the mortgaged property from the time of vacancy to conveyance.

    This documentation must accompany the copy of Part A, Form
HUD-27011, which is sent to the local HUD office.  Ensure that
all such documentation includes the FHA case number, is securely
fastened to the claim form, and is legible.  Without adequate
documentation to support the mortgagee's position, local HUD
offices shall deem such damage as being due to the mortgagee's
failure to take appropriate action to preserve and protect the
mortgaged property.

---

CONVEYANCES                                          4330.4

---

    HUD reserves the right to deduct from the mortgage insurance
claim the greater of the hazard insurance benefits or HUD's
estimate to repair the property.

    B. Inspections.  (24 CFR 203.377)

        1. Inspections are identified as initial, occupancy and vacant.

            a. Initial.  When the mortgage is in default and a payment
is not received within 45 days of the due date and
efforts to reach the mortgagor or occupant have been
unsuccessful, the mortgagee must inspect the mortgaged
property to determine if it has become vacant or
abandoned.  The initial inspection must be made within
60 days of the due date.

            b. Occupancy.  If the mortgage remains in default and the
inspector cannot verify that the property is vacant,
the mortgagee must perform at least one follow-up to
determine whether the property remains occupied.  This
follow-up must be documented whether it was by letter,
telephone or means other than on-site inspection.  When
the mortgagee is unable to determine the occupancy
status by telephone or correspondence, an inspection
and adequate follow-up must be made within 30 days of
the last inspection or follow-up.

This inspection serves three purposes:  first, it promptly apprises the mortgagee when it has acquired possession because the property is vacant; second, it apprises the mortgagee when it is time to take reasonable protection and preservation action; and third, it permits more timely foreclosure of an abandoned property.

During bankruptcy actions and assignment processing, mortgagees should be able to verify the status of the property without performing an on-site inspection. (Occupancy information during bankruptcy can usually be obtained by contacting either the bankruptcy trustee or the filing attorney.)  Reimbursement in a mortgage insurance claim normally will not be made for occupancy inspections if the mortgagor has filed bankruptcy until the bankruptcy is released, discharged or the property is formally abandoned by the bankruptcy trustee.

Mortgagees may communicate with the HUD office and/or counseling agency to determine the mortgagor's status while a

---

---

case is being processed for assignment.  For this reason there should be few cases where an occupancy inspection is warranted and reimbursable during assignment processing.

c.Vacant.  When the mortgage is in default and the mortgagee has established that the mortgaged property is vacant, mortgagees shall inspect the mortgaged property every 25 to 35 days.

Generally, reimbursement will be limited to one inspection for each thirty day cycle.  This inspection should not be earlier than 25 days after the last inspection or later than 35 days after the last inspection.  Only where a local HUD office has identified a need to inspect more frequently, and has made this a requirement, will reimbursement be allowed for those additional inspections.

2.For all inspections, mortgagees shall document the general condition of the property as well as any actions which would be required to adequately protect and preserve the property. Many of the inspection forms currently used by the industry meet or exceed HUD requirements.  The purchase or use of a specific form will not be required.

However, at a minimum, the following Items must be documented on each inspection report.  Of course, where the property is occupied, some of the Items listed would be identified as not applicable (n/a).

        a.Date of the inspection.

        b.Identity of the inspector.

        c.Is the property occupied?

        d.Is the house locked or secured?

        e.Is the grass mowed and/or shrubs trimmed?

        f.Is there any apparent damage?

        g.Is any exterior glass broken?

        h.Are there any apparent roof leaks?

        i.Does the house contain personal property and/or debris?

---

CONVEYANCES                                        4330.4

---

        j.Are any doors or windows boarded?

        k.Is the house winterized?

        l.Are there any repairs necessary to adequately preserve and protect the property?

        m.Are appliances present and operable?

For purposes of reimbursement, proper documentation must be maintained by the mortgagee on the performance of inspections and follow-up activities.  HUD defines proper documentation as evidence of payment and copies of all completed inspection forms with any accompanying follow-up documentation for occupancy inspections.  This documentation shall be available for verification and shall be maintained in each claim file.

  C.Debris Removal.

   1.Debris and personal property must be removed before the property is conveyed to HUD unless otherwise directed by the local HUD office, but this should not delay conveyance.  The regulations require conveyance within 30 days after acquisition of possession.  This should be ample time to

remove debris and personal property.  Any debris removed per
local code is also subject to the established limits on
debris removal.  Costs for removal of debris and personal
property are considered protection and preservation
expenses, unless removal of the personal property is
required by the sheriff as a part of the eviction
proceedings.  Cost of Debris removal is considered a
protection and preservation cost with the following
exceptions:

       a.if the debris is removed by local law enforcement or
crews under the control of local law enforcement where
the mortgagee has no control over the removal, the cost
of removal is considered an eviction cost;

*             Costs may be claimed within the parameter of the
Regional Protection and Preservation guidelines (i.e.
amount per cubic yard, etc.) but hours of labor should
not be claimed in addition to allowable debris cost
limits, as labor is included in determining these
amounts.*

---

---

       b.if the items removed can not be distinguished from
personal property and taken to storage, the cost of
removal are considered an eviction cost; and

       c.if the items are required by the sheriff to be placed
on or near the street during the eviction, with no
distinction between debris and personal property, the
cost of removal is considered an eviction cost.

    If personal property is removed as a part of normal eviction
proceedings, enter the cost in Item 305 of Part D.

    2.Broom sweeping is considered a part of interior debris
removal and should not be listed as a separate cost.

    3.Dump fees should not be listed as a separate cost.  Regional
guidelines for costs per cubic yard or per ton will include
dump fees.

    4.Exterior cleaning, which may include debris, normally has to
be conducted only once.  Inspections will determine if
re-cleaning is necessary.  Permission is necessary to exceed
the published limit.

    5.Appliances which appear to be in operable condition should
not be removed from the property.  The presence and
condition of the appliance should be documented in the

inspection report.

      6.If the debris includes hazardous waste, local health and environmental agencies should be consulted regarding proper disposition.

      7.If it is necessary to exceed the published cost limits for debris removal the mortgagee must submit bids obtained pursuant to Regional instructions and request field office approval.  The request should indicate the purpose of the bid, the type of debris to be removed and the amount of protection and preservation expenditures made to date.  The bidder's name, address and telephone number must appear on the bid.

   Mortgagees will not be reimbursed for the cost of obtaining bids. HUD Field Offices will provide, on request, a list of vendors who will provide free estimates.  The mortgagee's field service company may obtain bids and may be a bidder.

   Regional guidelines will instruct mortgagees to obtain one bid or two bids.  If two bids are required they must be independent competitive bids and must be

---

CONVEYANCES                                        4330.4

---

   submitted to HUD separately.  The local HUD Office may also obtain one or more bids from its vendor list.

   The local HUD Office will take one of the following actions after receiving the bids:

       a.Notify the mortgagee to accept one of the bids submitted.

       b.Notify the mortgagee of the name and bid amount of a bid the local HUD Office received.

      In this event the mortgagee may:

         (1)Contract directly with HUD's bid source at the stated bid amount, or

         (2)Contract with its source at the amount stated by HUD's bid source.

       c.Notify the mortgagee to convey the property without removing the debris.

   D.Cost Limits.

1.Limits on the amount HUD will reimburse mortgagees for specific items which are considered as protection and preservation (P&P) actions will be published by HUD regional offices. To the extent feasible, these limits will be established on a regional basis but some local variations may be necessary. However, local office variations are published in the Regional P&P Schedule. Appendix 13 provides a listing of HUD's ten regional offices. Any Regional P&P Schedule which have not been received should be immediately requested directly from the respective office.

2.Generally, mortgagees may expend up to the maximum amount specified in the applicable Regional P&P Schedule for protection and preservation work for a one unit single family property without HUD's prior approval, provided individual expense limits have not been exceeded. The costs of required inspections and authorized boarding will not be included in the maximum amount.

3.Expenses above the allowable published cost limits or the total maximum property amount per property must have prior written approval of the

---





---

local HUD office where the property is located. Appendix 14 provides a sample format which may be used in requesting approval to exceed a cost limit. All requests must contain justification to support them. If the total cost entered in Item 110 exceeds the maximum amount specified in the Regional P&P Schedule a copy of Part C (and a copy of the local HUD office approval to exceed limits, if applicable) must be attached to the Part B submitted to HUD Headquarters.

4.In order to control costs, mortgagees are encouraged to seek competitive bids for the required work. Requests to exceed regional debris removal limits must be supported by cost estimates.

If a written response has not been received from the local HUD office within 10 days, mortgagees must follow up until a written response is received. In emergency situations, mortgagees may fax their requests to the local HUD office and confirm receipt of these requests verbally. The local HUD offices will respond to your emergency requests via facsimile, if requested. Mortgagees are responsible to confirm receipt and legibility of all requests sent via facsimile.

Failure to receive a response from the local office does not

constitute an extension of time or approval of the request
(see paragraph 1-6).

A copy of the local HUD office approval and a copy of Part C
must be attached to the Part B submitted to HUD
Headquarters:

a.For all cases where the total for Item 110, Schedule B,
exceeds the Regional maximum property amount.

b.For all cases where the local HUD office issued an
approval to exceed a published cost limit (individual
or maximum property amount).

Copies of both the mortgagee's request and HUD's response
must be retained in the Claim File.

5.Although a claim payment may include reimbursement for more
than the Regional cost limit for property protection and
preservation expenses, the Department will require
reimbursement for any amounts not supported by appropriate
documentation.  It is not necessary to submit receipts for
disbursements with the initial submission of Form HUD-27011.
However, receipts must be available upon request from the
Department and these receipts from vendors must itemize the
service provided in

---

CONVEYANCES                                          4330.4

---

sufficient detail to allow a review for compliance with the
limits published by the HUD regional office.  Charges must
be made and itemized in accordance with the standards of
measurement as set forth in the regional limits.

6.   The purpose of protection and preservation action is to
     protect the property from vandalism and the elements until
     it is conveyed to HUD.  Expenditures made after conveyance,
     (unless the work was performed before conveyance) or for
     repairs which do not protect and preserve the property
     before conveyance are not reimbursable unless requested by
     the local HUD office in writing.  The amount of such
     reimbursement must also be approved by the local HUD office.
*
7.   For mortgages insured under a firm commitment issued on or
     after November 19, 1992 or under Direct Endorsement
     processing when the credit worksheet was signed by the
     mortgagees approved underwriter on or after November 19,
     1992, the mortgagee will not be reimbursed for the cost of
     protecting, operating, preserving or inspecting the property
     or removing debris from the property incurred after the
     deadline to convey the property (24 CFR 203.359).  See
     paragraph 2-2D for more detail on conveyance requirements

(24 CFR 203.402(g)).
*

    E.Other Protection and Preservation Actions.

        1.Boarding.  Mortgagees shall not board up vacant properties
unless prior approval of the local HUD office is obtained.
This approval may be provided on a case by case basis, or
prior approval may be provided in the regional guidelines
(i.e., city, county, zip code, street, block, etc.).  The
Regional Protection and Preservation Schedules provide
policy on this matter.

        Although boarding will be restricted and approved on only a
case by case basis, mortgagees shall continue to secure all
windows and doors in accordance with regional guidelines.

        Properties which suffer severe fire damage must be secured
for safety reasons and to prevent unauthorized entry.  This
requires that all lower floor windows and doors will be
secured according to the specifications identified in the
appropriate regional P&P guidelines.

        The additional costs of securing a severely fire damaged
property are not included in the Regional cost limitation
for customary protection and

_____

4330.4                                              CONVEYANCES

_____

        preservation expenses.  However, mortgagees must request
prior written approval from the local HUD office if the
costs of the securing will exceed $450.  Local HUD offices
have been advised to respond to all requests promptly.

        2.Winterizing.  Specific regional guidelines provide policy on
winterization.  If regional guidelines do not state a range
of months during which winterizing must be completed, then
the intent is that winterizing should be done all year.

        3.Photographs.  Any additional photographs beyond the
allowable photo expenditures in the regional guidelines are
the responsibility of the mortgagee (and are not
reimbursable), unless specifically allowed (in writing) by a
local HUD office on a case by case basis.

        4.Grass Cutting/Snow Removal.  A mortgagee is required to
include grass cutting and/or snow removal in the maximum
limit.  As the mortgagee approaches the ceiling, an estimate
of the total grass cutting and/or snow removal should be
made and a one time request to exceed the maximum limit if
needed.  This will significantly reduce the number of

approvals needed.

        5.Signs.  A sign no larger than 8 1/2 by 11 inches should be
attached to the inside of a window or front door, providing
information (including a telephone number) as to who to
contact for emergency or other purpose.

        6.Request to Exceed Limits/Time Frames.  Requests to exceed
cost limits are considered separately from requests to
exceed time frames.  A mortgagee who falls to meet a time
frame should expect an interest curtailment unless an
extension has been requested and granted on Form HUD-50012.
Failure to receive a response from a local HUD office to
exceed cost limits does not constitute either an extension
to convey title and file Part A, or an extension to submit
title evidence and submit fiscal data, Part B.  A separate
request for each extension of time must be submitted by the
mortgagee.  All requests for extensions and all responses
must be in writing (see paragraph 1-6 and Appendix 13).

*
2-12 EVICTION COSTS - 24 CFR 203.402 q. provides for the reimbursement of
reasonable costs incurred in evicting occupants and in removing
personal property from the properties.  It is the mortgagees
responsibility to adequately document and support all evictions costs
claimed for reimbursement.  The following guidelines for eviction
costs must be followed in order to establish such costs as reasonable
and customary for the purposes of reimbursement on FHA insurance
claims.

---

CONVEYANCES                                          4330.4

---

    A.Photographs.  If debris is removed as part of the eviction,
before and after photographs as required by the Regional
Preservation and Protection Guidelines must be maintained in the
claim review file.  Debris removal is generally not an eviction
expense, and will be disallowed as such, unless it can be clearly
demonstrated that one of the conditions of Paragraph 2-11 C 1 a,
b or c are met.

    B.Eviction Crews.  Costs of eviction crews actually necessary to
accomplish the eviction will be reimbursable provided that those
costs are customary and reasonable for the area.  If a Sheriff or
local law or statute requires a certain number of persons to be
present, documentation to verify that requirement must be
maintained in the claim review file.

    C.Eviction on Unoccupied Property.  Evictions should not normally
occur on unoccupied properties.  However, certain local
conditions may require that evictions be performed on unoccupied
properties.  If possessory action is initiated on an unoccupied
property, the mortgagee must sufficiently document in the claim
file the reasons why such action is necessary to be eligible for

reimbursement of the cost relating to such action.                    *

2-13 HAZARD INSURANCE.

    A.Hazard Insurance Premiums.  HUD will reimburse the mortgagee for
hazard insurance sufficient to protect the mortgagee's interest
up until the date the deed to the Secretary is filed for record
(24 CFR 203.402(c)).  The reimbursement may not exceed the
reasonable rate for the area.  A reasonable rate is a rate not in
excess of the rate or advisory rate set by the principal
State-licensed rating organization for essential property
insurance in the voluntary market or the FAIR Plan rate if such
coverage is available (24 CFR 203.379(a)).  HUD may establish
from time to time acceptable reimbursement rates.

    All hazard insurance policies on the mortgaged property must be
canceled as of the date the deed to the Secretary was filed for
record (24 CFR 203.382).  Do not delay submission of Form
HUD-27011, Part B, pending receipt of premium refunds resulting
from the cancellations.  Part B must be prepared within the
required time limits.  If the amount of the actual premium refund
is not known at the time the Part B is prepared, calculate an
estimate on the "short rate" basis.

    To calculate the refund using the "short rate" method, determine
the number of days the policy was in effect.  This is the period
from the effective date of the policy to the earlier of the
cancellation date or the date the deed to the Secretary was filed
for record.  The Julian Date Calendar in Appendix 9 may assist in
this determination.  The Short Rate Table in Appendix 15 is then
used to determine the percentage of the premium utilized.  This
figure is subtracted from 100 to

_____

4330.4                                                    CONVEYANCES

_____

determine the percentage of premium remaining.  The total premium
is multiplied by the remaining percentage of premium to determine
the estimated amount of the premium refund.

    Example:  A $250 insurance policy is effective from 8/10/92
through 8/10/93.  The property is conveyed to the Secretary on
9/15/92.  The policy was in force for 36 days (from 8/10/92 to
9/15/92).  The Short Rate Table shows that 20% of the premium was
utilized, therefore 80% of the premium is remaining.

    $250 x 80% = $200 is the estimated hazard insurance refund

    Include the estimated refund amount in Item 109, Part B.  If the
actual premium return differs, you may be entitled to either a
refund or be required to remit the difference to HUD.  File a
supplemental form (see Chapter 7) to claim a refund or remit the
difference ($10 or less should be ignored).  Any claimed

difference between the calculated estimate and actual return premium must be supported by the insurance carrier's statement of the return premium.  A copy of this statement should be retained by the mortgagee in the claim file.

   Under the following circumstances, the mortgagee may submit (i) a Part B claim without including an estimated HIP refund; or (ii) a supplemental claim for reimbursement, if a HIP refund was estimated but no refund was received:

     1.the mortgagee can demonstrate that the insurer remitted the refund to the mortgagor, or

     2.the mortgagee can demonstrate that the insurer has a policy of not remitting refunds to the mortgagee in that jurisdiction.

If the hazard insurance premium is estimated and a refund is due, file a supplemental claim.  If an additional remittance is due HUD, file a supplemental remittance (see Chapter 7 of these instructions).
*
B.   Hazard Insurance Recovery.  (24 CFR 203.379)  Mortgagees are expected to seek hazard insurance proceeds for all situations where the property has sustained casualty, theft or vandalism damage, not just for damages sustained in fire, flood, earthquake, tornado, hurricane, boiler explosion or where the mortgagee failed to take proper action to preserve and protect the property (mortgagee neglect).  However, the application of insurance proceeds on Form HUD-27011 will differ for those cases where the damage was not fire, flood, earthquake, boiler explosion, tornado or mortgagee neglect.

---

CONVEYANCES                                     4330.4

---

     1.If the property is damaged by fire, flood, earthquake, tornado, hurricane, boiler explosion (condominium units only) or mortgagee neglect, the property may be conveyed damaged only with prior HUD approval (24 CFR 203.379(a)(1)).  If such a property is conveyed with HUD approval, the greater of the hazard insurance recovery or HUD's estimate of damage will be entered in Part A, item 27 and will be deducted from the insurance benefits (24 CFR 203.379).  If Part A is submitted before the insurance proceeds are received, the mortgagee may have to estimate the recovery.  When the proceeds are received, they may be less than the amount estimated.  In this event, the mortgagee is entitled to reimbursement of the difference between the amount of proceeds expected and the proceeds received if both are greater than HUD's estimate of damage (24 CFR 203.382(b) and (c)).  The adjustment is made on line 119 of Part B.  The

mortgagee is not entitled to a reimbursement which would
reduce the deduction in insurance benefits to less than
HUD's estimate of damages.

    2.Where the damage was other than fire, flood, earthquake,
tornado, hurricane, boiler explosion or mortgagee neglect,
the amount of the hazard insurance recovery must be shown on
Part B, line 118.  Do not report these funds received on
Part A, item 27, as it will cause your claim to suspend
    and delay your payment.                                         *

2-14 DEMOLITION NOTICES.

Mortgagees must advise the local HUD office having jurisdiction when a
demolition notice is received.  In some cases, the property could be
salvaged with limited repairs.  Usually, these repairs would be too
extensive to be considered as "protection and preservation costs"
which HUD has authority to reimburse the mortgagee.

A copy of the demolition notice must be sent immediately to the local
HUD office to the attention of the Chief Property Officer (CPO).  The
condition of the property will be evaluated and the mortgagee will be
notified whether to allow the demolition or request it to be delayed.
The mortgagee will be reimbursed for the cost of compliance with local
HUD office instructions.  If an extension to meet any time requirement
is needed, a request should be submitted pursuant to paragraph 1-6.

---

4330.4                                          CONVEYANCES

---

2-15 FORECLOSURE AND ACQUISITION COSTS.  (24 CFR 203.402(f))

HUD regulations authorize the reimbursement to mortgagees of
two-thirds of the foreclosure costs or costs of acquiring a property
by other means (including costs of conveying and evidencing title to
the Secretary).  Such costs must be actually paid by the mortgagee and
must be approved by HUD.

   A.Allowable Costs.  A complete listing of allowable or unallowable
costs would not be practical because procedural requirements and
terminology vary in different jurisdictions.  Generally, HUD will
reimburse a mortgagee for:

    1.Fees which must be paid to public officials such as
sheriffs, clerks of court, recorders of deeds or public
trustees.

    2.Costs which are required by law, such as private service of
process, required publication, or certified copies of
documents.

    3.Fees and costs which are necessarily incurred and are

reasonable and customary in the area such as attorney fees,
title search, title policy, auctioneer's fee, trustee fees
and required costs related to eviction.

   B.Costs Not Reimbursable.  HUD will not reimburse a mortgagee for:

      1.Fees and costs which exceed reasonable and customary fees
for the area.  If a fee exceeds the customary fee for the
area, for adequate reason, such as a contested foreclosure
or eviction, the excess may be claimed and appropriate
documentation to support the amount claimed must be retained
in the claim file (see paragraph 1-10).

      2.Costs which are not necessarily incurred or are required
because of dilatory service, such as courier service or
express mail or property inspection by attorneys.

      3.Costs which are overhead items such as postage, telephone,
duplicating, or collection services.  The attorney's or
trustee's overhead costs should be included in their fee.

      4.Extra costs incurred in the foreclosure as a result of a
defect in the mortgage transaction or the mortgage
foreclosure or a defect in title which existed at or prior
to the time the mortgage was filed for record.  These costs
are reimbursable only if the mortgage was sold by the
Secretary or was executed in connection with the sale of the
property by the Secretary after August 1, 1969 (24 CFR
203.402(f)).

---

CONVEYANCES                                        4330.4

---

   C.Full and two-third Reimbursement.

      1.Full Reimbursement.

            a.Costs of eviction or other possessory actions are not
considered foreclosure costs and are reimbursable in
full within reasonable and customary limits.

            b.Costs of eviction crews, furniture storage or
relocation expenses are reimbursable only if required
under state or local law.

      2.Two-Third Reimbursement.

      Fees and costs related to foreclosure, conveyance and title
evidence are limited to two-thirds reimbursement.  HUD will
calculate the two-thirds allowance based on the amounts
entered on the claim form.

   Item 306 -Attorney fee for foreclosure.

Item 307 -All foreclosure, conveyance and title evidence costs other than fees, guardianship and intestacy proceedings (including related attorney fees); Torrens title acquisition costs, and bankruptcy costs other than attorney fees.

Item 310 -Attorney fees related to bankruptcy.

2-16 TAX BILLS.  (24 CFR 203.402(a) and (b))

The mortgagee must secure from the taxing authorities all available tax bills prior to conveyance of the property to HUD.  Such bills, regardless of due date, must be paid by the mortgagee prior to conveying a property to HUD.  In effect, no tax bills available from the taxing authorities should remain unpaid as of the date the deed is filed for record whether the taxes are payable before or after conveyance.

Do not pay tax bills received after the date the deed is filed for record.  Send these tax bills to the local HUD office, identified by the FHA case number and the taxing authority identification number.

As indicated in paragraph 2-6, the recorded deed should contain the address of the local HUD office "ATTN:  Single Family Property Disposition Branch" to assure that the taxing authority sends tax bills to the appropriate office for payment.

---

---

Do not delay submitting an application while awaiting a copy of the tax receipt to attach to the local office copy of the claim form.  A copy of the tax bill, the disbursement document or other type of information which identifies the tax and indicates that it was paid or sent for payment is acceptable.

The mortgagee will not be reimbursed for interest or penalties for late payment of taxes or assessments.

2-17 BANKRUPTCY OF THE MORTGAGOR.  (24 CFR 203.355)

The filing of a bankruptcy petition by the mortgagor may prevent or suspend the foreclosure action so that the action may not be initiated or completed within the specified time requirement.

    A.Delay of Foreclosure Initiation.

    1.If the filing of a bankruptcy petition prevents the initiation of foreclosure within the nine months time requirement, the time limit is extended to 60 days after the

release of the bankruptcy stay. The extension will avoid
the curtailment of debenture interest. In order to extend
the time limit the date of filing the bankruptcy petition
must be entered in Item 40, the date of release of the
bankruptcy stay must be entered in Item 21 and a date 60
days after the date of release must be entered in Item 19.

* The extension of time begins when the court releases the
bankruptcy stay or otherwise makes it possible to foreclose,
not when the mortgagee learns of the court's action.
Mortgagees and their agents should monitor and follow-up on
court proceedings where bankruptcies are delaying the
initiation of foreclosure so required actions can be taken
     within the permitted time frame.*

     If the time limit expired before the bankruptcy petition was
filed, or if foreclosure was not initiated within 60 days
after the release of the bankruptcy stay, debenture interest
will be curtailed as of the date the action should have been
taken. Under these circumstances an extension date of sixty
days should not be entered in Item 19.

* 2. A 60-day extension may not be adequate if the mortgagee must
send the letters under the assignment program or send
notices required by State law after the mortgage is released
form bankruptcy stay.

---

CONVEYANCES                                        4330.4

---

     Mortgagees are authorized an additional extension of time
for foreclosure initiation without prior HUD approval to
permit compliance with HUD's assignment and State law
requirements.

          a.HUD Requirements to Send Assignment Letters. If the
mortgagee is required by HUD Handbook 4330.1, REV-3,
Paragraph 8-7A.1.a to send the HUD assignment letters
after the bankruptcy stay has been released, the
mortgagee is authorized a 90-day extension of time to
initiate foreclosure (60-day extension as discussed in
the first paragraph plus an additional 30 days) in
order to allow sufficient time for dispatch and
response to the assignment letters. The mortgagee must
be very prompt in sending the assignment letters so
that there will be sufficient time remaining to
initiate foreclosure if appropriate.

          b.State Law Requirement to Send a Demand Letter or
Similar Notice. If State law requires that a demand
letter or similar notice be sent after bankruptcy stay
has been released and before foreclosure is instituted,

the mortgagee is authorized an additional extension of
the minimum length of time for the notice (for example,
if State law requires that a demand letter be sent not
less than 30 but not more than 90 days before
publication of sale, the additional extension will be
30 days).

       c.In some states the filing of a bankruptcy petition
voids or nullifies the foreclosure action and
foreclosure must be reinitiated.  If this occurs the
date of the reinitiated action, not the date of the
nullified action, will be considered the date of
foreclosure initiation.  The foreclosure action must be
reinitiated within sixty days after the release of the
bankruptcy stay or within nine months of default.

       d.Application for Insurance Benefits.  In applying for
mortgage insurance benefits where an additional 30-day
extension is authorized, the mortgagee should enter in
Item 19 of Form HUD-27011 an expiration date which
includes both the 60-day bankruptcy extension and the
additional extension.  The reason for the additional
30-day extension must be given in the Mortgagee comment
section of Part A, Form HUD-27011.

       e.Bankruptcy Stay Requirement.  The mortgagee is
authorized an extension for compliance with an
assignment or State law requirement in addition to a
60-day bankruptcy extension only if

---

4330.4                                              CONVEYANCES

---

       foreclosure could not be initiated within nine months
of default because of the bankruptcy action.  NOTE:  If
processing of an assignment request prevents the
mortgagee from initiating foreclosure within the nine
months time frame, the local HUD Offices will continue
to grant a 60-day extension on assignment rejections.

       f.Claim Review File.  Mortgagees must fully document the
claim file to support the use of the additional 30-day
extension.  This documentation may consist of dated
copies of the court's release from the bankruptcy stay;
dated copies of each HUD assignment letter sent before
and after their bankruptcy; and dated copies of any
demand letters or notices sent together with a
reference to the applicable State law.  These documents
will be examined as part of HUD's claim review to
determine their accuracy and the appropriateness of
                    the additional extension.
*

B.Delay of Foreclosure Completion.  If the filing of one or more bankruptcy petitions after initiation prevented completion of foreclosure within the specified time frame a brief note of the cause of delay should be entered in the Mortgagee's Comment section of Part A and supporting documentation must be placed in the claim file (See paragraph 2-2).

C.Fees and Costs.  After a decision has been made to foreclose, and the mortgage has been referred for foreclosure, certain fees and costs related to bankruptcy of the mortgagor may be considered costs of property acquisition.  Therefore, HUD will reimburse the mortgagee two-thirds of such costs (subject to the reasonable and customary limits for the jurisdiction).  If there are multiple bankruptcies, the fees and costs for each filing will be included.

2-18 FUNDS HELD BY MORTGAGEE.

A.General.  Funds held by the mortgagee are deducted from the insurance benefits, therefore, they should not be sent to HUD. Such funds shall be reported by making the following entries:

oUnapplied Section 235 Assistance Payments - Item 123, Part B, Column A.

oFunds Held Pursuant to a Buydown Agreement - Item 109, Part B, Column A.

oRental Income - Item 115, Part B, Column A.

---

---

oHazard Insurance Recovery - Item 118, Part B, Column A, if not reported on Part A.

oHazard Insurance Recovery - Item 27, Part A, and Item 119, Part B, column A if the entry in Part A is an estimate.

oAll other funds - Identify the nature and the amount of the funds and enter in Item 109, Part B, Column A.

B.Escrow Funds.  Any funds remaining in the escrow account on the date the deed is filed for record must be entered in Item 109, Part B.  If there are funds in the escrow account, there should be no entries for escrow advances in Items 305 or 311.

If the escrow account is depleted, escrow expenditures must be entered as advances in Items 305 or 311, as appropriate.  They should not be charged to Item 109 so as to create a negative escrow balance.

2-19 RENTAL OF PROPERTIES.

If there is a lengthy redemption period and the mortgagee has
possession of the property during that period, the best protection
against damage to the property may be to keep it occupied by tenants.
HUD will not reimburse the mortgagee, however, for costs incurred
solely in renting the property.  These costs must be recovered from
rental income.  Although rental expenses and rental income will be
shown separately on the claim form, rental expenses are allowable only
as an offset to rental income.  If rental produces a net profit, that
profit will serve to reduce the amount of the claim.

2-20 SPECIAL FORBEARANCE.

If a claim for insurance benefits is filed pursuant to a default under
a special forbearance agreement entered into between the mortgagee and
the mortgagor, the payment will include unpaid mortgage interest.  (24
CFR 203.410(a)(3))  The forbearance agreement must be signed by both
the mortgagor and the mortgagee, and must meet the conditions of 24
CFR 203.614.  A copy of the executed forbearance agreement must be
forwarded to HUD Headquarters with Part B of the Form HUD-27011.  A
copy must also be retained in the claim review file maintained by the
mortgagee.

*Any request for mortgage note interest on a claim for insurance
benefits which is not fully supported, will not be honored.  The
"Special Forbearance Checklist" (Appendix 26) was developed as a tool
to help mortgagees establish if the case meets the

_____

4330.4                                              CONVEYANCES

_____

minimum requirements for special forbearance.  A signed copy of the
checklist must be submitted with the claim and a signed copy must be
maintained with the claim review file.

*

   A.Eligibility for Mortgage Interest.  The mortgagor must have
failed to meet the requirements of the agreement for 60 days.

   B.Period for Which Mortgage Interest is Paid.  Mortgage interest is
paid for the period beginning on the due date of the last
completely paid installment.  To determine this date the total
amount of funds received under the agreement are applied
according to the terms of the original mortgage, to escrow,
principal and interest.  If sufficient funds were received to
total more than one payment, advance the due date of the last
completely paid installment and reduce the unpaid principal
balance accordingly.  If no payments were made under the
mortgage, interest is paid for the period beginning 30 days prior

to the date of the first scheduled payment.

Mortgage interest is paid to the earliest of the following dates:

1. the date of institution of foreclosure proceedings,

2. the date of acquisition of title and possession by deed in lieu of foreclosure,

3. the date the property was acquired by the Commissioner under a direct conveyance from the mortgagor,

4. 90 calendar days following the date the mortgagor fails to meet the requirements of the forbearance agreement, or

5. such other date as the local HUD office may approve in writing prior to expiration of the 90-calendar day period (24 CFR 203.402a).

The claim for this mortgage interest is made on line 121 of Part B of the claim form.

C. Computation Method. To obtain the amount of accrued mortgage interest due, multiply the Daily Interest Rate Factor by the amount of the unpaid principal balance. The Daily Interest Rate Factor is found in the Table in Appendix 8. This result is then multiplied by the number of days from the due date of the last completely paid installment to the date selected above as the "ending date." To assist in determining the number of days refer to the Julian Date Calendars provided in Appendix 9.

---

CONVEYANCES                                          4330.4

---

EXAMPLE: Assume a $90,000 mortgage financed at 13 1/4 percent interest rate for 30 years involved a broken special forbearance agreement. Prior to the agreement the regular monthly payment was $ 1,400, consisting of a principal and interest payment of $1,013.40 and a monthly escrow payment of $386.60. The last completely paid installment prior to the agreement was August 1, 1983, at which time the unpaid principal balance was $82,418.50. On November 14, 1983, a special forbearance agreement was entered in which the mortgagor agreed to pay $250 on that date and $250 on the 17th of each following month, but failed to make the payment due August 17, 1984. Since the agreement had been broken for 60 days on October 18, 1984, foreclosure proceedings were instituted on November 10. After considering the payment received during the agreement, which amounted to one complete installment, the due date of the last completely paid installment was advanced to September 1, 1983, at which time the unpaid principal balance was $82,259. Since one complete escrow payment was also received, the amount of escrow was increased by $386.60.

The mortgage interest is therefore calculated from September 1, 1983, to November 10, 1984, the date foreclosure was instituted.

D.Period for Which Debenture Interest is Paid.  (24 CFR 203.410)  Debenture interest is paid for the period beginning on one of the following dates and ending on the date of the initial payment or the date of interest curtailment.

    1.the date of institution of foreclosure proceedings

    2.the date of acquisition of title by the mortgagee or by HUD

HUD will compute the debenture interest at the time of payment of Part B and will adjust the amount of interest paid in the Initial Payment, if necessary.

Since debenture interest is calculated on the Unpaid Principal Balance when Part A is paid, before information about forbearance agreement is available, an adjustment in debenture interest is needed when Part B is processed.  Mortgage Note Interest and debenture interest cannot be paid for the same period of time.  If Mortgage Note Interest is claimed on Part B because of a special forbearance agreement, debenture interest already paid for the same period will be subtracted from the final settlement.

E.Extension of Time.  (24 CFR 203.355)  Although foreclosure may not be initiated or title may not be acquired within nine months of default because of the existence of a forbearance agreement the mortgagee need not request an extension of time.  If the insurance claim includes a payment of mortgage interest, debenture interest begins on the date of foreclosure initiation or title acquisition, not the date of default (24 CFR 203.410).

_____

_____

Since mortgage interest ceases 90 days after the mortgagor failed to meet the requirements of the agreement and debenture interest does not begin until foreclosure initiation or title acquisition, there will be a period of time when no interest accumulates if the mortgagee fails to initiate foreclosure within the 90 day period.

Should the mortgagee be prohibited from initiating foreclosure within the 90 day period because of bankruptcy or state law, or assignment consideration by the local office the mortgagee should request an extension of the period for which mortgage note interest is to be paid, on form HUD 50012 before the 90 day period expires.  The field office will extend the time to 60 days after the expiration of the bankruptcy or state law prohibition.

2-21 SECTION 235 ASSISTANCE PAYMENTS.

A.Unapplied Payments.  Unearned Section 235 assistance is to be returned to HUD via the Section 235 billing process.  Earned Section 235 assistance payments should be applied to the mortgagor's account in full installments to advance the date of default.  Partial payments which remain unapplied must be reported in line 123 of Part B.

B.Overpaid Assistance.  If the mortgagee advanced its own funds to repay overpaid Section 235 assistance to HUD and has not recovered the full advance from the mortgagor, the unrecovered advance shall be entered in Column B line 124 of Part B.

2-22 DOCUMENTS TO BE SUBMITTED.

It is very important that all required documentation be forwarded to the appropriate locations in a timely manner.  Failure to meet any of the documentation requirements could jeopardize all or part of the claim reimbursement (24 CFR 203.363).  The various documentation requirements imposed on the mortgagee are designed to provide critical control and notification functions which enable HUD to expedite the payment of a claim.  For example, it is critical that at the time of the initial application, the appropriate documentation is simultaneously mailed to the local HUD office.  This provides the local office with timely notice that a property is now in HUD's inventory.  If such notice is not provided to the local office at the time of the initial application, the mortgagee may not receive reimbursement for claimed expenses and may be liable for subsequent damage to the property.

Following is a listing of the documents which must be submitted on conveyance claims, the location they must be sent to, and when they must be sent.

---

CONVEYANCES                                          4330.4

---

A.On the Date the Deed is Filed for Record.  On the date the deed to HUD is filed for record or mailed to the recording authority, all required documents must be sent to HUD Headquarters and the local HUD office as follows:

    1.TO HUD HEADQUARTERS

        a.The original Part A

        b.The original Mortgage Insurance Certificate

        c.Worksheet showing reallocation of mortgage payments if capitalized method of accounting is used.

    2.TO THE LOCAL HUD OFFICE

a.A copy of Part A

                        b.A copy of the deed to HUD filed for record

                        c.A copy of the Mortgage Insurance Certificate

                        d.Copies of the last tax bills paid to each taxing
authority

                        e.A copy of HUD's letter approving damaged conveyance of
the property under 24 CFR 203.379(a), if applicable

                        f.The mortgagee's certificate that the conditions of 24
CFR 203.379(b), relating to fire damage, have been met,
if applicable

                        g.A copy of documentation that will verify that
appropriate action was taken to protect and preserve
the property, if applicable

                        h.Keys to the property, if available

   B.Within 45 Days After the Date the Deed was Filed for Record.  (24
CFR 203.365)  Within 45 days after the date the deed to HUD was
filed for record or mailed to the recording authority, all
required documents must be sent to the local HUD office as
follows:

_____

_____

        1.TO THE LOCAL HUD OFFICE

                        a.Title evidence reflecting ownership vested in the
Secretary

                        b.A copy of the mortgage

                        c.A copy of Part A

                        d.A statement relating to title defects if 24 CFR 203.390
applies

   C.Within 45 Days After Deed was Filed for Record or upon Receipt of
Title Approval Letter if later.  All required documents must be
sent to HUD Headquarters and the local HUD office as follows:

        1.TO HUD HEADQUARTERS

                        a.The original Part B

          b.The original Title Approval Letter

          c.A copy of the local HUD office approval of excess costs and Part C, if applicable (see paragraph 2-11)

          d.A copy of the executed special forbearance agreement, if applicable

          e.Payment ledger or other documents supporting loan balance difference (line 107, Part B)

    2.TO THE LOCAL HUD OFFICE

          a.A copy of Part B

          b.The original Parts C, D and E

    HUD must receive the required documents within the later of (i) 15 days after the date of the Title Approval Letter, or (ii) 55 days after the date the deed to HUD was filed for record (or mailed to the recording authority).

The following Table (Table 2-1) illustrates the document submission requirements for conveyance claims.

---

---

  CONVEYANCE CLAIM SUBMISSION REQUIREMENTS

```
*********************************************************************
* *
* *
* *
* *
* *
* *
* *
* *
* *
*        GRAPHICS  MATERIAL  IN  ORIGINAL  DOCUMENT  OMITTED        *
* *
* *
* *
* *
* *
* *
* *
* *
*********************************************************************
```

2-23 CLAIM PREPARATION - CONVEYANCES.

The claim must be completed as described below using HUD Form 27011,
Single Family Application for Insurance Benefits.  To avoid delays in
payment, the claim must be complete and accurate and contain all
information requested.  See Par. 1-3 on pre-screening of applications.

    A.Instructions for the Completion of HUD Form 27011, Part A,
Initial Application.  The following Item by Item instructions are
to be used when completing HUD Form 27011, Part A, for conveyance
claims.

PART A --- INITIAL APPLICATION

                    INITIAL APPLICATION

Item 1    Claim Type.  Place an "X" in the space for Claim
    Type 01 = Conveyance.

Items 2
and 3     FHA Case Number and Section of Act Code.  Enter the FHA
    Case Number and the appropriate Section of the National
    Housing Act ADP code.  All mortgages endorsed since
    1962 use the first style shown below, with three
    numerals, then a hyphen, then six numerals (or seven
    including the check digit).  Be sure to include the
    hyphen on the claim, whether the claim is submitted on
    paper or through electronic data interchange (EDI),
    even though CHUMS may omit it.  The three other
    acceptable FHA case number formats, for pre-1962
    mortgages, are also illustrated below.  All models
    include the Section of the Act (SOA) ADP codes.  The
    formatted case number appears on the MIC or the
    advanced notice of S/F Annual MIP unless the case is
    included in CHUMS, as in "5" below.

              (1)  X X X - X X X X X X          X X X
                or X X X - X X X X X X X
                    FHA Case No.                SOA ADP Code

              (2)     X X - X X X X X X            X
X X

                        (3)     X X X X X X - X X         X
X X

                        (4)     X X X - X X X X X         X
X X
                        FHA Case No.                SO

_____

                        (5)   X X X X X X X X X      X X X
                              FHA Case No.           SOA ADP Code
                              (used in CHUMS)

     Item 4  Default Reason Code.  Enter the applicable code
number from the default reasons listed below.  If
code 15 is used, explain the reason on the reverse
of Part A under "Mortgagee's Comments."

                   CODE              REASON

                   01    =Death of a principal mortgagor

                   02    =Illness of a principal mortgagor

                           03    =Illness of mortgagor's family
member

                           04    =Death of mortgagor's family member

                   05    =Marital difficulties

                           06    =Curtailment of income (Reduction of
income of a borrower)

                           07    =Excessive obligations - same
income, including habitual
nonpayment of debts

                   08    =Abandonment of property

                   09    =Distant employment transfer

                   10    =Neighborhood problem

                   11    =Property problem

                   12    =Inability to sell property

                   13    =Inability to rent property

                   14    =Military service

_____

15   =Other (explain in Mortgagee comments)

Item 5  Endorsement Date.  Enter the endorsement date that appears on the Mortgage Insurance Certificate.  If the mortgage was insured before MIC's were issued, enter the endorsement date that appears on the note.

Item 6  Date Form Prepared.  Enter the date the HUD form 27011 is completed and submitted to HUD.  To avoid debenture interest curtailment, Part A must be submitted on the same day the deed is filed for record, or mailed to the recording authority.  See paragraph 2-2.

*                        Note:  Although HUD permits 10 days from this date to receive the HUD Form-27011 before curtailing interest for late submission, you are required to enter in Item 6 the date of the actual submission (mailing) date of the form.*

Item 7  Due Date of First Payment to Principal and Interest.  Enter the date the first payment to Principal and Interest is due.  Obtain this date from the mortgage note.

Item 8  Due Date of Last Complete Installment Paid.  Enter the date the last complete installment paid was due, not the date it was paid.  This Item should be taken from the payment ledger.  If no payments have been made, enter the date in Item 7 (Due Date of the First Payment to Principal and Interest). Note that the date in this Item will always be the first of the month.

Item 9  Date of Possession and Acquisition of Marketable Title.  Enter the later of the date the mortgagee acquired good and marketable title to the property or the date it acquired possession of the property.

The mortgagee acquires the title to the property on the date of the Sheriff's or Trustee's deed or the deed-in-lieu of foreclosure is recorded.  If the deed conveys title directly

to HUD, rather than to the mortgagee, the date the
deed is recorded will be considered the date the
*                 mortgagee acquired title, except that any
redemption period must have elapsed in order for
title to be marketable.
*

          The mortgagee acquires possession of the property
on the date the property was discovered, or should
have been discovered, to be vacant (see paragraph
2-9).

          Exception:  If the mortgagee requested permission
to convey occupied and the request was either
approved or unanswered enter either (i) the date
of HUD's approval to convey the property occupied,
or (ii) the date on which 90 days have elapsed
since the mortgagee notified HUD as provided in 24
CFR 203.671(c) of the occupied conveyance
regulations (see paragraph 2-9).

     Item 10 Date Deed or Assignment Filed for Record or Date
of Closing or Appraisal.  Enter the date the deed
conveying the property to the Secretary is filed
for record.  The date the deed is mailed to the
recording authority may be entered.  Do not enter
the date the deed is mailed to an attorney.

          Note:  Whichever date is entered (recording or
mailing) will be used in evaluating all other
related time requirements and cannot be altered.

     Item 11 Date Foreclosure Proceedings (a) Instituted or (b)
Date of Deed In Lieu.  Check the appropriate box
and enter the date of the first public action
taken which was required by law to initiate
foreclosure (e.g., filing a complaint or petition,
recording a notice of default, or publication of a
notice of sale) or the date the deed-in-lieu was
recorded, whichever is applicable.  If foreclosure
was instituted and a deed in lieu was then
obtained, check both blocks and enter both dates.
If the foreclosure action was nullified under
state law by the filing of a bankruptcy petition,
enter the date on which the foreclosure action was
*                                 re-instituted.  If the deed-in-lieu is
directly
                    conveyed to the Secretary, the date the deed is
                    mailed for recording may be used.
*

_____

Item 12 Holding Mortgagee Number (Payee).  Enter the complete 10-digit mortgagee number of the holding mortgagee.

Note:  This number determines the payee's name and the address to which the insurance benefits check and claim payment data are mailed.

Item 13 Servicing Mortgagee Number.  Enter the complete 10-digit mortgagee number of the servicing mortgagee.

Note:  This number determines the name and address to which all computer generated letters and claim payment data are mailed.  Information will be mailed only to the holding mortgagee if this Item is not completed.

Item 14 Mortgagee Reference Number.  Enter the loan number (maximum 15 digits) used by the mortgagee for identifying the case if any.  This number will be printed on the benefits check.  If the mortgagee is FNMA or GNMA, the FNMA or GNMA loan number must be entered.

Item 15 Original Mortgage Amount.  Enter the original mortgage amount.  This figure should be taken from the mortgage note.  If there has been a recast of the mortgage, make a notation of the recasting on the reverse side of Part A under "Mortgagee's Comments" and make reference to 24 CFR 203.342.

Item 16 Holding Mortgagee EIN.  Not Applicable.

Item 17 Unpaid Loan Balance as of Date in Item 8 (Item 11 if coinsurance).  Enter the unpaid mortgage balance after crediting the last complete monthly installment paid.  This figure is taken from the mortgagee's payment ledger.  Partial payments insufficient to complete a full monthly installment are to be reported in Part B, Item 109 as escrow funds.

CONVEYANCES                                      4330.4

Item 18 Date of Firm Commitment.  Enter the date of the firm commitment.  This date should be taken from the firm commitment document, if available.  The

debenture interest rate is determined by the firm
commitment date or the date of endorsement,
whichever yields the higher rate.  If the case was
insured under the Direct Endorsement Program or
the commitment date is not available, this Item
must be left blank.  Direct endorsement mortgages
may be identified by the suffix code 700 through
799.  Do not enter a date here if this is a Direct
Endorsement or a converted co-insurance loan.

     Item 19 Expiration Date of Extension to Foreclose/ Assign.
If an extension of time is requested by the
mortgagee and granted by the local HUD office,
enter the expiration date of that extension.  The
extension must be in writing.  See paragraph 1-6.

                         If bankruptcy is involved or if state or local
laws delay action, the mortgagee need not obtain
approval to extend the date to begin foreclosure.
Enter the date 60 days (see note below) after the
date of the release of bankruptcy, unless an
additional extension period is approved by the
local HUD office.  The latest extension date must
always be entered.  This 60 day extension is
applicable only when the bankruptcy precluded
initiation of foreclosure within
*                               the timeframe.  See paragraph 2-17.  When an
attempt at a Pre-Foreclosure Sale (PFS) is
unsuccessful, the mortgagee has an automatic
60-day extension from the date of the notice of
termination from the PFS program to initiate
foreclosure.

           NOTE:In certain circumstances (terms of demand letter
or requirement to send assignment letters) it may
be appropriate to enter more than 60 days.
                         See paragraph 2-17A, 2, a.
*

     Item 20 Date of Notice/Extension to Convey.  If an
extension of time to file the deed for record to
HUD is approved by the local HUD office, enter the
expiration date of the extension.

_____

4330.4                                        CONVEYANCES

_____

     Item 21 Date of Release of Bankruptcy.  If Applicable.
Enter the date the bankruptcy stay or the local
law prohibition was released.  Note:  When there
is more than one bankruptcy, and the mortgagee is
entitled to a 60 day extension to begin

foreclosure, enter the release date which applies
to the extension.

*              Item 22 Is Property Vacant?  Yes or No - Check one to
indicate the occupancy status as of the date in
Item 9.*

     Item 23 If Item 22 is "No." Date of Local HUD Office
Approval - Enter the date the local HUD office
approved the occupied conveyance.

                 If conveyed property is occupied without HUD
approval, as indicated under 24 CFR 203.671(c),
enter the 90th calendar day after mortgagee
notification to HUD requesting occupied
conveyance.

     Item 24 Is Property Conveyed Damaged?  Yes or No - Check
"yes" if the damage falls into the
*                  categories listed in paragraphs 2-10 and 2-11.   *

                 If there is no damage or if there is damage
                 to the property which is not covered by the
                 above sections, check "no."  In the latter
                 case, specify on the reverse of Part A under
*                  "Mortgagee's comments", the type of damage, an
                 explanation of why it does not fall into the
                 categories listed in paragraphs 2-10 and 2-11,
                 and if any immediate repairs are needed.        *

*            Note:  When there is damage to the property and Item 24
                   is checked "no", the mortgagee must attach to the
                   copy of the Part A sent to the Field Office,
                   copies of documentation relating to all protection
                   and preservation work performed on
                   the property.
*

     Item 25 If Item 24 is "Yes," Date of (a) Local HUD Office
Approval (pursuant to 203.379(a)(1)) or (b)
Certification (pursuant to 203.379(a)(2))

_____

CONVEYANCES                                           4330.4

_____

                 - Enter the date of the HUD approval letter or the
mortgagee certification letter, whichever is
applicable.  Attach a copy of the certification
letter to Part A (copy 1) which is sent to the
local HUD office.

     Item 26 Type of Damage - Check appropriate box.  If more

than one type of damage, check the type that
caused the greatest damage.  Do not complete this
Item if Item 24 is checked "no."

        Item 27 Recovery or Estimate of Damage - A figure must be
entered here if Item 24 is "yes" and 25(a)
applies.  If the local HUD office approved
conveyance of the property in a damaged condition,
enter the greater of HUD's estimate to repair the
damage (obtained from the local HUD office) or the
amount of the insurance recovery.  If the
insurance recovery is not received when this Item
is completed, estimate the amount.  AN AMOUNT MUST
BE ENTERED.

                        If Item 25(b) applies, enter the amount of the
insurance recovery, if any.  If insurance recovery
has not been received, estimate the amount.

        Item 28 Is Mortgagee Successful Bidder?  Yes or No - Not
applicable.

        Item 29 Deficiency Judgment Code.  Enter the code number
1, 2, 3 or 4 as appropriate.  See below.

Code

                        1Enter "1" - If HUD authorized you to obtain a
deficiency judgment, but you did not acquire
one.

                        2Enter "2" - If you obtained a deficiency
judgement, but HUD did not authorize you to
do so.

                        3Enter "3" - If HUD authorized you to obtain a
deficiency judgment and you were successful
in obtaining one.

_____

4330.4                                                      CONVEYANCES

_____

                        4Enter "4" - If HUD did not authorize a
deficiency judgment and you did not obtain
one.

        Item 30 Authorized Bid Amount. - Enter the amount of the
CAFMV, if the local HUD office provided one.

        Item 31 Mortgagee Reported Curtailment Date - If the
mortgagee failed to comply with a time requirement
for any of the following circumstances a)

reasonable diligence, b) notice of foreclosure, or
c) failure to initiate foreclosure within nine
months of default (within one year if default
occurred prior to December 1, 1992) and subsequent
payments advance the default date, enter the date
the action should have been taken.  If there was
more than one failure, enter the earliest date on
which a required action should have been taken.

     Item 32 Schedule of Tax Information.  Enter complete
information on the last amount paid for each type
of tax or assessment.  If a tax has not been paid
because it was not available for payment before
conveyance, show the exact title of the tax or
assessment to which it is subject.  If a tax was
not paid because of a Homestead or similar
exemption, identify the tax and enter the
exemption type in the "Amount Paid" column.

          Type of Tax/Tax Year.  Enter the exact title of
the tax or assessment with installment
information, if applicable (e.g., county tax,
first half or school district tax, second half)
and the year for which the tax assessment was
levied.

          Collector's Property Identification.  Enter the
number used by the taxing authority to identify
the property.

          Amount Paid.  Enter the amount paid for each type
of tax or assessment (excluding penalties and
interest) and attach a copy of the bill to the
copy of Part A sent to the local HUD office.  If
no tax was paid because of a

_____

CONVEYANCES                                         4330.4

_____

Homestead or similar exemption, enter the
exemption type.  If the tax was not paid
for other reasons, enter "None."

Period Covered, From - To.  Enter the
dates covered by the tax whether paid or
not and without regard for the due date.

Date Paid.  Enter the date of actual
payment.  All tax bills available before
conveyance should be paid regardless of
the due date.  Tax bills received after
the date the deed is filed for record

should be sent to the local HUD office,
identified by the FHA case number and the
taxing authority identification number.

   Internal Revenue Service (IRS) Lien.  If
there is an IRS tax lien, enter the date
and the expiration of the lien on the
reverse side of Part A under "Mortgagee's
Comments."

 Item 33        Mortgagor's Name, Social Security Number
    and Property Address.  - Enter the name
    of the mortgagor in default as it appears
    on the ledger record.  Enter the property
    address as it appears on the security
    instrument or the mortgage insurance
    certificate.

  Enter the social security numbers of all
    mortgagors, if known.  At least one
    social security number is required.  See
    paragraph 1-8 for additional information.

 Item 34        Brief Legal Description of Property.
                    Enter a brief description of the
                    property.  This information is found on
                    the mortgage which should agree with the
                    deed to HUD.

 Item 35        Name and Address of Mortgagee.  Enter the
                    name and address of the mortgagee,
                    including the ZIP code.

 Item 36        Name and Address of Mortgagee's Servicer.
                    Enter the name and address of the
                    mortgagee's servicer, including the ZIP
                    code and the name

_____

_____

  and telephone number of a contact person who can
  answer questions about the claims.

Items 37
and 38          Mortgagee Official Signature, Date and Title,
        and Servicer Signature, Date and Title.  The
        claim must be signed and dated by an official of
        the holding mortgagee if the holding mortgagee is
*                filing the claim.  If a servicer is filing the
        claim on behalf of the mortgagee, an official of
        the servicer must sign and date the form.  The

application must be complete when signed and the
actual date signed must be entered by the signing
official.  The application will be returned if it
is not signed or if it contains a stamped or      *
duplicated signature.
                    duplicated signature.

*        Note to
signing
official:      Please be sure you have read and understand the
          certifications on the HUD Form-27011 before
          signing and dating.  If your system prints the
          date in items 37 and 38, check to ensure this is
          the date you are signing the form.  Also check the
          submission date in item 6 to ensure it does not
          reflect an earlier date.  The date in item 6
          should be the same date as item 37 or item 38.
*

 Item 39        Amount of Monthly Payment to:  (a) FHA
          insurance, (b) Taxes, (c) Hazard Insuran
ce
          and (d) Interest and Principal.  Not app
licable.

   Item 40  If Bankruptcy Filed, Enter Date.  Enter the date
   last bankruptcy filing related to the
   release shown in item 21.  If there is
   more than one bankruptcy, enter the filing and
   release dates in the mortgagee comments section.

   Item 41  If Conveyed/Assigned Damaged, Date Damage
   Occurred.  Enter the date the mortgagee or its
   agent first became aware of damage to the
   property.  This date should be available in the
   Inspection Reports.  If there are no Inspection
   Reports because the property was occupied and
   the date of damage is not known, enter an
   estimated date

_____

CONVEYANCES                                        4330.4

_____

                         and indicate in the Mortgagee Comments section
that the date is an estimate.

     Item 42 Date HIP Canceled or Refused, if Applicable.
Enter the date the fire insurance policy was
canceled or refused by the insurer, if the
property was damaged by fire and the mortgagee
executes a certification pursuant to 24 CFR
203.379(a)(2) (a date will be entered in Item

25b).

      Item 43 Number of Living Units.  Enter the number of
living units in the property.

      Item 44 Status of Living Units.  Indicate if the property
is vacant or occupied for each living unit by
checking the appropriate box.  If the unit is
occupied, enter the occupant's name.  If the unit
is vacant, enter the date vacated (as best as can
be determined) and the date the mortgagee secured
the property.

    Mortgagee's Comments, if any.  Use this area to justify unusual
circumstances as well as other information required by the
instructions.

HUD's Comments, if any.  HUD USE ONLY.

    B.Instructions for the Completion of HUD Form 27011, Part B, Fiscal
Data.  The following Item-by-Item instructions are to be used
when completing HUD Form 27011, Part B, for conveyance claims.
Prepare this Part after Parts C, D and E have been completed.
The information entered in this Part is transferred from Parts C,
D and E.

PART B

                    FISCAL DATA

      Item 100        Mortgagor's Name and Property Address.  Enter the
mortgagor's name and property address as they
appear in Item 33 of Part A.

---

---

      Items 101
      and 102 FHA Case Number and Section of Act Code.  Enter
the FHA Case Number and Section of the Act Code as
they appear in Items 2 and 3 of Part A.

      Item 103        Mortgagee's Reference Number.  Enter the
mortgagee's Reference Number as it appears in Item
14 of Part A.

      Item 104        Date Form Prepared.  Enter the date Part B is
prepared and submitted to HUD (See Paragraph 2-2).

      Item 105        Expiration Date to Submit Title Evidence, if
Applicable.  If an extension of time to submit
title evidence or Part B was requested and

approved by the local HUD office, enter the date
the approval expires.

       Item 106       Check if Supplemental.  Not applicable.

       Item 107       Adjustment to Loan Balance (if different from
block 17 on Part A).  If the amount of the unpaid
principal balance reported in Item 18 on Part A is
incorrect, enter the difference between the unpaid
principal balance allowed by HUD in the Initial
Payment and the amount that should have been paid.
The adjustment may be a deduction (Column A) or an
addition (Column B).  If there is an adjustment,
attach copies of the payment ledger or documents
supporting the adjustment to the original Part B.
If the capitalization method was used, also
include a worksheet showing the re-application of
payments to principal and interest.

       Item 108       Sale/Bid Price or Appraisal Value (for Coinsurance
or Nonconveyances).  Not applicable.

       Item 109       Escrow Balance (as of Date in Block 10, Part A).
Enter amount remaining in escrow account as of the
date the deed is filed for record.  Also include
any funds

---

---

       received on account of the mortgage which have not
been applied to reduce the indebtedness, e.g.,
partial payments, hazard insurance refunds,
buydown monies, funds held in escrow for on-site
repairs (pursuant to Form HUD-92300, Assurance of
Completion Agreement).  DO NOT SEND ESCROW FUNDS
TO HUD.

       oSee Item 123 for instructions on how to adjust the
claim for unapplied Section 235 assistance
payments.

       oPayment of expenses for which funds are escrowed
shall be charged to the escrow account in full or
in part until the escrow account balance equals
zero.  Expenses paid from available escrow funds
are not to be recorded on Part D.

       oDO NOT ENTER A NEGATIVE BALANCE.  Advances by the
mortgagee for expense payments normally charged to
the escrow account shall be recorded under Part D,
Items 305 or 311, as appropriate.  When the first

occurrence of an expense results in a negative
balance to escrow, enter the negative amount in
Item 305 or 311, whichever is appropriate.
Interest on advances shall be computed from the
date of disbursement to the date the claim is
mailed.  If there were any advances from escrow
prior to the date of default, interest is
calculated from the date of default.

<div align="center">oIllustration of Mortgagee Advances:</div>

| Date Due | Date Paid | Interest | Principal | Escrow Adjustment | Escrow Balance |
|------|------|------|------|------|------|
| Balance Forward | . . . | . . . | . . . | . . . | $151.60 |
| 1/01/83 | 2/03/83 | $73.32 | $21.07 | $70.69 | 222.29 |
| | 8/03/83 | | | 198.98- | 23.31 |
| | 12/11/83 | | | 51.19- | (27.88)/1 |

Item 110      Total Disbursements for Protection and
Preservation from Line 264, Part C.  Enter the
total

_____

1First amount to be entered on Part D, Item 305 or 311, as applicable.
Interest should only be calculated on $27.88 not the $51.19.
_____

4330.4                                        CONVEYANCES

_____

                     amount of disbursements and debenture interest
appearing in Part C, Item 264.  Note on the
reverse side of this part any authorization
obtained from the local HUD office for approvals
to exceed allowable amounts.

Item 111      Total Disbursements from Item 305, Part D.  Enter
the total amount paid and debenture interest
appearing in Part D, Item 305.

Item 112      Attorney/Trustee Fees Paid From Line 306, Part D.
Enter the amount and debenture interest appearing
in Part D, Item 306.  HUD WILL CALCULATE THE
TWO-THIRDS ALLOWANCE FOR BOTH EXPENSES AND
INTEREST.

Item 113      Foreclosure, Acquisition, Conveyance and Other
Costs from Line 307, Part D.  Enter the amount and
debenture interest appearing in Part D, Item 307.
HUD WILL CALCULATE THE TWO-THIRDS ALLOWANCE FOR
BOTH EXPENSES AND INTEREST.

Item 114        Bankruptcy Fee (if applicable) from Line 310, Part
D.  Enter the amount of bankruptcy fees paid and
debenture interest appearing in Part D, Item 310.
HUD WILL CALCULATE THE TWO-THIRDS ALLOWANCE FOR
BOTH EXPENSES AND INTEREST.

Item 115        Rental Income.  Enter any income from the rent of
the property between the date foreclosure
proceedings were instituted (or property otherwise
acquired) and the date the property was conveyed
to the Secretary.

Item 116        Rental Expense.  Enter rental expenses incurred,
if any.  If there is no entry in Item 115, make no
entry in this Item.  This entry cannot exceed the
amount shown in Item 115.

Item 117        Total Taxes on Deed from Line 308, Part D.  Enter
the total amount paid and the debenture interest
shown in Item 308, Part D.

---

CONVEYANCES                                        4330.4

---

Item 118        Recovery or Damage (if not reported on Part A).
Use Line 119 if Reported on Part A.  If not
reported in Item 27 of Part A enter the amount of
HUD's estimate of damage, insurance recovery or
any other recovery the mortgagee may have received
in connection with damage to the property.

Item 119        Estimate or Recovery from Part A.  Complete this
Item only if the property was damaged at the time
of conveyance and an insurance recovery has been
received.  Its purpose is to adjust the amount
entered in Item 27 to reflect the amount of
insurance proceeds actually received.  However,
the adjustment may not result in a deduction from
insurance benefits of a total amount less than
HUD's estimate of the cost of repairs.  See
Paragraph 2-12B.

No entry should be made under the following
circumstances:

1.There has been and will be no insurance
recovery.

2.The actual insurance recovery is the same as
the amount of recovery or HUD's estimate of
damage reported in Item 27.

If it is necessary to complete this Item, make the following entries:

      1.Estimate of Recovery from Part A.  Enter HUD's estimate of the cost of repairs or the insurance recovery, whichever is greater, reported in Item 27.

      2.Total Insurance Recovery.  Enter the total amount of insurance proceeds received.

      3.Adjusted Amount (plus or minus).  Enter the difference between the "Estimate of Recovery" and the "Total Insurance Recovery".  If the "Total Insurance Recovery" is greater, enter the difference in Column A; if it is less, enter it in Column B.

      Example 1.  The Total Insurance Recovery is more than HUD's estimate of repair costs and the mortgagee's estimate of recovery.

---

---

      Assume Insurance Recovery of $8,820, HUD's estimate of $8,650 and an Estimate of Recovery of $8,500.

      Estimate of Recovery from Part A          $8,650

      Total Insurance Recovery          8,820

      _____

      Adjusted Amount (enter in Column A)          ($170)

      ======

      Example 2.  The Total Insurance Recovery is less than the mortgagee's Estimate of Recovery but more than HUD's estimate of repair costs.  Assume Insurance Recovery of $8,650, HUD's Estimate of $8,350, and an Estimate of Recovery of $8,820.

      Estimate of Recovery from Part A          $8,820

Total Insurance Recovery          8,650

_____

      Adjusted Amount (enter in Column B)          $170

======

                 Example 3.  The Total Insurance Recovery is less than HUD's Estimate of Repair Costs and the mortgagee's Estimate of Recovery, but the mortgagee's Estimate of Recovery is more than HUD's estimate of repair costs.  Assume Insurance Recovery of $8,350, HUD's Estimate of $8,650, and an Estimate of Recovery of $8,820.

|  |  |
|---|---|
| Estimate of Recovery from Part A | $8,820 |
| Total Insurance Recovery | 8,350 |
| _____ | |
| Adjusted Amount | $470 |

======

                 The adjusted amount of $470 cannot be entered in Column B because this would result in a total deduction from insurance benefits of $8,350 ($8,820 - $470 = $8,350) and at least $8,650 (HUD's estimate) must be deducted.  Therefore, the difference between mortgagee's estimate (the amount deducted in Part A) and HUD's estimate ($8,820 - $8,650 = $170) should be entered in Column B.

     Item 120        Special Assessments (DO NOT USE FOR COINSURANCE) from Line 309, Part D.  Enter the total amount paid and debenture interest which appear in Item 309, Part D.

---

---

     Item 121        Mortgage Note Interest.  Mortgage note interest will be included in the insurance benefits if a mortgagor fails to meet the requirements of a special forbearance agreement and the failure continues for at least 60 calendar days.  See Paragraph 2-19.

                 From.  Enter the date of the last completely paid installment after all funds received under the agreement are applied according to the terms of the mortgage (Item 8, part A).  If no mortgage payments were made, enter a date 30 days prior to the due date of the first scheduled payment (Item 7, Part A).

                 To.  Enter the earliest of the following dates:

1.the date of institution of foreclosure
proceedings;

                          2.the date of acquisition of title and
possession by deed-in-lieu of foreclosure;

                          3.the date the property was acquired by the
Commissioner under a direct conveyance from
the mortgagor;

                          4.90 calendar days following the date the
mortgagor fails to meet the requirement of
the forbearance agreement; or

                          5.such other date as the local HUD office may
approve in writing prior to expiration of the
90 calendar day period (24 CFR 203.402a).

                     Rate.  Enter the mortgage interest rate as it
appears on the mortgage note.

                     Compute the amount of mortgage interest due as
instructed in Paragraph 2-20 and enter in Column
C.

     Item 122        Mortgage Insurance Premiums.  Enter total from
Item 311, Part D.

     Item 123        Unapplied Section 235 Assistance Payments.  Enter
unapplied assistance payments in Column A, if
applicable.  See paragraph 2-21.

_____

_____

     Item 124        Overpaid Section 235 Assistance Payment.  Enter
the amount of any funds advanced by the mortgagee
to repay to HUD assistance to which the mortgagor
was not entitled and which was not recovered from
the mortgagor, unless the overpayment was the
result of error on the part of the mortgagee.
Amount is to be entered in Column B.  Do not
calculate debenture interest for Column C.

     Items 125
     thru 128        Not applicable.  Any amounts appearing on these
lines will be disallowed.

     Item 129        Additional Closing Costs at Settlement.  Enter the
Total from Line 408 Part E.  Do not calculate
debenture interest on this amount.

Item 130        Appraisal Fee.  Enter total from line 409, part E, if applicable.  Interest may be entered in Column C.

Item 131        Deficiency Judgment Costs/Fees.  Enter the total from Line 410, Part E, if applicable.  Interest may be entered in Column C.

Item 132        Reserved.

Item 133        Contact:  Holding Mortgagee, Name and Telephone Number; or Contact:  Servicing Mortgagee, Name and Telephone Number.  Enter the name and telephone number of a person in the holding or servicing mortgagee's office who can answer questions concerning the information reported on this claim form.  Include the Holding Mortgagee number which you entered in Item 12 of Part A.

Items 134
thru 136        Enter the totals of Columns A - Deductions; B - Additions; and C - Interest.

Item 137        Net Claim Amount (Columns B - A + C).  The amount HUD actually pays will differ from what the mortgagee enters

---

CONVEYANCES                                4330.4

---

here because of possible interest curtailments, disallowed expenses, HUD's calculation of two-thirds allowances on attorney/trustee fees, foreclosure costs and bankruptcy fees, and additional debenture interest calculated by HUD to the date of claim settlement.

Items 138
and 139 Mortgagee's Official Signature, Date and Title (signature not necessary if signed by a servicer) or Servicer Signature, Date, and Title.  See instructions for Part A, Items 37 and 38.

C.Instructions for the Completion of HUD Form 27011, Part C, Support Document.  The following Item-by-Item instructions are to be used when completing Form HUD-27011, Part C, for conveyance claims.  Expenditures may be entered on Part C as they occur, however, debenture interest calculations should not be made until the date of claim submission because interest allowance will be computed from the date of expenditure to the date Part B is filed unless interest is curtailed.

No expenses should be incurred and no work performed on the
property after the date the deed is filed for record.  This does
not preclude reimbursement for expenses incurred or work
completed before conveyance but not paid until after conveyance.

If the local HUD office instructs the mortgagee to perform a
specific service after the date of conveyance, a notation must be
made on the reverse of the form under "Mortgagee's Comments".

Each expense listed for reimbursement must be Itemized and
sufficient information must be provided for computation of
debenture interest.  See Paragraph 1-7.

PART C

SUPPORT DOCUMENT

Item 200        Mortgagor's Name and Property Address.  Enter the
mortgagor's name and property address as they
appear in Item 33 of Part A.

---

---

Items 201
and 202 FHA Case Number and Section of Act Code.  Enter
the FHA case number and Section of the Act Code as
they appear in Items 2 and 3 of Part A.

Item 203        Mortgagee's Reference Number.  Enter the
mortgagee's reference number as it appears in Item
14 of Part A.

Item 204        Date.  Enter the date entered in Part B in Item
104 if all actions taken by the mortgagee are
within the time requirements or the automatic
extensions specified in Paragraph 2-2 or within
the extended time requirements (See Paragraph
1-6).  If the mortgagee failed to comply with a
time requirement (including actions reported in
Part A) or its approved extension, enter the date
the action should have been taken.  Debenture
interest will be computed to this date.  If there
was more than one failure, enter the earliest date
on which a required action should have been taken
(See paragraph 2-5C).

Item 205        Debenture Interest Rate.  Using the Debenture
Interest Rate Table provided in Appendix 4 of
these instructions, determine the rate at the date
of firm commitment and the rate at the date of
endorsement, then enter the higher rate.  In

Direct Endorsement cases, enter the rate in effect
on the date of endorsement.  The debenture
interest rate can also be found on the Part A
advice of payment.

     Items 206
     through
     261            Disbursements for Protection and Preservation.
Enter all inspection, protection and preservation
expenses for which the mortgagee is not
responsible.  This includes debris removal,
replacing broken glass, protecting plumbing and
other operating systems against damage by
freezing, care of lawns and shrubs, repair of
leaking roof, etc.  Describe the service
performed, the date it was completed and the date
paid.  See paragraph 2-11 for the nature of
reimbursable expenditures and

---

---

                    cost limits.  Enter expenses paid to board up the
property if the field office gave prior approval.

                    Enter the date of each inspection and indicate
whether it is an Initial, Occupancy or Vacancy
inspection.  See paragraphs 2-10 and 2-11.  A copy
of an inspection report must be maintained by the
mortgagee for each inspection Itemized.

                    oDate Paid.  A separate entry must be made for
each payment.  Enter the date the check was
disbursed.  If an expenditure or advancement
was made prior to the date of default, enter
the date of default and enter the actual date
paid in parentheses following the description
(See Paragraph 2-5C).

                    oDate Work Completed - If date is not
available on the invoice, obtain this date
from vendor or contractor.  This is not
necessarily the date of billing, but the
actual date the work was completed.

                    oDescription of Service Performed - Enter a
description of the Items or types of repairs
and services performed, i.e., inspections.
Additional space is provided on reverse of
form.

                    oAmount Paid - Actual payment amounts are to
be entered.  This information will be

transferred to Part B, Fiscal Data.

oDebenture Interest - To obtain the amount of interest due on an expenditure, multiply the daily interest rate factor by the amount paid.  Multiply this result by the number of days from the date paid for each line Item to the date in Item 204.  Daily Interest Rate Factor tables are provided in Appendix 8 of these instructions to assist in converting the debenture interest rates.  In addition, Julian date calendars are provided in Appendix 9 to assist in determining the number of days from the date the expenditure was paid to the date of submission of the claim or the curtailment date.

Note:  If the claim includes mortgage interest under a special forbearance plan (Item 121), debenture interest is computed from the date of institution of foreclosure or

_____

_____

acquisition of title by a deed-in-lieu, or from the date of expenditure, whichever is later.

     Item 262        Subtotals.  If reverse side of form is used to list protection and preservation costs, add amount paid and debenture interest columns.

     Item 263        Subtotals Brought Forward.  If reverse side of form is used, bring subtotals appearing in Item 262 to this line.

     Item 264        Totals.  Total the "amount paid" and "debenture interest" columns.  Enter the totals on Part B, Item 110, Column C when completing Part B, Fiscal Data.

     Items 265 and 266        Contact:  Holding Mortgagee, Name and Telephone Number; or Contact:  Servicing Mortgagee, Name and Telephone Number.  Enter the name and telephone number of a person in the holding or servicing mortgagee's office who can answer questions concerning the information reported on this claim form.  Include the Holding Mortgagee number which you entered in Item 12 of Part A.

Items 267
and 268 Mortgagee Official Signature, Date and Title (not
necessary if signed by servicer) or Servicer
Signature, Date and Title.  A signature must
appear in at least one of these blocks, however,
it is acceptable if both the mortgagee and the
servicer wish to sign this form.

   Mortgagee's Comments, if any - Use this area to justify extremely
large expenditures, as well as other information required by
these instructions.

HUD's Comments, if any - HUD USE ONLY.

   D.Instructions for the Completion of HUD Form 27011, Part D,
Support Document (Continuation 1).  Expenditures may be entered
on Part D as they occur, however, debenture interest calculations
should not be made until the date

---

CONVEYANCES                                        4330.4

---

of claim submission because interest allowance will be computed
from the date of expenditure to the date Part B is filed unless
interest is curtailed.

      oDate Paid - A separate entry must be made for each payment.
Enter the date the check was disbursed.  If an expenditure
or advancement was made prior to the date of default, enter
the date of default and enter the actual date paid in
parentheses following the description (See Paragraph 2-5C).

      oDescription of Service Performed - Enter a description of
the Items or types of services performed.  Additional space
is provided on reverse of form.

      oAmount Paid - Actual payment amounts are to be entered.
This information will be transferred to Part B, Fiscal data.

      oDebenture Interest - To obtain the amount of interest due on
an expenditure, multiply the daily interest rate factor by
the amount paid.  Multiply this result by the number of days
from the date paid for each line Item to the date in Item
304.  Daily Interest Rate Factor tables are provided in
Appendix 8 of these instructions to assist in converting the
debenture interest rates.  In addition, Julian date
calendars are provided in Appendix 9 to assist in
determining the number of days from the date the expenditure
was paid to the date of submission of the claim or the
curtailment date.

      Note:If the claim includes mortgage interest under a

special forbearance plan (Item 121), debenture
interest is computed from the date of institution
of foreclosure or acquisition of title by a
deed-in-lieu, or from the date of expenditure,
whichever is later.

　　　oTotal the "amount paid" and "debenture interest" columns.

PART D

　　　　　　SUPPORT DOCUMENT (CONTINUATION 1)

　　　Items 300
　　　and 301 FHA Case Number and Section of Act Code.  Enter
the FHA case number and Section of the Act Code as
they appear in Items 2 and 3 of Part A.

---

---

　　　Item 302        Mortgagee's Reference Number.  Enter the
mortgagee's reference number as it appears in Item
14 of Part A.

　　　Item 303        Debenture Interest Rate.  Using the Debenture
Interest Rate Table provided in Appendix 4 of
these instructions, determine the rate at the date
of firm commitment and the rate at the date of
endorsement, then enter the higher rate.  In
Direct Endorsement cases, enter the rate in effect
on the date of endorsement.  The debenture
interest rate can also be found on the Part A
advice of payment.

　　　Item 304        Date.  Enter the date entered in Part B Item 104
if all actions taken by the mortgagee are within
the time requirements or the automatic extensions
specified in Paragraph 2-2 or within the extended
time requirements (See Paragraph 1-6).  If the
mortgagee failed to comply with a time requirement
(including actions reported in Part A) or its
approved extension, enter the date the action
should have been taken.  Debenture interest will
be computed to this date.  If there was more than
one failure, enter the earliest date on which a
required action should have been taken (See
paragraph 2-5C).

　　　Item 305        Disbursements for HIP, Taxes, Ground Rents and
Water Rates (which were liens prior to mortgage),
Eviction Costs, Payments for Deed-in-Lieu and
Other Disbursements Not Shown Elsewhere.  (Do not

include any penalties for late payment).  Itemize
all disbursements in these categories.  Do not
include disbursements which were paid from
available escrow funds.  No expense should be
incurred after the date the deed is filed for
record (Item 10), except for costs associated with
evictions or where the local HUD office instructs
you to take an action.  See explanation for escrow
account, Part B, Item 109.  See paragraph 1-10 for
allowable attorney eviction fees.

---

CONVEYANCES                                        4330.4

---

Item 306        Attorney/Trustee Fee.  Itemize the fees paid to
attorneys and trustees in connection with
foreclosure or acquisition of title and conveyance
of the property to the Secretary.  Do not enter
fees for bankruptcy or eviction in this item.  If
the fee for acquisition and conveyance is within
the amount HUD approved for the area, do not
itemize the elements of the fee.  If attorney fees
exceed those approved by HUD for routine
foreclosures see paragraph 1-10.  HUD WILL
CALCULATE THE TWO-THIRDS ALLOWANCE (24 CFR
203.402).

Item 307        Foreclosure and/or Acquisition Conveyance and
Other Costs.  Enter all disbursements required to
vest title to and possession of the property in
the name of the mortgagee, and to convey any
evidence of title to the Secretary except taxes
paid on deeds included in Item 308 and
disbursements shown in Item 306.  These costs must
be itemized e.g., title policy, resale title
binders, title search fees (if separate costs),
publication, service of process, etc.  If
additional space is needed, attach a separate
sheet to Part D.  HUD WILL CALCULATE THE
TWO-THIRDS ALLOWANCE FOR EXPENSES AND INTEREST (24
CFR 203.402).

Item 308        Taxes on Deed.  Enter amounts paid for taxes
imposed upon any deeds or other instruments by
which the property was acquired by the mortgagee
and transferred or conveyed to the Secretary.
(Note:  Deed taxes should not be included in Item
307.)

Item 309        Special Assessments (Do not use for Coinsurance,
see part E).  For each item in this category,
enter the date the lien was attached or would be

attached.  Do not include any special assessments
which became liens before the mortgage was
endorsed for insurance, if not noted in the
application for insurance.

   Item 310        Bankruptcy.  Itemize the bankruptcy fees paid.
There must be an entry in Item 40.  If the
bankruptcy fees exceed those approved by HUD for
routine bankruptcies, see

_____

_____

                      paragraph 1-10.  HUD WILL CALCULATE THE TWO-THIRDS
ALLOWANCE FOR EXPENSES AND INTEREST (24 CFR
203.402).

   Item 311        Mortgage Insurance Premiums.  Itemize all MIP
disbursements, including the period covered.  Only
include the "advanced" MIP disbursements paid
after the due date of the last completely paid
installment to the date the deed is filed for
record.

   E. Instructions for the Completion of HUD Form 27011, Part E Support
Document (Continuation 2).  The following item by item
instructions are to be used when completing HUD Form-27011, Part
E for conveyance claims initiated under CWCOT procedure or the
Preforeclosure Sale program and for claims involving approved
deficiency judgment procedures.

PART E

            SUPPORT DOCUMENT (Continuation 2)

   Items 400
   and 401 FHA Case Number and Section of Act Code.  Enter
the FHA case number and Section of the Act Code as
they appear in Items 2 and 3 of Part A.

   Item 402        Mortgagee's Reference Number.  Enter the
mortgagee's reference number as it appears in Item
14 of Part A.

   Item 403        Debenture Interest Rate.  Using the Debenture
Interest Rate Table provided in Appendix 4 of
these instructions, determine the rate at the date
of firm commitment and the rate at the date of
endorsement, then enter the higher rate.

   Item 404        Date.  Enter the date entered in Part B in Item
104 if all actions taken by the mortgagee are

within the time requirements or the automatic
extensions specified in

---

CONVEYANCES                                    4330.4

---

                    Paragraph 2-2 or within the extended time
requirements (See Paragraph 1-6).  If the
mortgagee failed to comply with a time requirement
(including actions reported in Part A) or its
approved extension, enter the date the action
should have been taken.  Debenture interest will
be computed to this date.  If there was more than
one failure, enter the earliest date on which a
required action should have been taken (See
paragraph 2-5C).

     Items 405
     thru 407        Overhead Costs; Amounts Due from Buyer at Closing;
Amounts Owed to Buyer at Closing.  Not applicable.

     Item 408        Additional Closing Costs.  This item is only used
in unsuccessful preforeclosure sale cases.  Enter
the $250 administrative fee, if applicable.  Do
not enter interest for this item.

     Item 409        Appraisal Fee.  Enter the amount of the appraisal
fee and date paid only if you were instructed to
obtain an appraisal by the local HUD office while
*                             complying with the CWCOT procedures.  If
debenture
interest is payable the amount of interest may be
entered in Line 130, Column C of Part B.*

     Item 410        Deficiency Judgment Costs/Fees.  Enter a figure
here only if the local HUD office authorized you
to obtain a deficiency judgment.  The allowable
costs and fees are as follows:  (1) cost of
reasonable and customary attorney fees which
relate only to the obtaining of the deficiency
judgment; (2) additional filing or recording fees
directly related to the deficiency judgment; (3)
if local law required a judicial foreclosure in
order to obtain a deficiency judgment, those costs
directly related to the judicial foreclosure,
provided that judicial foreclosure would not,
otherwise, have been necessary.  If debenture
interest is payable, the amount of interest may be
          entered in Line 131, Column C of Part B.        *

---

---

Items 411
and 412 Reserved.

---